BRYAN A. KOHM (CSB No. 233276)
bkohm@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

ELIZABETH HAGAN (WSBA No. 46933)
Admitted *Pro Hac Vice*
ehagan@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:     206.389.4510
Facsimile:     206.389.4511

Attorneys for Plaintiff-Counterdefendant
WHITEPAGES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WHITEPAGES, INC., a Delaware corporation, <br><br> Plaintiff-Counterdefendant, <br><br> v. <br><br> GREENFLIGHT VENTURE CORPORATION, a Florida company, and JEFFREY ISAACS, an individual, <br><br> Defendants-Counterclaimants. | Case No.: 3:16-cv-00175-RS <br><br> **WHITEPAGES' ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff and Counter-defendant Whitepages, Inc. ("Whitepages") hereby submits the following Answer to the statements alleged by Defendants and Counterclaimants Greenflight Venture Corporation ("Greenflight") and Jeffrey Isaacs (collectively, "Defendants") in their Counterclaim for Patent Infringement (ECF No. 21), using the same numbering and headings therein.  Whitepages states and alleges as follows:

## THE PARTIES

1. Whitepages lacks information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Counterclaim, and therefore denies same.

2. Whitepages lacks information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Counterclaim, and therefore denies same.

3. Whitepages admits that is a corporation organized under the laws of Delaware, with its place of business at 1301 Fifth Ave., Suite 1600, Seattle, Washington 98101. Whitepages admits that it offers an app on the Apple iTunes App Store called "Whitepages ID" and on Google Play called "Whitepages ID & Block." Whitepages denies the remaining allegations of paragraph 3 of the Counterclaim.

## JURISIDCTION AND VENUE

4. Paragraph 4 of the Counterclaim contains legal conclusions to which no response is required. To the extent a response is required, Whitepages admits the allegations in paragraph 4 of the Counterclaim.

5. Paragraph 5 of the Counterclaim contains legal conclusions to which no response is required. To the extent a response is required, Whitepages admits the allegations in paragraph 5 of the Counterclaim.

6. Admitted.

## FACTS

7. Whitepages denies that Jeffrey Isaacs invented the technology described in Paragraph 7 of the Counterclaim. Whitepages lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 7 of the Counterclaim, and therefore denies same.

8. Whitepages admits that U.S. Patent No. 8,861,698 ("the '698 patent") is entitled "Post-Page Caller Name Identification System", names Jeffrey D. Isaacs as inventor, and issued on October 14, 2014. Whitepages admits that a copy of the '698 patent was attached to the Counterclaim as Exhibit A. Whitepages denies the remaining allegations in paragraph 8 of the Counterclaim.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9. Whitepages lacks information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Counterclaim, and therefore denies same.

10. Whitepages lacks information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Counterclaim, and therefore denies same.

11. Whitepages denies the allegations in paragraph 11 of the Counterclaim.

12. The allegations of paragraph 12 of the Counterclaim are indefinite and ambiguous, or Whitepages lacks information sufficient to form a belief as to the truth of the allegations, and therefore Whitepages denies same.

13. The allegations of paragraph 13 of the Counterclaim are indefinite and ambiguous, or Whitepages lacks information sufficient to form a belief as to the truth of the allegations, and therefore Whitepages denies same.

14. The allegations of paragraph 14 of the Counterclaim are indefinite and ambiguous, or Whitepages lacks information sufficient to form a belief as to the truth of the allegations, and therefore Whitepages denies same.

15. Whitepages admits that during an interview on "Mornings with Maria" featuring Maria Bartiromo on Fox Business Network on December 15, 2015, Alex Algard said: "I think the landline is really dying a very quick death." Whitepages denies the remaining allegations in paragraph 15 of the Counterclaim.

16. Whitepages denies that the Whitepages ID and Whitepages Caller ID & Block apps charge or bait customers into paying a fee. The remaining allegations of paragraph 16 of the Counterclaim are indefinite and ambiguous, or Whitepages lacks information sufficient to form a belief as to the truth of the allegations, and therefore Whitepages denies same.

17. The allegations of paragraph 17 of the Counterclaim are indefinite and ambiguous, or Whitepages lacks information sufficient to form a belief as to the truth of the allegations, and therefore Whitepages denies same.

