1    BRYAN A. KOHM (CSB No. 233276)
     bkohm@fenwick.com
2    RAVI R. RANGANATH (CSB No. 272981)
     rranganath@fenwick.com
3    FENWICK & WEST LLP
     555 California Street, 12th Floor
4    San Francisco, CA  94104
     Telephone:     415.875.2300
5    Facsimile:     415.281.1350

6    ELIZABETH HAGAN (WSBA No. 46933)
     Admitted *Pro Hac Vice*
7    ehagan@fenwick.com
     FENWICK & WEST LLP
8    1191 Second Avenue, 10th Floor
     Seattle, WA  98101
9    Telephone:     206.389.4510
     Facsimile:     206.389.4511
10

11   Attorneys for Plaintiff-Counterdefendant
     WHITEPAGES, INC.

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

17   WHITEPAGES, INC., a Delaware corporation,        Case No.: 3:16-cv-00175-RS

18                     Plaintiff-Counterdefendant,    **DEFENDANT WHITEPAGES, INC.'S
                                                      NOTICE OF MOTION AND MOTION**
19          v.                                        **FOR JUDGMENT ON THE
                                                      PLEADINGS OF INVALIDITY UNDER**
20   GREENFLIGHT VENTURE CORPORATION,                 **35 U.S.C. § 101**
     a Florida company, and JEFFREY ISAACS, an
21   individual,                                      Date:     July 7, 2016
                                                      Time:     1:30 PM
22                     Defendants-Counterclaimants.   Dept:     Courtroom 3, 17th Floor
                                                      Judge:    Honorable Richard Seeborg
23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 2

    A.      The '698 Patent's Written Description ..................................................... 2

    B.      The Claimed Invention ............................................................................... 5

III.    ARGUMENT .............................................................................................................. 6

    A.      The '698 Patent Is Invalid for Claiming the Unpatentable Abstract Idea of Looking Up Information Associated with a Phone Number. ........................... 7

        1.      Abstract Ideas Have Long Been, and Continue to Be, Ineligible Subject Matter. ...................................................................................... 7

        2.      *Alice* Step 1:  The '698 Patent Is Drawn to the Abstract Idea of Looking Up Information Associated with a Phone Number. ................... 8

        3.      *Alice* Step 2:  The Claims of the '698 Patent Provide No "Inventive Concept." ........................................................................... 11

        4.      The Dependent Claims Add Nothing Inventive. ....................................... 13

    B.      Resolving Questions of Patent Eligibility on the Pleadings Is Appropriate. .................................................................................................. 14

IV.     CONCLUSION ....................................................................................................... 16

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accenture Global Servs., GMBH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013)...................................................................................................5

*Affinity Labs of Tex., LLC .v. Amazon.com, Inc.*,
   No. 6:15-cv-00029, 2015 U.S. Dist. LEXIS 77411 (W.D. Tex. June 12, 2015) .................8, 12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) .................................................................................................... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   56 F. Supp. 3d 813 (E.D. Va. 2014).........................................................................................13

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
   133 S. Ct. 2107 (2013) ...............................................................................................................7

*Bilski v. Kappos*,
   561 U.S. 593 (2010)......................................................................................................7, 14, 15

*Boar's Head Corp. v. DirectApps, Inc.*,
   No. 2:14-cv-01927, 2015 U.S. Dist. LEXIS 98502 (E.D. Cal. July 28, 2015).........................9

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014).........................................................................................11, 14

*Cogent Med., Inc. v. Elsevier Inc.*,
   70 F. Supp. 3d 1058 (N.D. Cal. 2014) ...............................................................................10, 13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014).................................................................................9, 10, 13, 14

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)..................................................................................................9

*Enfish LLC v. Microsoft Corp.*,
   No. 2015-1244, 2016 U.S. App. LEXIS 8699 (Fed. Cir. May 12, 2016) ................................11

*Fed. Home Loan Mortg. Corp. v. Graff/Ross Holdings, LLP*,
   604 F. App'x 930 (Fed. Cir. 2015) ..........................................................................................15

*Gametek LLC v. Zynga, Inc.*,
   597 F. App'x 644 (Fed. Cir. 2015) ..........................................................................................15

*Gammino v. AT&T*,
   127 F.Supp.3d 264 (D. Del. 2015) ...........................................................................................10

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) .....................................................................................................................9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION FOR JUDGMENT ON THE
PLEADINGS OF INVALIDITY UNDER
35 U.S.C. § 101

ii

Case No.: 3:16-cv-00175-RS

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

3

*Guidiville Rancheria of Cal. v. United States of America,*
   5 F. Supp. 3d 1142 (N.D. Cal. 2013) ................................................................6

4

*Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.,*
   76 F.Supp.3d 536 (D. Del. 2014) .....................................................................14

5

6

*Internet Patents Corp. v. Active Network, Inc.,*
   790 F.3d 1343 (Fed. Cir. 2015) ..................................................................12, 15

