Aldo A. Badini (SBN: 257086)
abadini@winston.com
Alexandra McTague (SBN: 290664)
amctague@winston.com
James C. Lin (SBN: 271673)
jalin@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, California 94025-4004
Telephone:    (650) 858-6500
Facsimile:    (650) 858-6550

Attorneys for Defendants-Counterclaimants
GREENFLIGHT VENTURE
CORPORATION AND JEFFREY ISAACS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WHITEPAGES, INC., a Delaware corporation, | Case No. 3:16-cv-00175-RS |
| Plaintiff-Counterdefendant, | |
| v. | **DEFENDANTS GREENFLIGHT VENTURE CORPORATION AND JEFFREY ISAACS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. §101** |
| GREENFLIGHT VENTURE CORPORATION, a Florida company, JEFFREY ISAACS, an individual, | |
| Defendants-Counterclaimants. | |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED .......................................................... 2

III. FACTS ............................................................................................................................ 2

   A.   Overview of the '698 Patent ............................................................................... 2

   B.   The State of the Art Prior to the '698 Patent ................................................... 4

   C.   The Invention of the '698 Patent ....................................................................... 4

IV.  ARGUMENT .................................................................................................................. 5

   A.   Applicable Law .................................................................................................... 5

   B.   The '698 Patent Claims Are Not Directed To An Abstract Idea ................... 6

   C.   The '698 Patent Claims Contain Inventive Concepts ................................... 12

   D.   If the Court Does Not Deny Whitepages' Motion Outright, the Motion Should Be Deferred Until After Discovery, Claim Construction, and Expert Testimony ........................................................................................................... 14

V.   CONCLUSION............................................................................................................. 16

i

DEFENDANTS GREENFLIGHT VENTURE CORPORATION AND JEFFREY ISAACS OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. §101 - CASE NO. 3:16-CV-00175-RS

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
   No. 1:06-CV-253, 2015 WL 9268913 (N.D. Ohio Dec. 21, 2015) ................................................10

*Affinity Labs of Tex., LLC .v. Amazon.com, Inc.*,
   No. 6:15-cv-00029, 2015 U.S. Dist. LEXIS 77411 (W.D. Tex. June 12, 2015) ...........................6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l. et al.*,
   134 S.Ct. 2347 (2014) ............................................................................................... *passim*

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012), *cert. denied,* 573 U.S ___, 134 S. Ct. 2870
   (2014) ................................................................................................................................15

*Chamberlain Grp., Inc. v. Linear LLC*,
   114 F. Supp. 3d 614 (N.D. Ill. 2015) ..................................................................................10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)..........................................................................9, 10, 11, 12

*Enfish, LLC v. Microsoft Corporation*,
   No. 2015-1244, 2016 U.S. App. LEXIS 8699 (Fed. Cir. May 12, 2016)..........................6, 7, 8, 9

*Mayo Collaborative Services v. Prometheus Labs.*,
   132 S.Ct. 1289 (2012) .........................................................................................................5

*TLI Commc'ns LLC v. AV Auto., LLC*, No. 2015-1372, 2016 U.S. App. LEXIS 8970
   (Fed. Cir. May 17, 2016) ...................................................................................................13

*Ultramercial Inc. v. Hulu LLC*,
   772 F.3d 709 (Fed. Cir. 2014)............................................................................................11

*Veracode, Inc. v. Appthority, Inc.*,
   137 F. Supp. 3d 17 (D. Mass. 2015) ......................................................................10, 14, 15

**Statutes**

35 U.S.C. § 101.............................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(c) ...........................................................................................................2

DEFENDANTS GREENFLIGHT VENTURE CORPORATION AND JEFFREY ISAACS OPPOSITION TO MOTION FOR
JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. §101 - CASE NO. 3:16-CV-00175-RS