18. Whitepages denies that Jeffrey Isaacs conceived of and invented a technology that bridged the gap between CNAM and internet reverse search. The remaining allegations of paragraph 18 of the Counterclaim are indefinite and ambiguous, or Whitepages lacks information

sufficient to form a belief as to the truth of the allegations, and therefore Whitepages denies same.

19. Whitepages lacks information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Counterclaim, and therefore denies same.

20. Whitepages admits that it currently offers its Caller ID app for free. The remaining allegations of paragraph 20 of the Counterclaim are indefinite and ambiguous, or Whitepages lacks information sufficient to form a belief as to the truth of the allegations, and therefore Whitepages denies same.

21. Whitepages admits that Greenflight submitted a written complaint regarding Whitepages ID to Apple wherein Greenflight identified the '698 patent as allegedly being infringed by Whitepages. Whitepages lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21 of the Counterclaim, and therefore denies same.

22. Whitepages denies that it has not provided a response to Defendants' allegations sufficient to demonstrate that Defendants' allegations are baseless, contrary to legal precedent, and asserted in bad faith, which is sufficient to demonstrate that Whitepages does not infringe the '698 patent under Apple's App Store dispute resolution process. Apple never requested any information concerning Whitepages' "data source" and therefore Whitepages never provided any additional information to Apple regarding such a "data source." Whitepages denies the remaining allegations in paragraph 22 of the Counterclaim.

23. Whitepages denies that it has failed to provide sufficient information to demonstrate that Greenflight's allegations are baseless, contrary to legal precedent, and asserted in bad faith, which is sufficient evidence to demonstrate that Whitepages does not infringe the '698 patent. The remaining allegations of paragraph 23 of the Counterclaim are indefinite and ambiguous, and therefore Whitepages denies those allegations.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

## PATENT INFRINGEMENT

28. Whitepages hereby incorporates its responses to paragraphs 1 through 27 of the Counterclaim as through fully set forth herein.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

## PRAYER FOR RELIEF

The prayer for relief requires no response, but to the extent any response is required, Whitepages denies any allegations therein, and denies that Defendants are entitled to the relief requested or any relief whatsoever.

## AFFIRMATIVE DEFENSES

Whitepages asserts the following defenses to the Counterclaim. Whitepages also reserves the right to amend or supplement these defenses as additional facts become known.

## FIRST AFFIRMATIVE DEFENSE

**(Non-Infringement of U.S. Patent No. 8,861,698)**

33. Whitepages has not infringed and does not infringe, either directly, contributorily, or by inducement, any claim of U.S. Patent No. 8,861,698 ("the '698 patent") either literally or under the doctrine of equivalents, or in any other manner. No valid and enforceable claim of the '698 patent, literally or under the doctrine of equivalents, covers or includes within its scope any app, method, or system made, used, offered for sale, or sold by Whitepages. Whitepages is not liable for any infringement, either for its own alleged infringement or for the alleged infringement of other persons or entities.

## SECOND AFFIRMATIVE DEFENSE

**(Invalidity of U.S. Patent No. 8,861,698)**

34. The claims of the '698 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code or the rules, regulations, or law related thereto, including without limitation 35 U.S.C. §§ 101, 102, 103,

and/or 112. The alleged invention claimed in the '698 patent is taught by, suggested by, and/or obvious in view of the prior art, and/or is unsupported by the written description of the patented invention, is indefinite, is not enabled, and/or claims unpatentable subject matter, and no claim of the '698 patent can validly be construed to cover any app, method, or system made, used, offered for sale, or sold by Whitepages.

35. For example, Whitepages had mobile phone and web applications that would provide reverse telephone number lookups via the internet well before the priority date of the '698 patent. Defendants acknowledge the existence of "Whitepages' previous iPhone apps" in paragraph 20 of the Counterclaim. Accordingly, Whitepages' previous apps are prior art at least under 35 U.S.C. § 102(a)(1). Whitepages' prior art apps anticipate and/or render obvious the asserted claims of the '698 patent under 35 U.S.C. §§ 102 and 103.