7

*Kroy IP Holdings, LLC, v. Safeway, Inc.,*
   107 F. Supp. 3d 677 (E.D. Tex. 2015) ..............................................................9

8

9

*Le Roy v. Tatham,*
   55 U.S. 156 (1852) .............................................................................................7

10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
   132 S. Ct. 1289 (2012) ...............................................................................7, 8, 11

11

12

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.,*
   811 F.3d 1314 (Fed. Cir. 2016) .......................................................................14

13

*O'Reilly v. Morse,*
   56 U.S. 62 (1853) ...............................................................................................7

14

15

*OIP Techs., Inc. v. Amazon.com, Inc.,*
   788 F.3d 1359 (Fed. Cir. 2015) ..................................................................12, 15

16

*Personalized Media Commc'ns, LLC v Amazon.Com, Inc.,*
   2015 WL 4730906 (D. Del. Aug. 10, 2015) ...................................................13

17

18

*Rubber-Tip Pencil Co. v. Howard,*
   87 U.S. 498 (1874) .............................................................................................7

19

*Telinit Technologies, LLC v. Alteva, Inc.,*
   No. 2:14-CV-369, 2015 WL 5578604 (E.D. Tex. Sept. 21, 2015). ..............10

20

21

*TLI Commc'ns LLC v. AV Auto., LLC,*
   No. 2015-1372, 2016 U.S. App. LEXIS 8970 (Fed. Cir. May 17, 2016) ..........12, 14

22

*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) ...............................................................8, 14, 15

23

24

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA LLC,*
   78 F. Supp. 3d 884 (N.D. Ill. 2015) ................................................................12

25

*Versata Dev. Grp. v. SAP Am., Inc.,*
   793 F.3d 1306 (Fed. Cir. 2015) .........................................................................9

26

27

*Walker Digital, LLC v. Google Inc.,*
   66 F.Supp.3d 501 (D. Del. 2014) ....................................................................14

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Wolf v. Capstone Photography, Inc.*,
No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014)...........9, 12, 14

**STATUTES**

35 U.S.C. § 101 ......................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 12 ..........................................................................................................2, 8, 14, 15

Fed. R. Civ. P. 12(c)......................................................................................................6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on July 7, 2016 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Richard Seeborg, 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 3, 17th Floor, Plaintiff and Counterdefendant Whitepages, Inc. ("Whitepages") will move for judgment on the pleadings on its affirmative defense of invalidity of U.S. Patent No. 8,861,698 (the "'698 patent"), which Defendants Greenflight Venture Corporation and its founder, Jeffrey Isaacs (collectively, "Greenflight"), assert in this action.  Whitepages' motion is brought on the ground that the '698 patent is invalid under 35 U.S.C. § 101 for failure to recite patentable subject matter.  Whitepages bases this motion upon the facts and authorities stated in its accompanying Memorandum of Points and Authorities, the pleadings on file in this case, and upon any argument of counsel that may be heard by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The '698 patent is directed to the abstract idea of looking up information associated with a phone number—specifically, caller identification information associated with a phone number. Greenflight's Answer to Plaintiff's Amended and Supplemental Complaint for Declaratory Judgment of Non-Infringement and Counterclaim for Patent Infringement ("Counterclaim") describes the invention as a "convergence of two telephone network related technologies, namely SS7 Caller Name ID ('CNAM'), and internet based reverse telephone number search."  (Dkt. No. 21 at 5 ¶ 11.)   The "convergence," as described in the Counterclaim, amounts to nothing more than using an internet interface to query a CNAM database.  (*Id*. at 7 ¶ 18.)  A user searches the CNAM database by inputting a phone number via the internet, and information concerning the caller's identity associated with the number is returned.  (*Id*.)  No new technologies, improvements to existing technology, or novel algorithms are employed.  As such, the '698 patent is directed to the unpatentable, abstract idea of looking up information associated with a phone number, and is therefore invalid under 35 U.S.C. § 101 for failure to claim patentable subject matter.

The '698 patent adds nothing to the advancement of science or technology and is a textbook example of an attempt to lay an ownership claim to basic aspects of American commerce.  As described by Greenflight itself, the patent is directed only to a disembodied idea— looking up the identity of person associated with a phone number.  (Dkt. No. 21 at 8 ¶ 24.)  This is an idea alone, one that, in fact, humans could just as easily perform (and have performed for decades) without the aid of computers by simply scanning a phone book looking for a particular phone number.  And it is an idea that has long been carried out electronically using computers.  Such an idea is not eligible for patent protection.