## I. INTRODUCTION

Whitepages invokes the Supreme Court's precedent in *Alice v. Corporation Pty. Ltd. v. CLS Bank International,* the auspices of a "chorus of courts invalidating patents," and an oversimplified depiction of the claimed invention, in an attempt to persuade this Court to invalidate the '698 patent under 35 U.S.C. § 101. But in its quest to portray the '698 patent as patent ineligible by offering every conceivable argument—it is an abstract concept, it is a well-known method, it could be performed by a human, and it is implemented by a general-purpose computer—Whitepages fails to apply the applicable law and fails to mention a few key facts. On the law, Whitepages relies upon a Texas district court interpretation of the *Alice* standard while ignoring that the most recent, governing Federal Circuit case has rejected this very type of analysis as oversimplistic. On the facts, Whitepages fails to mention that during prosecution of the '698 patent, the examiner specifically rejected certain claims under 35 U.S.C. § 101 as drawn to unpatentable subject matter before allowing the claims at issue here. It also fails to mention that the patent issued months *after* the Supreme Court's *Alice* decision, suggesting that the examiner was well aware of *Alice's* requirements. And it fails to mention that the invention of the '698 patent enables users to access current data in real-time that was previously unavailable to them by interfacing with the public switched telephone network via an SS7 interfacing node. In short, Whitepages distorts the law and omits facts that establish that the '698 patent claims are directed to patentable subject matter under § 101.

The '698 patent discloses and claims a new system and process for enabling any user to identify the caller name information associated with hundreds of millions of telephone numbers in the United States, including people with mobile phone numbers and end users of voice-over-IP telephony (VOIP). This invention gives users access to information not previously available to them. It does so via a "user terminal, which may operate on a mobile phone application or via direct HTML web access" in which the user can enter a telephone number to retrieve the caller name information sought. '698 patent at 2:47-49. The retrieval is achieved through a novel system and method that connects to the Public Switched Telephone Network (PSTN) and then "performs a Global Title Translation (GTT) query using its SS7 node. The GTT lookup returns the respective

1

DEFENDANTS GREENFLIGHT VENTURE CORPORATION AND JEFFREY ISAACS OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. §101 - CASE NO. 3:16-CV-00175-RS

phone carrier and CNAM database applicable to the CID [Caller ID]. The system then performs a GR-1188 CNAM query via SS7 to the service control point (SCP) for the respective CNAM database. Finally, the CNAM query result is presented on the user-interface." *Id*. at 2:51-57. CNAM databases are proprietary databases of the phone carriers (ECF 21 at Counterclaim ¶ 17), and the system and method enables for real-time access to CNAM databases to provide the most current information available. The databases are accessed over a network using both hardware and software elements. This is not an abstract concept, but a concrete system and process. It is patent eligible, as found by the patent examiner.

Whitepages' motion is symptomatic of its attempts to avoid further prosecution of this litigation. To invalidate the '698 patent claims early, Whitepages proffers a plethora of arguments under § 101 that ignore key aspects of the facts and the law. Its backup to its Rule 12(c) motion is a request to stay all discovery pending claim construction. Its backup to its backup is its unsupportable request for a bond from Greenflight should discovery proceed *in a litigation that Whitepages brought*. All of these actions point to but a single conclusion: *Whitepages* is no longer inclined to invest the time or resources necessary to litigate the case. Because Whitepages' motion lacks merit, it should be denied.

**II.     STATEMENT OF ISSUES TO BE DECIDED**

(1) Whether the claims of the '698 patent are claims directed to patent eligible subject matter, as opposed to a law of nature, a natural phenomenon, or an abstract idea, such that no further analysis is required? (Yes.); and

(2) Whether, if elements of the claims of the '698 patent are found to be directed to a law of nature, a natural phenomenon, or an abstract idea, the additional elements of the claims—either individually or as an ordered combination—transform the nature of the claim into a patent-eligible application of that abstract idea? (Yes.)

**III.    FACTS**

**A.      Overview of the '698 Patent**

The invention of U.S. Patent No. 8,861,698 was conceived by Jeffrey Isaacs, a defendant in this litigation. It issued on October 14, 2014, approximately four months after the U.S. Supreme

2

DEFENDANTS GREENFLIGHT VENTURE CORPORATION AND JEFFREY ISAACS OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. §101 - CASE NO. 3:16-CV-00175-RS

Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l. et al.*, 134 S.Ct. 2347 (2014). The '698 patent has six claims, of which claims 1 and 5 are independent claims. Claim 1, an independent system claim reads:

> 1. A system, functioning independently of a called party's telephone carrier and device, provides a calling party's CNAM after entry of the calling party's telephone number CID, comprising:
> a) an entry field, within a HTML web or mobile phone application, permitting the called party to input a query, post-page, specifying the CID;
> b) an SS7 interfacing node permitting real-time access to the SS7 network;
> c) a function serving as a direct interface between the called party's query and the calling party carrier's respective CNAM database;
> d) within the HTML web or mobile phone application, a display of the successfully queried calling party CNAM.