36. As a further example, the claims of the '698 patent are invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 over prior art publications, including but not limited to U.S. Patent Pub. No. 2008/0240383, U.S. Patent Pub. No. 2008/0147771, and U.S. Patent Pub. No. 2002/0099720. These prior art publications, individually or in combination, teach a user-initiated post-page database query from an internet or mobile phone application, independent of a called party's telephone carrier or device, to retrieve information including the calling party's name, from entry of the calling party's telephone number, including through the PSTN. If not explicitly disclosed in the prior art publications, it is inherently disclosed or obvious to utilize an SS7 interfacing node to connect with the PSTN query a CNAM database. Particularly to the extent Defendants argue that the '698 patent's claims are embodied, through the doctrine of equivalents, by an application that interfaces with a CNAM database without utilizing SS7 protocols, such a function is disclosed in the prior art.

37. As an additional example, the asserted claims of the '698 patent are invalid under 35 U.S.C. § 112 as indefinite because they fail to inform with reasonable certainty those of skill in the art about the scope of the invention. In particular, for example, the terms "interfacing node," "permitting real-time access," "direct interface," and/or "directly querying" are so ambiguous as to render asserted independent claims 1 and 5 indefinite when read in light of the

specification and prosecution history. Asserted claim 5 is further indefinite, for example, because the terms "the calling party's CNAM," "the carrier or device receiving the page," "the calling party's telephone number CID," "the PSTN," "the calling party carrier CNAM database," "the CID query entry," and "the successfully queried calling party CNAM" lack antecedent bases and render the claim's scope unclear.

38. As a further example, the asserted claims of the '698 patent are invalid under 35 U.S.C. § 112 for lack of written description. For example, to the extent Defendants allege that the asserted claims should be construed to cover Whitepages' accused apps, the specification does not contain written description support for such a construction.

39. The examples identified above are not exhaustive, and Whitepages' investigation is ongoing. Whitepages will serve invalidity contentions according to the schedule ordered by the Court.

### THIRD AFFIRMATIVE DEFENSE

**(Prosecution History Estoppel)**

40. The relief sought by Defendants is barred, in whole or in part, under the doctrine of prosecution history estoppel in light of the statements made by Jeffrey Isaacs to the United States Patent and Trademark Office during the prosecution of the application leading to the '698 patent.

### FOURTH AFFIRMATIVE DEFENSE

**(Limitation on Damages)**

41. Defendants' claim for damages is barred, in whole or in part, by 35 U.S.C. § 287 and/or Defendants' failure to plead notice thereunder.

### FIFTH AFFIRMATIVE DEFENSE

**(Costs Barred in Action for Infringement of a Patent Containing Invalid Claims)**

42. Pursuant to 35 U.S.C. § 288, Defendants are barred from recovering any costs.

### SIXTH AFFIRMATIVE DEFENSE

**(Unenforceability of U.S. Patent No. 8,861,698 Due to Inequitable Conduct)**

43. The '698 patent is unenforceable as a result of inequitable conduct before the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

United States Patent and Trademark Office ("PTO") during prosecution of the application that became the '698 patent. Specifically, Jeffrey Isaacs, inventor of the '698 patent, who also prosecuted the application before the PTO, failed to comply with the duty of good faith and candor owed to the PTO, by knowingly and deliberately failing to disclose information material to the patentability of the asserted claims during prosecution, and but for such failures the asserted claims of the '698 patent would not have been allowed. In particular, Mr. Isaacs failed to disclose his knowledge of the existence and use in the United States, prior to the filing of the application for the '698 patent, of Whitepages' reverse telephone number lookup mobile and web applications ("Whitepages Lookup apps"). The Whitepages Lookup apps are prior art that anticipate or render obvious the asserted claims of the '698 patent. In addition, Mr. Isaacs committed fraud upon the PTO by submitting inventor statements that falsely represent the scope of his alleged invention and its distinction from the prior art cited by the examiner. Upon information and belief, Mr. Isaacs failed to disclose the Whitepages Lookup prior art apps and mischaracterized the scope of the invention with an intent to deceive the PTO.