The exclusions in Section 101 are designed to prevent patents exactly like this one from being used to hold innovative competitors like Whitepages for ransom.  Indeed, that is why, after *Alice Corporation Pty. Ltd. v. CLS Bank International*, courts nationwide are routinely granting Rule 12 motions on precisely the grounds raised here.  134 S. Ct. 2347 (2014).  Whitepages, therefore, respectfully requests that the Court grant its motion for judgment on the pleadings, enter a judgment of invalidity under 35 U.S.C. § 101, and dismiss Greenflight's infringement counterclaim.

## II.    STATEMENT OF FACTS

The '698 patent is titled "Post-Page Caller Name Identification System."  ('698 patent (Ex. A to Counterclaim, Dkt. No. 21 at 14-21) at Cover.)  The application leading to the patent was filed on February 6, 2014 and the patent issued just a few months later on October 14, 2014.

### A.    The '698 Patent's Written Description

The specification of the '698 patent totals less than four-and-a-half columns, including the claims and a handful of figures.  The "Detailed Description" of the invention amounts to just over one column.  ('698 patent at 3:25-4:38.)

The '698 patent generally relates to a system and method for "post-page caller name identification"—in other words, identifying a name associated with a caller's phone number.  (*Id.* at 1:8-9.)  According to the patent, until the 1960's, land line telephone calls were facilitated by switchboard operators, who would identify the calling party and the called party and coordinate the phone call.  (*Id.* at 1:19-25.)  This system was eventually replaced by a "Public-Switched

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Telephone Network" or "PSTN," which automatically routed calls and utilized an international telecommunications standard known as "Signaling System 7" or "SS7." (*See generally id.* at 1:6-39.) With PSTN systems came a new problem—anonymity of callers, which created the potential for abuse. (*Id.* at 1:26-39.) In response to this problem, telephone companies developed Caller ID technology that allowed for the presentation of a caller's phone number (CID) and/or name (CNAM) when a call is received. (*Id.* at 1:32-52.)

The patent describes the operation of prior art systems for providing CID and CNAM data in typical PSTN SS7 networks as essentially a query of databases storing CNAM information. (*Id.* at 1:62-2:5.) The patentee set out to solve what it viewed to be limitations of this prior art technology—namely, that these services were either not available for users of mobile phones and voice-over-IP telephony, which were increasingly replacing typical land line phones as of 2014 when the patent was filed, or were only available through costly subscription services. (*Id.* at 2:11-22.)

The patent purports to solve this problem through a system and method "independent of the end-user's carrier implementation (or lack thereof) of CNAM Caller ID"—in other words, a system that does not depend on your particular choice of telephone service. (*Id.* at 2:32-33.) The patent assumes that a user already has a phone number associated with a received call or page (as is typically the case when, for example, receiving a call on a mobile phone). After receiving a phone call, a user inputs the caller's phone number either into an application on a mobile device or through an HTML-based webpage. (*Id.* at 2:46-50.) The system then queries a CNAM database to retrieve identifying information of the caller. (*Id.* at 2:50-57.)

Figure 2, reproduced below, is a graphical depiction of the claimed invention, and shows the steps of receiving a phone call, entering a phone number into an unspecified computer program or website, performing a query of a CNAM database, and displaying the results of that query on the user's screen:



(*Id.* at Fig. 2.)

Though the figure above shows a website running on a computer (and the patent makes reference to a "user terminal . . . operat[ing] on a mobile application" (*id.* at 2:47-49)), the patent discloses no specific programming for either the website or mobile application, nor does it recite any detail about how to implement such a website or mobile application.  Indeed, the only detail the patent provides regarding the implementation of the claimed user interface is the non-descript graphical representation reproduced below:



FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    (*Id.* at Fig. 4.)

2        **B.      The Claimed Invention**

3        The '698 patent contains only six claims, two of which are independent.  Independent

4    claims 1 and 5 recite a system and method, respectively, but in substance claim the same basic

5    idea.[1]  Representative claim 5 is reproduced below:

6        5. A method for providing a called party with the calling party's CNAM after a
         network page, independent of interaction with the carrier or device receiving the
7        page, comprising the following steps:

8                a) entering of the calling party's telephone number CID into a web HTML
                or mobile phone application query field;
9

10               b) connecting to the PSTN via an SS7 interfacing node;

11               c) directly querying the calling party carrier CNAM database with the CID
                 query entry;
12
                 d) displaying the successfully queried calling party CNAM on the HTML
                 web or mobile phone application user interface.
13

14   Greenflight explains these steps/elements in the infringement allegations of its Counterclaim:  "a

15   user inputs a phone number into an entry field" and "[w]hen a result is found in a carrier's

16   CNAM database, the App returns a result often limited to 15 characters, identifying the name

17   associate with the queried number."[2]  (Dkt. No. 21 at 8 ¶ 24).  With respect to the "SS7

18   interfacing node," Greenflight explains that "if name data originally derives from a CNAM

19   database, SS7 compatible protocols were utilized."  (*Id.* at 8-9 ¶ 20.)  As described by

20   Greenflight, therefore, the limitation requiring "connect[ion] to the PSTN via an SS7 interfacing

21   node" is met so long as the queried database contains CNAM data.  Greenflight's Counterclaim

22   also notes that a "CNAM SS7 query is such a common occurrence that the telecom industry

23   simply refers to it as a name 'dip.'"  (*Id.*)

24   [1] *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2360 (2014) ("Put another way, the
     system claims are no different from the method claims in substance.  The method claims recite
25   the abstract idea implemented on a generic computer; the system claims recite a handful of
     generic computer components configured to implement the same idea."); *Accenture Global
26   Servs., GMBH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("[S]ystem
     claims that closely track method claims and are grounded by the same meaningful limitations will
27   generally rise and fall together.").