'698 patent at 4:41-54.

Claim 5, an independent method claim reads:

> 5. A method for providing a called party with the calling party's CNAM after a network page, independent of interaction with the carrier or device receiving the page, comprising the following steps:
> a) entering of the calling party's telephone number CID into a web HTML or mobile phone application query field;
> b) connecting to the PSTN via an SS7 interfacing node;
> c) directly querying the calling party carrier CNAM database with the CID query entry;
> d) displaying the successfully queried calling party CNAM on the HTML web or mobile phone application user interface.

*Id.* at 5:1-13.

Dependent claims 2-4 and 6 add various limitations to Claims 1 and 5, including that the searches are free of charge (claim 2), selling advertising to permit free user access (claims 3 and 6),

3

1 and additional steps of confirming that a particular number has not opted out of the system and that
2 the caller ID information is correct (claim 4).

3       **B.**     **The State of the Art Prior to the '698 Patent**

4       Prior to the invention of the '698 patent, a few select telephone carriers, mainly the Baby
5 Bells, maintained databases of their subscriber information, including the caller name (or "CNAM")
6 information associated with any particular telephone number of their subscribers. *See* '698 patent at
7 1:44-52; 58-59. Each carrier maintained its own separate, proprietary database. ECF 21 at
8 Counterclaim ¶ 12. Subsequently, "telephone line portability deregulation significantly increased
9 the complexity and cost of a CNAM Caller ID query. CNAM information previously held in a few
10 databases of the Baby Bells increased to hundreds, if not thousands, of databases operated by the
11 emerging telephone companies." '698 patent at 1:56-61. Moreover, with the proliferation of Voice
12 over IP (VoIP) calling and mobile phones, "many providers never implemented full CNAM caller
13 ID to their mobile or VOIP end-users. Those that did implement CNAM Caller ID usually charge[d]
14 a monthly fee." *Id*. at 2:11-15. With many individuals starting to own several phone numbers,
15 including a landline, personal cellular mobile, and a VOIP line, "[s]ubscribing to a monthly CNAM
16 service on multiple lines, if the feature is even available, [was] costly." *Id*. at 2:18-21. Thus, with
17 the increase in both phone carriers and phone numbers, prior to the '698 patent's invention, users
18 had little means to determine the owner of a particular phone number. The invention of the '698
19 patent changed all that.

20       **C.**     **The Invention of the '698 Patent**

21       The '698 patent teaches a novel system and method to enable a user to determine the caller
22 name information associated with a telephone number. In particular, the '698 patent enables any
23 user to look up the caller name associated with any phone number at any time, without subscribing
24 to a caller ID service or having to pay a fee. *See* '698 patent at 2:33-37; 58-62. A user need only
25 type the phone number in question into a user terminal, which may be a programmed application or
26 web browser, to put the invention into action and retrieve the information sought. The "end-user
27 initiates use of the system by accessing the user terminal." *Id*. at 3:46-47. The user then enters a
28 phone number (CID) "into the CID entry field (3) of the user terminal. After entering a valid CID,

4

the user (4) submits the query to the system.  The system then initiates the 'CNAM database query' (5) via the SS7 network." *Id* at 3:47-51.

There are several methods to perform a CNAM database query via SS7.  One typical example described in the '698 patent is that "the system performs a Global Title Translation (6) using various Line Information Databases (LIDBs) to determine" the phone number's carrier.  *Id*. at 3:56-58.  After the carrier is known, "[t]he system is able to route a CNAM query using GR-1188 (7) to the appropriate SS7 signal control point (SCP).  The SCP controls CNAM database access for a given phone carrier." *Id*. at 61-64.  After a successful CNAM database query, the caller name associated with the phone number is returned.  *Id*. at 4:1-4.  While the user's interactions with the invention are simple, the invention itself is novel.  In particular, the '698 patent invented a novel process and system to permit a user to connect to the carrier proprietary CNAM databases to retrieve CNAM information, by way of a mobile phone app or webpage.  Prior to the '698 patent, users could not access these proprietary databases on their own and did not have easy access to up-to-date information about hundreds of millions of phone numbers in the United States, including landlines, mobile, and VOIP.