### A.    Mr. Isaacs Knew of Whitepages' Prior Art Prior to Filing for the '698 Patent

44.    Upon information and belief, Mr. Isaacs knew of the existence of the Whitepages Lookup apps prior to the date of application for the '698 patent. As an example, in Paragraph 20 of the Counterclaim, Defendants make allegations regarding the "typical" function of "Whitepages' prior iPhone apps," indicating a familiarity with these prior art apps. As Whitepages "previous iPhone apps" were no longer available as of the date of the Counterclaim, or once the Whitepages ID app launched, such knowledge likely came from an earlier date. Upon information and belief, that earlier date was prior to the filing date of the application for the '698 patent.

### B.    Whitepages Lookup Was Highly Material Prior Art

45.    In light of Mr. Isaacs' stated understanding of the scope of the '698 patent, the Whitepages Lookup apps were highly material prior art at least because the functionality of those apps is identical to or closely resembles the functionality in the accused Whitepages apps. As such, on information and belief, Mr. Isaacs knew that the Whitepages Lookup apps were highly

material prior art at least with respect to the following functionality alleged by Defendants, including Mr. Isaacs, to be material with respect to the asserted claims of the '698 patent: 1) functioning independently of a called party's telephone carrier and device; 2) providing the calling party's name after entry of the calling party's telephone number; 3) containing an entry field, within a HTML web or mobile phone application, in which a telephone number may be entered, including after the page has ended; 4) accessing at a database; 5) querying the database with the calling party's telephone number entered; 6) returning the name of the calling party; and 7) displaying the name of the calling party within the HTML web or mobile phone application. In Paragraph 20 of the Counterclaim, Defendants allege that the only difference between the Whitepages Lookup prior art apps and the app currently accused of infringing the asserted claims of the '698 patent is that the accused app "utilizes distinctly different data source(s) than Whitepages' prior apps, and moreover, that one of these sources is in fact CNAM." Prior art with only this alleged distinction would have been considered material to the patentability of the '698 patent, and but for Mr. Isaac's failure to disclose Whitepages Lookup prior art apps, the claims would not have issued.

46.  Upon information and belief, during prosecution of the '698 patent, Mr. Isaacs did not disclose any prior art to the PTO. Upon information and belief, Mr. Isaacs did not submit any information disclosure statements in conjunction with prosecution of the '698 patent, nor were any examiner interviews held during prosecution. Upon information and belief, Mr. Isaacs failed to disclose the Whitepages Lookup apps to the PTO.

**C.    Mr. Isaacs' False Representations to the PTO**

47.  On July 21, 2014, the PTO mailed a non-final rejection, rejecting all pending claims of the application for the '698 patent under 35 U.S.C. § 103 as obvious over Fronczak (U.S. Patent Pub. No. 2008/0240383) in light of Bertolino (U.S. Patent Pub. No. 2008/0147771) or Bansal (U.S. Patent Pub. No. 2002/0099720). In response, in an amendment dated August 17, 2014, Mr. Isaacs cancelled all pending claims and added new claims 11–16, which issued unaltered as claims 1–6 of the '698 patent, and shall be referred to herein by the issued claim numbers. Independent claim 1 requires "an SS7 interfacing node permitting real-time access to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the SS7 network" and "a function serving as a direct interface between the called party's query and the calling party carrier's respective CNAM database." Claims 2–4 depend from claim 1. Independent claim 5 requires "connecting to the PSTN via an SS7 interfacing node" and "directly querying the calling party carrier CNAM database." Claim 6 depends from claim 5.

48. In the applicant's August 17, 2014 remarks accompanying the amendment in response to the July 21, 2014 non-final rejection, Mr. Isaacs distinguished the prior art cited by the examiner on the basis that the cited prior art lacks a direct SS7 interface with the calling party's CNAM database:

- "Bansal critically lacks the ability to directly interface (via SS7) with the calling party's CNAM database."
- "There is no suggestion in Bertolino's teaching that the RDLS interfaces or derives in any form or fashion with the telephone industry standard SS7 carrier CNAM directories."
- "Similarly, Bansal has no reference to SS7 direct interface functionality."
- "Bansal has no suggestion to interfacing [*sic*] with the SS7 network"
- "[N]either Bansal nor Bertolino referenced a real-time SS7 database query as defined in the present suggestion [*sic*]. Moreover, neither Bansal nor Bertolino implemented such a system described in the present invention."