     [2] Although Whitepages reserves the right to challenge Greenflight's characterization, for purposes
28   of this motion Greenflight is bound by its admissions.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Each of these concepts—for example, generic websites and mobile applications allowing

2    for user inputs, database queries, CNAM databases, and SS7 networks—was well-known as of

3    2014 when the patent was filed.  (*See, e.g.*, '698 patent at 1:53-55 (describing "technical protocols

4    for Caller ID . . . [based on] what is now industry-standard implementation over the PSTN SS7

5    network."); 4:36-38 ("The SS7 interface communications (201 or 202) with the user interface via

6    an industry standard API protocol such as JSON."); 3:52-53 ("There exist several methodologies

7    to obtain a CNAM database result via SS7. . . .").)

8    The patent also includes four dependent claims, none of which meaningfully adds to or

9    limits the independent claims from which they depend.  Dependent claim 2 describes a system

10   and method as described in claims 1 and 5, but adds a requirement that the CNAM information be

11   provided to users "free-of-charge . . . for any of the end-user's multiple telephony devices,

12   thereby permitting cost-savings."  (*Id.* at 4:55-58.)  Claims 3 and 6 require that the user interface

13   include advertising to help generate revenue from the service and generate cost-savings for the

14   user.  (*Id.* at 4:59-61, 5:14-17.)  Claim 4 requires an additional step of checking whether the

15   calling party has opted out of the service by selecting privacy controls.  (*Id.* at 4:62-67.)  Each of

16   these recites only a different permutation of the fundamental practice of looking up information

17   associated with a phone number.

18   **III.   ARGUMENT**

19   Particularly given Greenflight's judicial admissions in its Counterclaim, Greenflight

20   cannot dispute that the '698 patent is directed to the abstract idea of looking up information

21   associated with a phone number.  *Guidiville Rancheria of Cal. v. United States of America*, 5

22   F. Supp. 3d 1142, 1151 (N.D. Cal. 2013) ("Under Rule 12(c) of the Federal Rules of Civil

23   Procedure, judgment on the pleadings may be granted when, *accepting as true all material*

24   *allegations contained in the nonmoving party's pleadings*, the moving party is entitled to

25   judgment as a matter of law.") (emphasis added).  The patent discloses no new technology or

26   algorithms, and therefore the Court should find the '698 patent invalid for failure to claim eligible

27   subject matter under 35 U.S.C. § 101.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A.   **The '698 Patent Is Invalid for Claiming the Unpatentable Abstract Idea of Looking Up Information Associated with a Phone Number.**

1.   **Abstract Ideas Have Long Been, and Continue to Be, Ineligible Subject Matter.**

Under Section 101 of the Patent Act, "[w]hoever invents or discovers any new and useful *process*, *machine*, *manufacture*, or *composition of matter*, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101 (emphasis added).  The Supreme Court has "long held that this provision contains an important implicit exception [for] [l]aws of nature, natural phenomena, and abstract ideas." *Alice*, 134 S. Ct. 2347, 2354 (2014) (citing *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)) (internal quotations omitted).  It has been well established "for more than 150 years" that a patent directed to a disembodied idea is outside the scope of patent eligibility.  *Alice*, 134 S. Ct. at 2354 (citing *Bilski v. Kappos*, 561 U.S. 593, 594 (2010); *O'Reilly v. Morse*, 56 U.S. 62, 112-20 (1853); *Le Roy v. Tatham*, 55 U.S. 156, 174-75 (1852)); *see also Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874) ("An idea of itself is not patentable. . . .").  The concern underlying the abstract idea doctrine is that a patentee might "pre-empt" all ways—including new ways invented by the public in the future—of achieving the results claimed by the patent.  *Alice*, 134 S. Ct. at 2354 ("We have described the concern that drives this exclusionary principle as one of pre-emption"); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (pre-emption would "tend to impede innovation more than it would tend to promote it").  A patent claiming a naked idea "would risk disproportionately tying up the use of the underlying' idea[]."  *Alice*, 134 S. Ct. at 2354-55 (citing *Mayo*, 132 S. Ct. at 1294).