## IV.    ARGUMENT

### A.    Applicable Law

Section 101 of the Patent Act describes what may be patented: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  Supreme Court precedent articulates three categories of inventions that fall outside the bounds of § 101 and cannot be patented: "Laws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l. et al.*, 134 S.Ct. 2347, 2354 (2014).  These exceptions have been present for 150 years.  *Id.*  The reason for this exclusionary rule is to prevent pre-emption.  *Id.*  Claims to such matter would pre-empt use of a particular approach in all fields, and would effectively grant a monopoly over an abstract idea, which in turn could impede innovation, not foster it as intended by the patent laws.  *Id.*  But the Supreme Court also cautions not to allow these exceptions to swallow the rule: "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* (quoting *Mayo*

*Collaborative Services v. Prometheus Labs.*, 132 S.Ct. 1289, 1293-1294 (2012)).  "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept….[A]pplication[s] of such concepts to a new and useful end, we have said, remain eligible for patent protection." *Alice,* 134 S. Ct. at 2354 (internal citations and quotations omitted).  The distinction, therefore, is between claims to basic "building blocks of human ingenuity" (which are unpatentable under section 101) and claims that "integrate the building blocks into something more," which are patentable under section 101.  *Id.* at 2354-55.

      The Supreme Court has articulated a two-step process for evaluating an invalidity challenge under section 101.  *Id.* at 2355.  The first prong is to evaluate whether the challenged patent claims are directed to a law of nature, natural phenomenon, or abstract idea.  If the answer to that question is no, the analysis is concluded and the claims are patentable under § 101.  If the court determines that elements of the claims are directed to a law of nature, natural phenomenon, or abstract idea, then further analysis is required.  *Id.*  The Federal Circuit recently clarified just last month that it is "relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis."  *Enfish, LLC v. Microsoft Corporation*, No. 2015-1244, 2016 U.S. App. LEXIS 8699, at *12 (Fed. Cir. May 12, 2016).  And Step 2 of the analysis requires the court to consider the elements of the claims "both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."  *Alice,* 134 S. Ct. at 2355  (internal quotations and citations omitted).  In other words, step two seeks to insure that, as the Court previously cautioned, the exceptions to 101 do not swallow the rule that a patent may be obtained on any new and useful process, machine, manufacture, or composition of matter or any new and useful improvement thereof.

### B. The '698 Patent Claims Are Not Directed To An Abstract Idea

Relying only on a Texas district court case, Whitepages quotes the court there as saying that the first step of the *Alice* inquiry is to "identify the purpose of the claim—in other words determine what the claimed invention is trying to achieve—and ask whether that purpose is abstract." ECF 31 at 8 (citing *Affinity Labs of Tex., LLC .v. Amazon.com, Inc.,* No. 6:15-cv-00029, 2015 U.S. Dist.

DEFENDANTS GREENFLIGHT VENTURE CORPORATION AND JEFFREY ISAACS OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. §101 - CASE NO. 3:16-CV-00175-RS

LEXIS 77411, at *18 (W.D. Tex. June 12, 2015).  But in doing so Whitepages misstates the law, ignoring the later Federal Circuit pronouncement in the *Enfish* case which rejected this as overly simplistic.[1]  Rather, *Enfish* describes "the first step in the *Alice* inquiry" as one asking "whether the focus of the claims is on the specific asserted improvement" (there in computer capabilities, here in cell and VOIP phone capabilities) "or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  *Enfish, LLC*, 2016 U.S. App. LEXIS 8699 at *12.  Application of this, governing standard, leads to the conclusion that the '698 patent is patent eligible as being directed to a specific improvement in existing cell phone and VOIP technology.  Rather than being an abstract idea, such as mathematical formulae or algorithms, the basic idea of hedging against risk, and the economic practice of intermediate settlement (*see Alice,* 134 S. Ct. at 2355-2356), the '698 patent claims are directed to improving a cell or VOIP phone user's ability to look up the caller name associated with any phone number at any time.  The system of claim 1 and the method of claim 5 are directed to a particular, concrete system and process that was not previously available:  connecting individual users over the Internet to proprietary carrier CNAM databases via an SS7 interfacing node.

Applying this standard, the Federal Circuit in *Enfish* reversed the lower court's findings that the claims at issue were invalid under section 101, reiterating that software claims are not inherently unpatentable:

> Nor do we think that claims directed to software, as opposed to hardware, are inherently abstract and therefore only properly analyzed at the second step of the *Alice* analysis.  Software can make non-abstract improvements to computer technology just as hardware improvements can, and sometimes the improvements can be accomplished through either route.

*Enfish, LLC*, 2016 U.S. App. LEXIS 8699 at *11-12.