49. The PTO issued a notice of allowability on September 5, 2014, allowing all claims added in the August 17, 2014 amendment, describing the invention as "a system that interfaces the user directly with the calling party's SS7 SCP-connected CNAM database."

50. Defendants have now asserted that Whitepages' Caller ID app infringes the asserted claims of the '698 under the doctrine of equivalents. In an email to Whitepages' counsel dated December 17, 2015, Mr. Isaacs stated that SS7 protocols need not be used, and a non-SS7 interface with a CNAM database would meet the claim limitations under the doctrine of equivalents. To the extent that Greenflight (and Mr. Isaacs) now assert that use of SS7 or a direct SS7 interface are not necessary to the '698 patent's claims, Mr. Isaacs' statements to the PTO distinguishing the prior art on the basis of its lack of a direct SS7 interface were false

ANSWER AND AFFIRMATIVE DEFENSES
TO COUNTERCLAIM                                  10                           Case No.: 3:16-cv-00175-RS

representations.  The claims would not have issued but for Mr. Isaac's representations that a direct SS7 interface is what distinguishes his invention from the prior art.

### D. Mr. Isaacs Failed to Disclose the Whitepages Prior Art and Made False Representations to the PTO with Intent to Deceive

51. The only reasonable inference from Mr. Isaacs' failure to disclose information regarding the Whitepages Lookup apps to the PTO is that he intended to deceive the PTO and the examiner.

52. The only reasonable inference from Mr. Isaacs' contradictory statements to the PTO and later to Whitepages regarding the necessity of a direct SS7 interface in his invention is that he intended to deceive the PTO and the examiner.

53. Upon information and belief, Mr. Isaacs was motivated to conceal the Whitepages Lookup prior art and to make false representations and intended to deceive the USPTO in order to secure allowance of the '698 patent.  Upon information and belief, Mr. Isaacs had strong financial and non-financial interests in obtaining the '698 patent, as evidenced by his statements during prosecution regarding the commercial success of Greenflight's app and website, its allegations of infringement and filing of a lawsuit for infringement of the '698 patent against Whitepages, and its demands for monetary damages from Whitepages for its purported infringement of the '698 patent.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

54. Defendants' Counterclaim fails to state a claim upon which relief can be granted.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Injunctive Relief)

55. Defendants are not entitled to any injunctive relief, as a matter of law, and cannot satisfy the requirements applicable to any request for injunctive relief in any form.

## RESERVATION OF ADDITIONAL DEFENSES

56. Whitepages reserves the right to assert additional affirmative defenses in the event that discovery or other analysis indicates that additional affirmative defenses are appropriate.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## **PRAYER FOR RELIEF**

WHEREFORE, Whitepages respectfully requests this Court to enter judgment for Whitepages and against Defendants as follows:

    A.    Finding that Whitepages does not infringe any claim of the '698 patent, or contribute to, or induce any such infringement;

    B.    Finding that the claims of the '698 patent are invalid and/or unenforceable;

    C.    Finding this to be an exceptional case in favor of Whitepages, and thus awarding Whitepages its costs and attorneys' fees pursuant to 35 U.S.C. § 285; and

    D.    Granting such other and further relief as the Court deems just and reasonable.

Dated: April 21, 2016

Respectfully submitted,

FENWICK & WEST LLP

By: */s/ Bryan A. Kohm*
    Bryan A. Kohm
    Ravi Ranganath
    Elizabeth B. Hagan (admitted *pro hac vice*)

Attorneys for Plaintiff-Counterdefendant
WHITEPAGES, INC.

## **DEMAND FOR JURY TRIAL**

Plaintiff Whitepages, Inc. hereby demands a trial by jury of all issues so triable.

Dated: April 21, 2016

FENWICK & WEST LLP

By: */s/ Bryan A. Kohm*
    Bryan A. Kohm
    Ravi R. Ranganath
    Elizabeth B. Hagan (admitted *pro hac vice*)

Attorneys for Plaintiff-Counterdefendant
Whitepages, Inc.