Thus, courts following *Alice* apply a two-part test to evaluate patents under Section 101.  First, courts "determine whether the claims at issue are directed to a one of those patent-ineligible concepts," such as an abstract idea.  *Alice*, 134 S. Ct. at 2355.  The abstract ideas category is open ended, but it includes a "fundamental economic practice long prevalent in our system of commerce," a "longstanding commercial practice," and "a method of organizing human activity." *Id.* at 2356 (citing *Bilski*, 561 U.S. at 611, 619).  And an idea is impermissibly abstract when it is

1    "devoid of a concrete or tangible application."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709,

2    715 (Fed. Cir. 2014).

3         If the claims are directed to a patent-ineligible abstract idea, courts move on to the second

4    step of the test.  A patent must contain an "'inventive concept' sufficient to 'transform' the

5    claimed abstract idea into a patent-eligible application."  *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*,

6    132 S. Ct. at 1294).  As the Supreme Court held in *Alice*, "a generic computer cannot transform a

7    patent-ineligible abstract idea into a patent-eligible invention."  *Id*. at 2358.  Nor can adding

8    "well-understood, routine, conventional activities previously known to the industry"; limiting an

9    idea to a particular field of use or a particular technological environment; adding data-gathering

10   steps; or adding any other token post- or extra-solution activity (meaning steps incidental to

11   solving the core problem the claim addresses).  *Id*. at 2357-59 (internal quotations omitted).

12        *Alice* has led to a chorus of courts invalidating patents directed to software or business

13   methods, like the '698 patent here.  Indeed, in the less than two years since *Alice*, district courts in

14   nearly 150 cases have found a patent invalid under Section 101, including nearly 100 on a Rule

15   12 posture.

### 2.    *Alice* Step 1:  The '698 Patent Is Drawn to the Abstract Idea of Looking Up Information Associated with a Phone Number.

18        To approach step 1, "the court must identify the purpose of the claim—in other words,

19   determine what the claimed invention is trying to achieve—and ask whether that purpose is

20   abstract."  *Affinity Labs of Tex., LLC .v. Amazon.com, Inc*., No. 6:15-cv-00029, 2015 U.S. Dist.

21   LEXIS 77411, at *18 (W.D. Tex. June 12, 2015) (citation omitted).  Here, by Greenflight's own

22   admission, the claimed invention of the '698 patent is directed to looking up information

23   associated with a phone number.  (Dkt. No. 21 at 7 ¶ 18 ("the '698 patent describes a system and

24   method in which a user can input a telephone number into a website or mobile phone . . . and

25   return the name and information associated with the queried phone number"); *see* '698 patent at

26   Cls. 1, 2).)  There is thus no dispute that the claims are directed to the longstanding commercial

27   practice of looking up information associated with a phone number—a time-honored,

28   "longstanding commercial practice" dating at least to the pre-internet days when people used

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  phone books to look up phone numbers.  *See Alice*, 134 S. Ct. at 2356; *see, e.g.*, *Boar's Head*

2  *Corp. v. DirectApps, Inc.*, No. 2:14-cv-01927, 2015 U.S. Dist. LEXIS 98502, at *25 (E.D. Cal.

3  July 28, 2015) (organizing emergency phone call data "is a longstanding practice, one that can be

4  performed by a human").

5       The specification confirms that the underlying idea of looking up information about a

6  caller could be performed by a human—it describes the predecessor to direct dial systems,

7  switchboard operators who "would identify the calling party to the called party."  ('698 patent at

8  1:19-25.)  Though a human may not carry out each and every step of the patent (*i.e.* connecting to

9  a CNAM database), whether or not the claim *actually* includes steps performed mentally, the

10  existence of steps that *could* be performed by humans, such as inputting a called number and

11  searching for information associated with the number, indicates that the claims are directed to an

12  abstract idea.  *E.g.*, *Versata Dev. Grp. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015)

13  (computerized method of determining a product price using hierarchies held invalid because

14  "[c]ourts have examined claims that required the use of a computer and still found that the

15  underlying, patent-ineligible invention could be performed via pen and paper or in a person's

16  mind.") (citing *Gottschalk v. Benson*, 409 U.S. 63 (1972); *CyberSource Corp. v. Retail Decisions,*

17  *Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011)); *Content Extraction & Transmission LLC v. Wells*

18  *Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (method of scanning a document and

19  recognizing and ingesting data from that document invalid because "[t]he concept of data

20  collection, recognition, and storage is undisputedly well-known.  Indeed, humans have always

21  performed these functions.").  Paragraph 12 of the Counterclaim even acknowledges that humans

22  used to look up phone numbers using paper phone books.  (Dkt. No. 21 at 5 ¶ 12.)

23       Moreover, courts have found that claims directed to manually-achievable purposes are

24  abstract.  *E.g.*, *Kroy IP Holdings, LLC, v. Safeway, Inc*., 107 F. Supp. 3d 677, 692 (E.D. Tex.