Here, Whitepages argues that the claims at issue are directed to the "longstanding commercial practice of looking up information associated with a phone number" (ECF 31 at 8:26-27) or "looking up the identity of person [*sic*] associated with a phone number" (*id*. at 2:4).  This is

---

[1] Though it is the most recent Federal Circuit guidance on how the first step of *Alice* is to be understood and applied, Whitepages nowhere even cites to *Enfish* in its *Alice* Step 1 section.  This is certainly not due to an ignorance of the case, as Whitepages does cite it in passing in a different section later in its brief.  *See* ECF 31 at 11.

7

DEFENDANTS GREENFLIGHT VENTURE CORPORATION AND JEFFREY ISAACS OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. §101 - CASE NO. 3:16-CV-00175-RS

precisely the type of argument that Microsoft made in the *Enfish* case, asserting that the claims at issue there were simply directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table" or "the concept of organizing information using tabular formats." *Enfish, LLC*, 2016 U.S. App. LEXIS 8699 at *15. But the Federal Circuit rejected this simplistic type of analysis, noting that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but insures that the exceptions to §101 swallow the rule." *Id*. (citing *Alice*). The Federal Circuit then upheld the validity of the claims, reasoning that they "are not simply directed to *any* form of storing tabular data," but were instead directed to a specific data storage technique. *Id*. at *16 (emphasis in original). Similarly, here, the claims at issue are not simply directed to finding out the identity of the person associated with a phone number, but are directed to a particular way of doing so, through a programmed application or web browser that connects to the PSTN and then, via an "SS7 interfacing mode providing real-time access" to proprietary CNAM databases of phone carriers. '698 patent at claim 1, claim 5.

The *Enfish* court found persuasive the fact that the specification at issue discussed the prior art to the patent and described the advantages the claimed invention had over such prior art. *Enfish, LLC*, 2016 U.S. App. LEXIS 8699 at *16-17. The same is true of the '698 patent, where when "telephone line portability deregulation significantly increased the complexity and cost of a CNAM Caller ID query[,] CNAM information previously held in a few databases of the Baby Bells increased to hundreds, if not thousands of databases operated by the emerging telephone companies" ('698 patent at 1:56-61), and thus, "many providers never implemented full CNAM caller ID to their mobile or VOIP end-users. Those that did implement CNAM Caller ID usually charge a monthly fee." *Id*. at 2:11-15. The invention of the '698 patent is able to provide CNAM access to users on a cell phone or webpage. Thus, the claims here are similar to the claims found to be patentable by the Federal Circuit in *Enfish*, where the Court reasoned that the "claims here are directed to an improvement in the functioning of a computer," which it contrasted to the claims in *Alice* and *Versata*, which the Court said could "readily be understood as simply adding conventional computer components to well-known business practices." *Enfish, LLC*, 2016 U.S. App. LEXIS 8699 at *18-19.

8

Whitepages is able to make its arguments only by misapprehending the invention and scope of the '698 patent claims.  Whitepages describes the claims at issue as being directed to the "longstanding commercial practice of looking up information associated with a phone number" (ECF 31 at 8:26-27), which it claims dates "at least to the pre-internet days when people used phone books to look up phone numbers" (*id.* at 8:28-9:1).  And Whitepages describes the invention as something "humans could just as easily perform (and have performed for decades) without the aid of computers by simply scanning a phone book looking for a particular phone number." ECF 31 at 2:5-7.  But Whitepages does not (and cannot) credibly claim that the functionality of the present invention was practiced or "well-known" before the patent.  To begin with, Whitepages has the "look up" precisely backwards, as phone books are listed by persons and entities with their corresponding phone number, not the other way around, and there is no allegation in the pleadings that "reverse look up" directories (where a person's name could be found by looking up the phone number) were ever widely available before the days of the Internet.  Even assuming, however, that users of a land line telephone theoretically might have had access to dozens of "reverse look up" directories, covering every region of the United States, where they could have looked up the name of a person who called them on the telephone (assuming, to begin with, that the land line had "Caller ID" which displayed the telephone number), Whitepages never asserts that peripatetic users with cell phones historically carried such directories around with them and used them on the street—much less that such users kept these directories updated in "real time" as the '698 patent teaches.  In short, there is no assertion—nor could there be one—that anyone practiced the patented invention with or without a computer before the patent-at-issue.  That is because the claims of the '698 patent are not directed to looking up a name in a telephone book to find a person's telephone number.  Rather, the claims of the '698 patent are to a system and method that enables a user to take nationwide telephone numbers, including mobile and VOIP numbers, and learn the person or entity to whom such numbers are registered to, in real-time.