25  2015) ("Kroy relies on the presumed volume of information and speed required [to administer a

26  computer-based incentive award program] . . . which a human armed with only a pencil and paper

27  could not keep up with. . . . [T]here is no room for doubt that if the incentive program were small,

28  humans could perform each of the tasks . . . .”); *Wolf v. Capstone Photography, Inc*., No. 2:13-

MOTION FOR JUDGMENT ON THE
PLEADINGS OF INVALIDITY UNDER
35 U.S.C. § 101

Case No.: 3:16-cv-00175-RS

CV-09573, 2014 U.S. Dist. LEXIS 156527, at *40-41 (C.D. Cal. Oct. 28, 2014) ("in the pre-internet days, an event photographer could have identified race participants . . . . This would be the analog equivalent of plaintiff's claimed process, done painstakingly with pen, paper, and similarly low-tech tools.  And it would have been a patent-ineligible abstract idea.").

*Telinit Technologies, LLC v. Alteva, Inc.* is instructive.  No. 2:14-CV-369, 2015 WL 5578604 (E.D. Tex. Sept. 21, 2015).  The district court considered the eligibility of a patent comprising the steps of "(1) receiving a data network request; (2) identifying a telephone number associated with that request; (3) signaling a switch to make a call; (4) monitoring the call; and (5) providing a user with notifications if there is a change in status of the call."  *Id.* at *16.  The court found that this patent merely described a "well-known and widely-understood concept—making a telephone call—and then applie[d] that concept to the Internet using conventional computer components as an intermediary to place and monitor the telephone calls," and was therefore abstract.  *Id.*  Just as the patent in *Telinit*, the '698 patent merely takes a well understood concept and applies it to generic computing/telecommunications equipment, and thus the '698 patent is likewise directed to an abstract idea.  *See also Content Extraction* (finding a patent directed to "data collection, recognition, and storage" to be directed to an unpatentable abstract idea) 776 F.3d at 1347; *Cogent Med., Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1063-64 (N.D. Cal. 2014) (finding a patent that described electronic searching of a database of medical resources through a "library interface" to be directed to the abstract idea of "maintaining and searching a library of information," and finding  the concept  be "little different than the basic concept of organizing a physical library so that an individual can search for information"); *Gammino v. AT&T*, 127 F.Supp.3d 264, 267, 271-72 (D. Del. 2015) (finding patent related to "receiving a 'telephone dialing digit' and a phone number, receiving payment information for a call, and completing the call if payment is adequate" to be directed to the abstract idea of "allowing a buyer to select a method of payment for a service.").

Because the '698 patent claims the abstract idea of looking up information associated with a phone number, the analysis turns to the step 2 of *Alice*, whether the claims provide an "inventive concept" sufficient to confer patent eligibility on this otherwise abstract idea.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.  *Alice* Step 2:  The Claims of the '698 Patent Provide No "Inventive Concept."

If a claim is directed to an abstract idea, the Court must "determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294).  Categories of elements that *do not* "transform" an abstract idea and steps that are *not* "inventive" include those that are "well-understood, routine, conventional."  *Id.* at 2359 (quoting *Mayo*, 132 S. Ct. at 1294).  As explained in *Alice*, "[s]tating an abstract idea while adding the words 'apply it with a computer'" fails to supply an inventive concept and satisfy Section 101.  *Id.* at 2358.  Indeed, the claims invalidated in *Alice* "amount[ed] to 'nothing significantly more' than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer."  *Id.* at 2360 (quoting *Mayo*, 132 S. Ct. at 1298); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (invocation of generic computer functionality "adds no inventive concept").

The '698 patent makes no attempt to hide the fact that its central advance is its suggestion to use a web page or mobile application to interface with existing technology for querying CNAM databases.  (*See* '698 patent at 2:25-32 (describing advance of patent over prior art as being a "standalone system . . . independent of the end-user's carrier implementation (or lack thereof) of CNAM Caller ID"); 3:52-55 (describing that CNAM database query step can be carried out using one of "several methodologies to obtain a CNAM database result via SS7").)  But, the website and mobile application interfaces referenced in the patent are unspecialized, conventional and generic.  Thus, the patent is not directed to any *improvement* in computing or communications technology—instead, it describes "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  *Enfish LLC v. Microsoft Corp.*, No. 2015-1244, 2016 U.S. App. LEXIS 8699, *12 (Fed. Cir. May 12, 2016).  The short specification of the patent provides no real guidance as to how such a website or mobile application should be programmed or what particular components would be required to implement them—indeed, the only disclosure in the patent related to the claimed user interface is a graphical representation of a computer and

phone displaying CNAM data.  (*See id.* at Fig. 4.)  Absent such a disclosure, the claims provide no limit on how to achieve the purpose to which the patent is directed—looking up information associated with a phone number—and are therefore invalid under Section 101.  *See TLI Commc'ns LLC v. AV Auto., LLC*, No. 2015-1372, 2016 U.S. App. LEXIS 8970, *18 (Fed. Cir. May 17, 2016) ("Although the claims recite that the abstract idea of classifying and storing digital images in an organized manner is carried out in a telephone system, the '295 patent fails to provide the requisite details necessary to carry out that idea."); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) ("[The claim] contains no restriction on how the result is accomplished.  The mechanism for maintaining the state is not described, although this is stated to be the essential innovation."); *Affinity Labs of Tex., LLC* ., 2015 U.S. Dist. LEXIS 77411 at *36 ("The claim is devoid of any specific technology or instructions that explain how the device can do what it purports to do or direct the practitioner how to carry out the claims.").