In addition to the *Enfish* decision, the Federal Circuit's decision in *DDR Holdings* provides a roadmap to confirming  the validity of the '698 patent claims under § 101. In *DDR Holdings*, the patents were directed to "systems and methods of generating a composite web page that combine[d]

9

DEFENDANTS GREENFLIGHT VENTURE CORPORATION AND JEFFREY ISAACS OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. §101 - CASE NO. 3:16-CV-00175-RS

certain visual elements of a 'host' website with content of a third-party merchant webpage" such as host logos and merchant product information. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248 (Fed. Cir. 2014). The *DDR Holdings* patent enabled the host website to "display a third-party merchant's products, but retain its visitor traffic by displaying this product information from within a generated web page that 'gives the viewer of the page the impression that she is viewing pages served by the host' website." *Id.* at 1249. After a jury verdict of infringement, the defendant filed a post-trial motion asserting invalidity under § 101, which the district court denied.

The Federal Circuit affirmed. It first noted that the claims were not directed to abstract ideas such as "a mathematical algorithm" or "a fundamental economic or longstanding commercial practice." *Id.* at 1257. It then reasoned that while the claims require a computer and the Internet, "these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.* Rather, the claims are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* Multiple district court cases have applied the reasoning of *DDR Holdings* to affirm the patentability of such claims directed at improving the performance of certain technologies. *See, e.g., 01 Communique Lab., Inc. v. Citrix Sys., Inc.,* No. 1:06-CV-253, 2015 WL 9268913, at *13 (N.D. Ohio Dec. 21, 2015) (claims directed to specific solution for computer remote access problems found patent-eligible); *Chamberlain Grp., Inc. v. Linear LLC*, 114 F. Supp. 3d 614, 626 (N.D. Ill. 2015) (claims directed to opening and closing a movable barrier (e.g., garage door) using a computer network for communication between the monitor or operator (including a controller), and movable barrier was not directed to abstract idea); *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 52 (D. Mass. 2015) (computer-implemented process for deconstructing computer code was patent-eligible).

Like *DDR Holdings*, the claims of the '698 patent are not directed to clearly abstract ideas such as mathematical formulae or fundamental economic or longstanding commercial practices. And like *DDR Holdings*, the claims of the '698 patent are rooted in specific technology—computer, cell, and Internet telephone networking technology—and overcome a specific problem in a specific way, namely enabling a called party to identify the caller information for calls from numbers lacking

such information, via a system that utilizes an SS7 interfacing node.  Thus, under the Federal Circuit's reasoning in *DDR Holdings,* the '698 patent claims are patent-eligible subject matter.

Furthermore,  the claims of the '698 patent are not purely software claims.  Rather, they require the use of telephone and computer networks, and hardware elements, including an SS7 interfacing node that bridges the SS7 network to the global TCP/IP Internet network.  While *Alice* and its progeny counsel that not all software is patent-eligible, and that use of a general purpose computer is not sufficiently concrete to make an abstract concept patent eligible, most of the cases relied upon by Whitepages do not address hybrid claims that require both software and specialized hardware to function.  And unlike the claims in *Ultramercial*, which were "devoid of a concrete or tangible application," the '698 patent claims are directed to a specific problem and use of a specific system.  *See Ultramercial Inc. v. Hulu LLC,* 772 F.3d 709, 715 (Fed. Cir. 2014) (invalidating claims to abstract idea of showing an advertisement before delivering free content to the user).

As part of the step 1 analysis in *DDR Holdings*, the Federal Circuit also considered whether the claims improperly preempted the field, thus limiting future innovations, which *Alice* cautioned against.  It concluded they did not: "It is also clear that the claims at issue do not attempt to preempt every application of the idea of increasing sales by making two web pages look the same." *Id.* at 1259.  Rather, they recited "a specific way to automate the creation of a composite web page by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet." *Id.*  Likewise, the '698 patent claims does not attempt to foreclose an entire field, such as all telephone calls, or all caller ID or all reverse lookups of telephone number information, or every application of such ideas.  Rather, the claims are directed to a particular system and method to determine caller ID information post page by entering a number via a webpage or app to access CNAM databases via an SS7 interfacing node.  The "abstract idea" prong of the analysis thus fails for this additional reason.