The cases since *Alice* have been clear that merely applying generic and conventional computing equipment to carry out existing and known methods more efficiently is not inventive. The Federal Circuit recently held, in unambiguous terms: "[a]t best, the claims describe the *automation* of the fundamental economic concept of offer-based price optimization through the use of generic-computer functions. . . . relying on a computer to perform routine tasks *more quickly or more accurately* is insufficient to render a claim patent eligible."  *OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1363 (Fed. Cir. 2015) (emphases added); *see also, e.g.*, *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA LLC*, 78 F. Supp. 3d 884, 890 (N.D. Ill. 2015) ("Generic computer automation of the conventional 'screening' step does not amount to an 'inventive concept.'"); *Wolf*, 2014 U.S. Dist. LEXIS 156527, at *41 ("That generic computer technology allows for a more *efficient* process does not confer patent eligibility.") (emphasis added).

Greenflight apparently touts the use of an "SS7 query to a CNAM database to obtain the caller name information" as the novel aspect of the claimed invention.  (Dkt. No. 21 at 7 ¶ 18.) But Greenflight also admits that "[t]he *CNAM SS7 query is such a common occurrence* that the telecom industry simply refers to it as a name 'dip.'"  (*Id.* at 8 ¶ 20 (emphasis added).)  The use of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION FOR JUDGMENT ON THE
PLEADINGS OF INVALIDITY UNDER
35 U.S.C. § 101                                12                   Case No.: 3:16-cv-00175-RS

an SS7 query, therefore, cannot as a matter of law transform the abstract idea of the '698 patent into patentable subject matter. *See Alice*, 134 S. Ct. at 2357-59 (an abstract idea is not transformed into a patentable invention through the use of "well-understood, routine, conventional activities previously known to the industry") (internal citations omitted).

Given the lack of inventive addition to the abstract idea of looking up information associated with a phone number, even when employing a database, the independent claims fail to disclose an inventive concept sufficient to transform the abstract idea of looking up information associated with a phone number into a patent-eligible application. *Content Extraction*, 776 F.3d at 1347 (invalidating claims directed to abstract idea of data collection, recognition, and storage); *Cogent*, 70 F. Supp. 3d at 1063 (finding patent disclosing method of searching a database and selecting data to be ineligible under Section 101); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 824-25 (E.D. Va. 2014) (method for querying database ineligible under Section 101); *Personalized Media Commc'ns, LLC v Amazon.Com, Inc.*, 2015 WL 4730906, at *8 (D. Del. Aug. 10, 2015) (method of receiving instructions for completing an order, associating personal information with the order, and sending the order according to instructions ineligible under Section 101).

### 4. The Dependent Claims Add Nothing Inventive.

This Court need not consider every claim of the '698 patent before concluding that all are directed to ineligible subject matter under Section 101. *Content Extraction*, 776 F.3d at 1348 (finding no error in defendant or district court declining to address every challenged claim individually because each recited "little more than the same abstract idea" and plaintiff had not explained why any of the 242 claims differed from a representative claim for Section 101 purposes). Nonetheless, none of the dependent claims of the '698 patent "offers a meaningful limitation" over the abstract idea claimed by the independent claims. *See Alice*, 134 S. Ct. at 2360.

Dependent claim 2 merely adds the requirement that the application of claim 1 "provides free-of-charge CNAM resolution . . . permitting cost savings." Dependent claims 3 and 6 further require an "advertising display" to generate revenue to allow the provider to make CNAM data

Fenwick & West LLP
Attorneys at Law
San Francisco

1   available free of charge.  Such claims fail as a matter of law to confer patent eligibility.

2   *Ultramercial*, 772 F.3d at 715 (method of using advertising as an exchange or currency invalid

3   under Section 101).

4         The only other dependent claim, claim 4, purports to prevent misuse of the system by

5   requiring it to check that the CID (i.e. phone number) inputted into the system is not subject to

6   "system opt-out privacy controls" and confirming that the CID entered by the user actually was

7   used to call the user.  ('698 patent at Cl. 4.)  Such general privacy protections are likewise not

8   inventive.  *See Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*, 76 F.Supp.3d 536, 552-

9   53 (D. Del. 2014) (patent relating to "maintaining privacy of customer billing data" invalid under

10   Section 101); *Walker Digital, LLC v. Google Inc.*, 66 F.Supp.3d 501, 515-16 (D. Del. 2014)

11   (patent related to facilitating anonymous communications invalid under Section 101); *see also*

12   *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325-26 (Fed. Cir. 2016)

13   (patent related to anonymous loan shopping invalid under Section 101).