Finally, the cases cited by Whitepages as examples of abstract ideas do not change the result.  This is not a case of preempting a well-known method, such as making a telephone call (*Telinit*), or charging for a service (*Gammino*).  This is not a case about preempting a generic concept such as data collection, recognition, and storage (*Content Extraction*).  And this is not a case about executing

11

a known method, such as searching a library catalog, via computer (*Cogent Medical*).  This is not a case of an abstract idea at all.  Rather, the '698 patent claims are directed to a novel system and method that permitted an individual user, for the first time, to access telephone company databases via a specialized network and node, to learn—in real time—the caller name associated with a nation-wide telephone number.  This new and useful process and system falls squarely within Section 101, and no further analysis is required.  The claims are patent-eligible.

### C. The '698 Patent Claims Contain Inventive Concepts

Having demonstrated that Whitepages' argument of invalidity fails at step 1 of the *Alice* test, it is not necessary to reach step 2, which requires the court to "consider the elements of each claim—both individually and as an ordered combination—to determine whether the additional elements transform the nature of the claim into a patent-eligible application of that abstract idea." *DDR Holdings,* 773 F.3d at 1255, citing *Alice,* 134 S.Ct at 2355.  "This second step is the search for an 'inventive concept,' or some element or combination of elements sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *Id.*  Nonetheless, for the sake of completeness, Greenflight herein demonstrates that the '698 patent also satisfies the second step of *Alice* because its claims contain inventive concepts that make them patent-eligible.

As explained, the system and method claims of the '698 patent enable a user to look up the caller name associated with any phone number at any time, without subscribing to a caller ID service or having to pay a fee.  *See* '698 patent at 2:33-37; 58-62.  A user need only type the phone number in question into a user terminal, which may be a programmed application or web browser, to put the invention into action and retrieve the CNAM information sought via an SS7-interfacing node. Whitepages nonetheless argues that the claims are nothing more than an "unspecialized, conventional and generic" webpage or mobile application implementing an abstract idea, and thus patent-ineligible under *Alice*.  ECF 31 at 11:21-22.  But Whitepages ignores the overall concept of the claims and the combination of elements therein.  The claims are not just to a generic webpage, but to a system and method that allow a user to enter a telephone number into an interface that puts the invention into action, an invention that then finds the desired CNAM information using an SS7 interfacing node.  The invention works independent of a telephone call and independent of any

12

DEFENDANTS GREENFLIGHT VENTURE CORPORATION AND JEFFREY ISAACS OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. §101 - CASE NO. 3:16-CV-00175-RS

particular phone carrier.  The invention achieves the correct results because it uses an SS7-interfacing node.  It is these specific elements, and the combination that they produce, that transform the claim into patent-eligible subject matter.

The cases cited by Whitepages are inapposite.  Whitepages relies on *TLI, Affinity Labs, and Internet Patents* all of which stand for the proposition in *Alice* that a claim can be invalid under § 101 if the patent fails to provide "requisite details" beyond a general purpose computer.  But as *TLI* explains, there is a difference between an invention that merely adds a computer, and an invention that *improves* computing—such as the '698 patent:

> "We contrasted claims directed to an improvement in the functioning of a computer with claims simply adding conventional computer components to well-known business practices, or claims reciting use of an abstract mathematical formula on any general purpose computer, or a purely conventional computer implementation of a mathematical formula, or generalized steps to be performed on a computer using conventional computer activity."

*TLI Commc'ns LLC v. AV Auto., LLC*, No. 2015-1372, 2016 U.S. App. LEXIS 8970, at *9 (Fed. Cir. May 17, 2016).

Whitepages next argues that the '698 patent claims add nothing more than "automation" to improve "efficiency" to a conventional process, and thus are not patent eligible.  ECF 31 at 12:14-16.  But again, Whitepages cannot argue that this process was ever available to users before the patented invention; owners of cell phones never carried around complete books of "reverse look up" directories,  never mind updating them in real time.   Nor was this information effectively available to users by means of electronic databases.  While some versions of portable "Caller ID" were available prior to the invention, the patent makes clear that this was fragmentary and incomplete, as "CNAM information previously held in a few databases of the Baby Bells increased to hundreds, if not thousands, of databases operated by the emerging telephone companies," creating the problem that "many providers never implemented full CNAM Caller ID to their mobile or VOIP end-users," and those that did charged a monthly fee.  *Id*. at 2:11-15.  The system and process of the '698 patent solved these problems.  It is not mere automation or improved efficiency of identifying telephone information, rather, it is a new system to provide CNAM data to users independent of any particular telephone carrier and separate from an active telephone call.