14         The trivial additions of the dependent claims are insufficient to rescue a patent that is

15   otherwise invalid under Section 101.  The dependent claims thus add no "inventive concept"

16   sufficient to salvage the '698 patent's claim to the abstract idea of looking up information

17   associate with a phone number.  They are thus invalid under Section 101.

18       **B.**    **Resolving Questions of Patent Eligibility on the Pleadings Is Appropriate.**

19         Subject matter eligibility under Section 101 is a "threshold test" and a question of law.

20   *Bilski*, 561 U.S. at 601; *Intellectual Ventures*, 76 F.Supp.3d at 540.  Accordingly, it may be

21   resolved on the pleadings when a patent recites ineligible subject matter on its face.  *E.g.*, *Wolf*,

22   2014 U.S. Dist. LEXIS 156527, at *17 (patent invalid on Rule 12 because "the Court finds that

23   the basic character of the claimed subject matter is readily ascertainable from the face of the

24   patent") (internal quotation omitted).  With that in mind, since *Alice*, many courts have

25   invalidated patents on a Rule 12 posture, and the Federal Circuit has issued numerous opinions in

26   the past year alone affirming findings of invalidity under Section 101 at the pleading stage.

27   *buySAFE*, 765 F.3d 1350 (affirming grant of 12(c) motion); *TLI*, 2016 U.S. App. LEXIS at *6

28   (affirming grant of motion to dismiss); *Ultramercial*, 772 F.3d 709 (same); *Content Extraction*,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   776 F.3d 1343 (same); *OIP*, 788 F.3d 1359 (same); *Internet Patents*, 790 F.3d 1343 (same).[3]  It

2   has yet to reject a Section 101 challenge on a Rule 12 posture since *Alice*.

3          At least one member of the Federal Circuit would go further: "subject matter eligibility is

4   the primal inquiry, one that must be addressed at the outset of litigation. . . . addressing section

5   101 at the outset of litigation will have a number of salutary effects." *Ultramercial*, 772 F.3d at

6   718 (Mayer, J., concurring); *see also Bilski*, 561 U.S. at 602 (§ 101 is a "threshold test").

7          Judge Mayer elaborated in another concurrence:

8          Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial
           resources and spares litigants the staggering costs associated with discovery
9          and protracted claim construction litigation, it also works to stem the tide of
           vexatious suits brought by the owners of vague and overbroad business method
10         patents.  Accordingly, where, as here, asserted claims are plainly directed to a
           patent ineligible abstract idea, we have repeatedly sanctioned a district court's
11         decision to dispose of them on the pleadings.

12   *OIP*, 788 F.3d at 1364-65 (Mayer, J., concurring).

13         Judge Mayer's concerns resonate in this case.  Early resolution of the § 101 eligibility

14   question is particularly appropriate here.  Greenflight initiated this lawsuit to interfere with

15   Whitepages' business and damage its reputation, as evidenced by the false allegations it has made

16   to Google and Apple.  (*See* Dkt. No. 17 at ¶¶ 13-14.)  A cloud of litigation now threatens

17   innovation by Whitepages and others in this field, even though the patent upon which this lawsuit

18   relies does not claim eligible subject matter.  This case should be resolved promptly, with

19   minimal expense of resources either by the Court or the parties.

20   //

21   //

22   //

23   //

24   //

25   //

26

27   _____
     [3] The Federal Circuit has also recently affirmed two grants of Rule 12 motions *per curiam*.
     *Gametek LLC v. Zynga, Inc*., 597 F. App'x 644 (Fed. Cir. 2015); *Fed. Home Loan Mortg. Corp.*
28   *v. Graff/Ross Holdings, LLP*, 604 F. App'x 930 (Fed. Cir. 2015).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## IV.    CONCLUSION

2        For the foregoing reasons, Whitepages respectfully requests that the Court grant its motion

3  for judgment on the pleadings, enter a judgment of invalidity under 35 U.S.C. § 101, and dismiss

4  Greenflight's infringement counterclaim.

5  Dated:    May 23, 2016                              FENWICK & WEST LLP

6

7                                                     By: /s/ Bryan A. Kohm
                                                           Bryan A. Kohm
8
                                                       Attorneys for Plaintiff-Counterdefendant
9                                                      Whitepages, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION FOR JUDGMENT ON THE
PLEADINGS OF INVALIDITY UNDER
35 U.S.C. § 101                           16                    Case No.: 3:16-cv-00175-RS