The reasoning of *Veracode v. Appthority,* is instructive.  There, the court found that a computer-implemented process for deconstructing computer code was patent-eligible because it "could not be done using the technology as it existed at the time, according to the trial testimony, and that rely upon the complex functions of the patented computer system." *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 52 (D. Mass. 2015).  There, the patent claims were to more than "mere automation of a well-known process" because it "both improved the speed and accuracy of the process and produced a largely *complete* result through optimization and exhaustion that was unobtainable using existing methods." *Id.* at 52-53.  Here, Whitepages has failed to show that there was *any* implementation of the process before the claimed invention—whether manual or otherwise—so it can hardly be argued that the invention was "mere automation of a well-known process."

Finally, Whitepages argues that an SS7 query was known in the art and cannot be the basis for patent eligibility.  The *Alice* test is not whether a particular element of a claim was known, but whether the claim elements separately or in combination contain inventive concepts.  Whitepages does not cite to any allegation or portion of the patent specification suggesting that the prior art used an SS7 interfacing node to allow a user to identify unknown caller information without an active telephone call and independent from any particular carrier.  For the reasons explained above, the systems and methods of the claims are inventive and solved an existing problem in telephone and computer applications.  The claims are patent eligible.

### D. If the Court Does Not Deny Whitepages' Motion Outright, the Motion Should Be Deferred Until After Discovery, Claim Construction, and Expert Testimony

The '698 patent claims are patent eligible because they are not drawn to abstract concepts but instead represent an improvement in specific cell phone and VOIP technology, involving networking, hardware interfaces, and software.  But to the extent the Court does not deny Whitepages' motion outright at step 1 of the *Alice* analysis, it should at a minimum defer ruling on this motion until after discovery, claim construction of any disputed claim terms, and expert reports.  Fully half of the § 101 cases cited by Whitepages decided the issue after claim construction, which is consistent with the Federal Circuit's observation that "it will ordinarily be desirable—and often

14

necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012), *cert. denied,* 573 U.S ___, 134 S. Ct. 2870, (2014).  Indeed, many cases relied on by Whitepages decided § 101 issues on summary judgment, after there was sufficient record evidence, including, e.g., *Accenture, Cybersource, and Walker Digital.*   In other cases still, such as *Veracode, supra,* the court waited until after a jury verdict to determine patent eligibility under § 101. *Veracode,* 137 F. Supp. 3d at 52.

      Whitepages' brief in support of its motion does not address whether discovery or claim construction are necessary prior to deciding its motion.  It does, however, rely heavily on arguments that various elements of the claims were known in the prior art, that this type of system could be done by any person by hand, and that there is nothing inventive about the claims.  The patent, however, is presumed valid, and the Patent Office found it inventive over the prior art.  Thus, Whitepages' argument that the claim elements alone or in combination are not inventive requires discovery into those issues, which will likely require expert testimony about what was previously known and how the '698 patent changed the art.  Other relevant evidence will include, e.g., evidence of copying and commercial success, both of which suggest that this idea is inventive and not previously known.  Whitepages' arguments cannot be fully evaluated without a complete factual record.  Furthermore, claim construction is required because in its Answer and Affirmative Defenses to Greenflight's Counterclaim, Whitepages alleges that certain claim terms are ambiguous and indefinite, including "interfacing node," "permitting real-time access," "direct interface," and/or "directly querying."  ECF 26 at ¶ 37.  This admission suggests that, again, to the extent the Court does not deny Whitepages' motion outright, at a minimum, claim construction should first be had to determine the scope of the claims, especially given that these elements identified by Whitepages as requiring construction are plainly relevant to the inventive concept.

## V. CONCLUSION

For the foregoing reasons, defendants Greenflight Venture Corporation and Jeffrey Isaacs request that Whitepages motion be denied, or deferred until development of the factual record and *Markman*.

Dated:  June 6, 2016                              WINSTON & STRAWN LLP

By:   */s/ Aldo Badini*
    Aldo A. Badini
    Alexandra McTague
    James C. Lin
    Attorneys for Declaratory Judgment Defendants
    and Counterclaim-Plaintiffs
    GREENFLIGHT VENTURE CORPORATION
    AND JEFFREY ISAACS