BRYAN A. KOHM (CSB No. 233276)
bkohm@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

ELIZABETH HAGAN (WSBA No. 46933)
Admitted *Pro Hac Vice*
ehagan@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511

Attorneys for Plaintiff-Counterdefendant
WHITEPAGES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WHITEPAGES, INC., a Delaware corporation,<br><br>    Plaintiff-Counterdefendant,<br><br>    v.<br><br>GREENFLIGHT VENTURE CORPORATION, a Florida company, and JEFFREY ISAACS, an individual,<br><br>    Defendants-Counterclaimants. | Case No.: 3:16-cv-00175-RS<br><br>**DEFENDANT WHITEPAGES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. § 101**<br><br>Date: July 7, 2016<br>Time: 1:30 PM<br>Dept: Courtroom 3, 17th Floor<br>Judge: Honorable Richard Seeborg |

# TABLE OF CONTENTS

Page

I. GREENFLIGHT'S CHARACTERIZATION OF THE PATENT CONFLICTS WITH ITS ALLEGATIONS IN THE PLEADINGS ............................................................ 3

II. *ALICE* STEP 1: GREENFLIGHT FAILS TO SHOW THAT THE '698 PATENT IS DIRECTED TO ANYTHING MORE THAN THE ABSTRACT IDEA OF LOOKING UP INFORMATION ASSOCIATED WITH A PHONE NUMBER. ................................................................................................................................ 5

III. *ALICE* STEP 2: GREENFLIGHT IDENTIFIES NO INVENTIVE CONCEPT IN THE CLAIMS, AND INSTEAD RELIES ON DISCLOSURES IN THE SPECIFICATION REGARDING EXISTING AND GENERIC TECHNOLOGY. ......................................................................................................... 10

IV. THE FACT THAT THE PATENT OFFICE ALLOWED THE ASSERTED CLAIMS DOES NOT MEAN THE PATENT IS ENTITLED TO ANY SPECIAL PRESUMPTION OF PATENT ELIGIBILITY. ............................................... 11

V. THE COURT SHOULD NOT ACCEPT GREENFLIGHT'S INVITATION TO REQUIRE THE PARTIES TO EXPEND RESOURCES LITIGATING A PATENT THAT IS INVALID ON ITS FACE. .................................................. 12

VI. CONCLUSION .............................................................................................................. 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS OF
INVALIDITY UNDER 35 U.S.C. § 101        i              Case No.: 3:16-cv-00175-RS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
No. 3:15-cv-164-HES-MCR, 2016 WL 1375141 (M.D. Fla. March 30, 2016) ...................... 12

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
No. 6:15-CV-0029-WSS-JCM, 2015 U.S. Dist. LEXIS 77111
(W.D. Tex. June 12, 2015) ................................................................................................ 5, 9

*Alice Corp. Pty Ltd. v. CLS Bank Int'l.*,
134 S. Ct. 2347 (2014) .................................................................................................. *passim*

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ............................................................................................ 4

*Clarilogic, Inc. v. Formfree Holdings Corp.*,
No. 3:15-cv-41-DMS-NLS (S.D. Cal. Mar. 4, 2016) Dkt. No. 53 ..................................... 12

*The Cleveland Clinic Found. v. True Health Diags. LLC*,
No. 1:15 CV 2331, 2015 WL 7430082 (N.D. Ohio Nov. 18, 2015) .................................. 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) ............................................................................................ 9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) .................................................................................... 1, 6, 7

*Endo Pharms. Inc. v. Actavis Inc.*,
C.A. No. 14-1381-RGA, 2015 WL 5580488 (D. Del. Sept. 23, 2015) .............................. 12

*Endo Pharms. Inc. v. Actavis Inc.*,
C.A. No. 14-1381-RGA, 2015 WL 7253674 (D. Del. Nov. 17, 2015) .............................. 12

*Enfish, LLC v. Microsoft Corp.*,
No. 2015-1244, 2016 U.S. App. LEXIS 8699 (Fed. Cir. May 12, 2016) .................. 1, 5, 6, 7

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ................................................................................................................ 9

*Guidiville Rancheria of Cal. v. United States of America*,
5 F. Supp. 3d 1142, 1151 (N.D. Cal. 2013) .......................................................................... 4

*In re Smith*,
815 F.3d 816 (Fed. Cir. 2016) .............................................................................................. 9

*In re West View Res., LLC*,
No. 14-CV-2675-CAB (WVG), 2015 WL 9685577
(S.D. Cal. Dec. 11, 2015) ................................................................................................... 12

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ............................................................................................ 7

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ................................................................................................4, 7

*Inventor Holdings, LLC v. Gameloft, Inc.*,
    135 F.Supp.3d 239 (D. Del. 2015) ................................................................................................12

*Kroy IP Holdings, LLC, v. Safeway, Inc.*,
    107 F. Supp. 3d 677, 692 (E.D. Tex. 2015) ...................................................................................8

*MacroPoint, LLC v. FourKites, Inc.*,
    No. 1:15 CV 1002, 2015 WL 68707118 (N.D. Ohio Nov. 6, 2015) ..............................................12

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) (Mayer, J., concurring) ..............................................................13

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.*,
    No. 16-cv-00925, 2016 WL 3196657 (N.D. Cal. Jun. 9, 2016) ..........................................2, 3, 13

*Racetech, LLC v. Kentucky Downs, LLC*,
    Civil Action No. 1:15-CV-00059, 2016 WL 843382 (W.D. Ky. Mar. 1, 2016) ......................12

*Secure Mail Solutions LLC v. Universal Wilde, Inc.*,
    No. 2:15-cv-7562-DOC (C.D. Cal. Feb. 16, 2016) Dkt. No. 24 ..................................................12

*SkillSurvey, Inc. v. Checkster LLC*,
    Civil Action No. 15-1766, 2016 WL 1255785 (E.D. Pa. Mar. 31, 2016) ................................12

*SnowCast Solutions LLC v. Endurance Specialty Holdings, Ltd.*,
    No. 15 CV 5305, 2016 WL 1161299 (N.D. Ill. Mar. 23, 2016) ................................................12

*Telinit Technologies, LLC v. Alteva, Inc.*
    No. 2:14-CV-369, 2015 WL 5578604 (E.D. Tex. Sept. 21, 2015) ..............................................10

*TLI Communications LLC v. AV Automotive, LLC*,
    No. 2015-1372, 2016 U.S. App. LEXIS 8970 (Fed. Cir. May 17, 2016) ........................ *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014), *cert. denied sub nom.*
    *Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015) ................................................1

*Veracode, Inc. v. Appthority, Inc.*,
    137 F. Supp. 3d 17 (D. Mass. 2015) ....................................................................................11, 12

*Versata Dev. Grp. v. SAP Am., Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015) ................................................................................................9

*Wolf v. Capstone Photography, Inc.*,
    No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014) ................8, 13

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**STATUTES**

35 U.S.C. § 101 ................................................................................................................ *passim*

**RULES**

Fed. R. Civ. P. 12 ....................................................................................................................13

Fed. R. Civ. P. 12(c) .................................................................................................................4

Greenflight Venture Corporation and Jeffrey Isaacs (collectively, "Greenflight") speak out of both sides of their mouth. In its Counterclaim, Greenflight asserts that the "SS7 interfacing node" limitation of the '698 patent is satisfied simply because a database contains "name data [that] originally derives from a CNAM database"—in other words, the database is a CNAM database. (Counterclaim (Dkt. No. 21) at 8 ¶ 20.) In its Opposition, however, Greenflight argues that this same limitation purportedly saves the patent from invalidity under Section 101 because the "SS7 interfacing node" is a particular type of hardware that performs a specific type of query of a CNAM database. (Opp. (Dkt. No. 36) at 12.) This motion must be resolved on the pleadings, not based on characterizations of the patent in briefing. Based on Greenflight's allegations in the pleading, the '698 patent is directed to nothing more than the abstract idea of looking up information associated with a phone number—an idea that even Greenflight does not contend is entitled to patent protection.

Nevertheless, even based on the revised interpretation of the patent articulated in Greenflight's Opposition, the '698 patent amounts to nothing more than employing a web terminal/application to initiate a process well known and "typical[]" in the industry "at the time of filing." ('698 patent at 1:62-63.) The '698 patent thus is also invalid under Greenflight's revised theory.

In addition to recasting the alleged invention of the '698 patent, Greenflight attempts to save its patent by misapplying the Federal Circuit's opinions in *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244, 2016 U.S. App. LEXIS 8699 (Fed. Cir. May 12, 2016) and *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). Rather than focusing on the proper subject of the *Alice* Step 1 analysis—the purpose of the claimed invention—Greenflight instead repeatedly emphasizes the purportedly "novel" *solution* of the claims. (*See, e.g.*, Opp. at 12.) But novelty of the claims does not affect patent-eligibility. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015). In any event, Greenflight does not identify anything novel in the claims—no specific programming or algorithm, and no unique hardware—that would affect their eligibility. Indeed, the claims of the '698 patent only reference a generic and unspecified "HTML web or

mobile phone application" and an unspecified "SS7 interfacing node" that Greenflight itself contends is "such a common occurrence that the telecom industry simply refers to it as a name 'dip.' (Counterclaim at 7-8 ¶ 20.)  Moreover, Greenflight's argument that its claims cannot be directed to an abstract idea because they claim a "hybrid" of software and hardware is similarly unavailing and flies in the face of Federal Circuit case law finding such patents invalid.

In its analysis under *Alice* Step 2, Greenflight contends that the "SS7 interfacing node" supplies an inventive concept to transform the idea of the claims into a patent-eligible application of that idea. (Opp. at 13.)  But this is contradicted by its own statements that the limitation is met simply by virtue of a web browser querying a CNAM database.  Even assuming that Greenflight was not bound by that admission, which contradicts its argument in this briefing that the SS7 interfacing node is a hardware device used by a web browser to connect to the PSTN for the purpose of querying CNAM database using SS7 protocols, Greenflight's Counterclaim acknowledges that such a device performing a CNAM SS7 query was ubiquitous (and certainly non-inventive) as of the date the patent was filed. (*See* Counterclaim at 7-8 ¶ 20.)

Greenflight's argument that the Court should apply a heightened presumption of validity because the patent issued post-*Alice* or because the Patent Office rejected certain claims of the patent (under the *pre-Alice* standard) also lacks merit.  Indeed, district courts throughout the country have invalidated claims of over eighteen patents that, like the '698 patent, issued after the Supreme Court's June 2014 opinion in *Alice*—a significant number given that the patents must have issued post-*Alice* and already be the subject of litigation.

Finally, the Court should reject Greenflight's invitation to defer ruling on Whitepages' motion until after the parties have engaged in costly claim construction and discovery.  Courts in over 170 cases have resolved § 101 challenges on the pleadings alone (and found one or more claims invalid in roughly 120 of these cases).[1]  Indeed, just last week a court in this district granted a motion for judgment on the pleadings of Section 101 invalidity and declined the plaintiff's request to defer resolving the motion until after claim construction.  *Papst Licensing*

---

[1] For the sake of brevity, Whitepages does not include these citations here.  But should the Court desire, Whitepages can provide the full list of these cases in a supplemental submission.

*GmbH & Co. KG v. Xilinx Inc.*, No. 16-cv-00925, 2016 WL 3196657, *21 (N.D. Cal. Jun. 9, 2016). This Court should do the same here, particularly as Greenflight fails to identify any claim term whose construction will be material to patent eligibility and fails to identify any discovery that would be relevant to this pure issue of law. *See id.* ("Plaintiff has not identified any material factual dispute that exists or any claim construction issue that might affect the Court's Section 101 analysis.").

Whitepages, therefore, respectfully requests that the Court grant its motion for judgment on the pleadings, enter a judgment of invalidity under 35 U.S.C. § 101, and dismiss Greenflight's infringement counterclaim.

## I.   GREENFLIGHT'S CHARACTERIZATION OF THE PATENT CONFLICTS WITH ITS ALLEGATIONS IN THE PLEADINGS

Greenflight initially characterizes "The Invention of the '698 Patent" as a system/method "to enable a user to determine the caller name information associated with a telephone number." (Opp. at 4, 7.) Notably, this description is substantively identical to Whitepages' characterization of the abstract idea as "looking up information associated with a phone number."

In an effort to give the impression of complexity, Greenflight goes on to describe the multi-step process described in the specification:

> One typical example described in the '698 patent is that "the system performs a Global Title Translation (6) using various Line Information Databases (LIDBs) to determine" the phone number's carrier. *Id.* at 3:56-58. After the carrier is known, "[t]he system is able to route a CNAM query using GR-1188 (7) to the appropriate SS7 signal control point (SCP). The SCP controls CNAM database access for a given phone carrier." *Id.* at 61-64. After a successful CNAM database query, the caller name associated with the phone number is returned. *Id.* at 4:1-4.

(*See id.* at 5.). It cannot be ignored that the patent does not contend that this process is Greenflight's invention but rather the "typical[]" process employed in the art for a CNAM query "at the time of filing" the '698 patent." ('698 patent at 1:62-2:4 (describing Background of the Invention).) As such, even under the theory asserted by Greenflight in its Opposition, the "invention" of the '698 patent consists only of using a terminal—"a programmed application or web browser"—to initiate the "typical[]" process "at the time of filing" for performing a CNAM query. (*See* Opp. at 4 (describing the "invention of the '698 patent").)

REPLY IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS OF
INVALIDITY UNDER 35 U.S.C. § 101              3              Case No.: 3:16-cv-00175-RS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Irrespective of the fact that Greenflight's Opposition claims that the '698 patent is patent-eligible because it performs the "typical[]" prior art process for conducting a CNAM query, Greenflight's description is inconsistent with its pleadings. As explained in Whitepages' opening brief, Greenflight's characterization of the invention in its Counterclaim lacks any requirement that the Whitepages ID App employ any of the mechanisms described above to perform the CNAM database query—it took this approach because it could not assert infringement otherwise. (*See* Dkt. No. 31 at 5-6.) Greenflight never alleges that Whitepages infringes the '698 patent through the use of Global Title Transaction, making a query using a GR-1188 or similar device using SS7 protocols, employing an SCP controlling CNAM database access, or even an unspecified "specialized network and node." Greenflight's characterization of the invention in its Counterclaim, rather, vitiates the mechanisms described in its Opposition, and requires only that the database contain CNAM data. (*Id.*) Indeed, Greenflight's pleadings allege that Whitepages infringes the patent simply by using a mobile phone application to look up information associated with a phone number in a CNAM database." (*See* Counterclaim at 8 ¶ 24; *see also id.* 7-8 ¶ 20.) Greenflight cannot, on the one hand, contend for purposes of infringement that the "SS7 interfacing node" is merely a characteristic of underlying data rather than a step required by the claims, and, for purposes of invalidity, contend that the SS7 query described in the '698 patent's specification is the essential element that rescues its claim from patent ineligibility. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses.").

Greenflight should be held to the admissions it makes in its Counterclaim. *Guidiville Rancheria of Cal. v. United States of America*, 5 F. Supp. 3d 1142, 1151 (N.D. Cal. 2013) ("Under Rule 12(c) of the Federal Rules of Civil Procedure, judgment on the pleadings may be granted when, *accepting as true all material allegations contained in the nonmoving party's pleadings*, the moving party is entitled to judgment as a matter of law.") (emphasis added). As such, the description of an SS7 query in the specification, which Greenflight's pleadings contend is not part of the claims—is not relevant to the patent-eligibility of the claims. *See, e.g., Internet*

REPLY IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS OF
INVALIDITY UNDER 35 U.S.C. § 101                4                Case No.: 3:16-cv-00175-RS

*Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (claim abstract where specific mechanism described as "essential innovation" of the patent was not actually required by the claims). Based on the admissions in the pleadings, as discussed further below, the '698 patent is ineligible under § 101.

**II.   *ALICE* STEP 1:  GREENFLIGHT FAILS TO SHOW THAT THE '698 PATENT IS DIRECTED TO ANYTHING MORE THAN THE ABSTRACT IDEA OF LOOKING UP INFORMATION ASSOCIATED WITH A PHONE NUMBER.**

As an initial matter, Greenflight's contention that the Federal Circuit in *Enfish* rejected the approach described in Whitepages' brief—identifying the purpose of the claims—as "overly simplistic" is incorrect.[2]  (Opp. at 7.)  The Federal Circuit in *Enfish* did not reject this proposition of law, articulated by the court below (and subsequently cited by the Western District of Texas, among others, in *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, No. 6:15-CV-0029-WSS-JCM, 2015 U.S. Dist. LEXIS 77111 (W.D. Tex. June 12, 2015)).  Indeed, in *TLI Communications LLC v. AV Automotive, LLC*, an opinion issued days *after Enfish*, the Federal Circuit applied this analysis, looking to the "problem facing the inventor" as part of the Step 1 analysis.  No. 2015-1372, 2016 U.S. App. LEXIS 8970 (Fed. Cir. May 17, 2016).

Greenflight contends that under the Federal Circuit's opinion in *Enfish* its claims are not abstract.  But this case is nothing like *Enfish*.  In *Enfish*, the Federal Circuit upheld the eligibility under Section 101 of claims related to an 'innovative logical model for a computer database."  *Enfish*, 2016 U.S. App. LEXIS 8699 at *2.  The patent claimed "a specific implementation of a solution to a problem in the software arts."  *Id.* at *13, 22.  Patent eligibility was addressed after the claims were construed to require a detailed "four-step algorithm" to carry out a "specific improvement to the way computers operate," *i.e.*, to store data in a database that "functions differently than [a] conventional database."  *Id.* at *13-14, 17.  The claims recited "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory."  *Id.* at *21.  In concluding the patent was eligible under Section 101, the Court confirmed well-

---

[2] Greenflight accuses Whitepages of misleading the Court by citing the standard referenced in the Texas court's opinion in *Enfish*.  (*See* Dkt. No. 36 at 7 fn. 1.)  Given that the Federal Circuit did not alter the standard recited in that opinion, Whitepages will not respond to Greenflight's misguided attacks on counsel, and will instead focus on the merits of the issues before the Court.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

established Supreme Court and Federal Circuit precedent that claims directed to the use of conventional or generic technology, without more, are not patentable. *Id.* at *9-10.

Unlike the claims in *Enfish*, as addressed above, Greenflight cannot assert that the claims of the '698 patent disclose a new algorithm or new data structure. Based on the admissions in its pleadings, the only remotely technological limitations of the '698 patent's claims are its reference to an HTML or mobile phone application user interface—conventional and generic technology—and a CNAM database.[3] Even without those admissions, as addressed above, Greenflight's Opposition contends that the invention consists of using a generic terminal to input a phone number to initiate the "typical[]" SS7 query that already existed "[a]t the time of filing." ('698 patent at 1:62-64.) Though the *Enfish* Court referenced "disparagement" of prior art in the patent at issue as supporting the conclusion that the claims were not abstract, it reached this conclusion because the patent actually claimed a new and detailed process (complete with a four-step algorithm) that did not exist in the prior art. *See Enfish*, 2016 U.S. App. LEXIS 8699 at *17. Here, the patent's disparagement of the prior art is not directed to an approach of the prior art—the patent indeed adopts that prior art approach—but rather the fact that everyday consumers were charged a subscription fee for its use. ('698 patent at 2:11-23.) The *Enfish* Court did not hold, as Greenflight suggests, that a method relying on well-known and generic technology used in a conventional manner is non-abstract merely because the patent criticizes the industry for charging consumers for its use.

Greenflight's reliance on *DDR Holdings, LLC v. Hotels.com, L.P.*, is similarly misplaced. Indeed, that decision only underscores what is missing in the '698 patent. 773 F.3d at 1248. The patent in *DDR* dealt with a problem unique to the Internet: Internet users visiting one website might be interested in viewing products sold on a different website, but conventional use of the Internet hyperlink protocol would require that the owners of the first website redirect users away from their website to the other website of interest. *Id.* at 1257-58. To address the problem of retaining website visitors, the claimed solution used a series of steps that created a hybrid web

---

[3] Recall that Greenflight's pleadings assert that the "SS7 interfacing node" is met simply by the database containing CNAM data.

REPLY IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS OF
INVALIDITY UNDER 35 U.S.C. § 101            6                Case No.: 3:16-cv-00175-RS

page incorporating "look and feel" elements from the host website with commerce objects from the third-party website. *Id.* "[T]he claimed solution [was] rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* It did not "broadly and generically claim 'use of the Internet' to perform" a naked idea "with insignificant added activity." *Id.* Accordingly, the Court found the patent was directed to patent-eligible subject matter under § 101. *Id.* at 1256-57, 1259.

The '698 patent claims are different. First, unlike the patent in *DDR*, the '698 patent is directed to the problem of looking up information associated with a phone number—a problem that arises outside of the Internet or any other technological field. In *Intellectual Ventures I LLC v. Capital One Bank (USA)*, although the claims recited an interface for customizing and displaying web pages based on user-specific information, this Court found them akin to the pre-Internet practice of tailoring media content, as in newspaper inserts or television advertisements, and held that they "do not address problems unique to the Internet, so *DDR* has no applicability." 792 F.3d 1363, 1371 (Fed. Cir. 2015). The same is true here. The claims of the '698 patent recite generic computing and networking technology, but ultimately address a concern (identifying a caller) that long predates computers and the Internet. *See DDR*, 773 F.3d at 1257 (claims that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" do not satisfy § 101). Second, unlike the claims in *DDR*, the '698 patent does not recite a solution to the problem. Under Greenflight's contentions in its pleadings, the claims fail to specify how to access a CNAM database, aside from their recitation of the functional term "SS7 interfacing node" and token reference to undescribed web or mobile phone interfaces. *See Internet Patents*, 790 F.3d at 1348 (no inventive concept where claims did not recite how the key element worked). And under the characterization of the invention described in Greenflight's Opposition, the invention of the claims consists merely of using a generic application on the Internet to initiate the "typical[]" CNAM query. Thus, *DDR* underscores the shortcomings in the '698 patent claims.

While neither *Enfish* nor *DDR* apply to this case, the Federal Circuit's opinion in *TLI*, issued just days ago and days after *Enfish*, is instructive. Like the '698 patent, the patent in *TLI*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

did not claim "an inventive solution to any problem." *TLI*, 2016 U.S. App. LEXIS 8970 at *7, 9. It was directed to an abstract idea of "classifying and storing digital images in an organized manner" without "provid[ing] the requisite details necessary to carry out that idea." *Id*. at *7, 18. While TLI's claims recited a portable telephone and server, these components "behave[d] exactly as expected according to their ordinary use" and their "abstract functional descriptions [were] devoid of technical explanation as to how to implement the invention." *Id*. at *17, 18. TLI's patent was invalid because it failed to provide a specific implementation of any solution. The same is true of the '698 patent. Its central contribution is the ability to access existing databases using existing database queries and generic mobile applications and HTML websites, enabling access from multiple devices independent of a particular carrier. (*See* '698 patent at 2:26-32.) But, like the patent in *TLI*, the '698 patent discloses no *new* website, no *new* mobile application, no *new* networking equipment, and no *new* database query. *Id.* at *10 ("The specification does not describe a new telephone, a new server, or a new physical combination of the two."). Like the TLI patent, the '698 patent is patent-ineligible. It relies on a skilled artisan to fill in these key elements using existing technology.

   Greenflight next contends that the '698 patent's claims are patent-eligible because they cannot be performed by humans. This contention lacks merit. Greenflight first asserts that humans could not perform a "reverse lookup" using traditional phonebooks. But humans could, conceivably, look at each number in a phonebook until they find the number they are looking for, and then identify a name associated that phone number. That Greenflight's invention might make this process faster and more efficient does not confer patent-eligibility. *Kroy IP Holdings, LLC, v. Safeway, Inc*., 107 F. Supp. 3d 677, 692 (E.D. Tex. 2015) ("Kroy relies on the presumed volume of information and speed required [to administer a computer-based incentive award program] . . . which a human armed with only a pencil and paper could not keep up with. . . . [T]here is no room for doubt that if the incentive program were small, humans could perform each of the tasks . . . ."); *Wolf v. Capstone Photography, Inc*., No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527, at *40-41 (C.D. Cal. Oct. 28, 2014) ("in the pre-internet days, an event photographer could have identified race participants . . . . This would be the analog equivalent of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

plaintiff's claimed process, done painstakingly with pen, paper, and similarly low-tech tools. And it would have been a patent-ineligible abstract idea."). Indeed, the '698 patent expressly states that "reverse lookups" were carried out by switchboard operators in the early days of the telephone. ('698 patent at 1:19-25.) Greenflight's assertion that "reverse lookup" directories did not exist in the pre-Internet age is simply untrue—so-called "Grey pages" sorted by number as opposed to name existed long before Greenflight's invention.[4] Greenflight's assertion that no one "practiced the patent invention with or without a computer before the patent-at-issue" is irrelevant. (Opp. at 9.) Indeed, if this alone conferred patent-eligibility, courts could never find claims reciting computer hardware or software to be abstract based on a human's ability to carry out the purpose of the claimed invention in his or her head or using a pen and paper. But courts commonly make such findings, even where a human without a computer could not carry out each and every step of a patent so long as the underlying purpose of the claims could be achieved without computer technology. *See Versata Dev. Grp. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) (computerized method of determining a product price using hierarchies held invalid because "[c]ourts have examined claims that required the use of a computer and still found that the underlying, patent-ineligible invention could be performed via pen and paper or in a person's mind.") (citing *Gottschalk v. Benson*, 409 U.S. 63 (1972).

Greenflight finally contends that its claims cannot be abstract because they are "hybrid claims that require both software and hardware to function." (Opp. at 11.) But no authority supports this proposition. Courts routinely find method claims that recite hardware elements to be invalid under § 101. *See Alice Corp. Pty Ltd. v. CLS Bank Int'l.,* 134 S. Ct. 2347, 2359 (2014), (claims formally reciting a "machine" such as a "tangible system" or "computer-implemented claims" not sufficient under Section 101); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1345, 1349 (Fed. Cir. 2014) (software-based method claim construed

---

[4] Though not a factual determination necessary to resolve this motion, Greenflight's misrepresentation is worth noting. Wikipedia, *Reverse telephone directory* (June 5, 2016) available at <https://en.wikipedia.org/wiki/Reverse_telephone_directory> (describing printed reverse phone directories available as early as the early 2000's). The Court may make such general historical observations. *See., e.g.*, *Affinity Labs of Tex.*, 2015 U.S. Dist. LEXIS 77411 at *16.

REPLY IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS OF
INVALIDITY UNDER 35 U.S.C. § 101           9           Case No.: 3:16-cv-00175-RS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to require a "machine" ineligible under § 101); *see also In re Smith*, 815 F.3d 816, 817 (Fed. Cir. 2016) (invalidating method claim requiring shuffling of physical playing cards).

In the end, none of the authority cited by Greenflight changes the conclusion that the '698 patent claims are directed to the fundamental practice of looking up information associated with a phone number. This patent, like the patent found invalid in *Telinit Technologies, LLC v. Alteva, Inc*. No. 2:14-CV-369, 2015 WL 5578604 (E.D. Tex. Sept. 21, 2015), simply takes a "well-known and widely understood concept" related to telephone technology and applies it to the Internet using conventional computer components. The '698 patent is directed to an unpatentable abstract idea.

### III. *ALICE* STEP 2: GREENFLIGHT IDENTIFIES NO INVENTIVE CONCEPT IN THE CLAIMS, AND INSTEAD RELIES ON DISCLOSURES IN THE SPECIFICATION REGARDING EXISTING AND GENERIC TECHNOLOGY.

Greenflight does not identify any inventive concept in the claims of the '698 patent. Greenflight focuses almost exclusively on a single claim limitation—the "SS7 interfacing node"—as supplying an inventive concept confining the abstract idea of the claims. (*See* Opp. at 13 ("The invention achieves the correct results because it uses an SS7-interfacing node. It is these specific elements, and the combination that they product, that transform the claim into patent-eligible subject matter.").)

But even assuming that, contrary to Greenflight's infringement allegations, the SS7 interfacing node is actually required (*i.e.* that the claims require access to a CNAM database via SS7 query), Greenflight's contention that this feature is inventive is directly contradicted by statements in its Counterclaim and the patent itself. Specifically, Greenflight stated in its Counterclaim that CNAM SS7 queries were "such a *common occurrence* that the telecom industry simply refers to it as a name 'dip' [and that] dips occur daily *by the millions* . . . ." (Counterclaim at 8 ¶ 20, emphasis added.) Greenflight cannot now contend that the inventive contribution of its claims is a well-known type of query carried out *millions* of times prior to the filing of the '698 patent. And the SS7 query Greenflight references in its Opposition is described in the patent as typical and existing prior to the filing of the patent. (*See* '698 patent at 1:62-2:7 (describing "typical[]" steps involved in SS7 queries "[a]t the time of filing").) This existing and

well-known technology does not transform the claims into a patent-eligible idea. *See, e.g.*, *TLI Comm'cns*, 2016 U.S. App. LEXIS at *15-16 (conventional telephone and networking equipment do not provide inventive concept).

The district court case Greenflight relies upon *Veracode, Inc. v. Appthority, Inc.* is inapposite. 137 F.Supp.3d 17, 52 (D. Mass. 2015). In that case, a district court upheld patent claims related to converting source code written by programmers into object code processed by computers. *Id.* at *46-47. The court found the claims were directed to an abstract idea—a building block of computer science. *Id.* at *48. While evidence in the record showed that the claimed method could be carried out by a human, it could not have been done with the same speed or accuracy, and the claims allowed for a "a largely *complete* result" that was "unobtainable using existing methods." *Id.* at *53 (emphasis in original). Noting that the patent addressed a specific problem unique to computing, the Court found the claims inventive under *Alice* Step 2. *Id.* Here, in contrast, the '698 patent is not directed to a problem unique to computing technology. And unlike the patent in *Veracode*, the '698 patent acknowledges that existing solutions to the problem it sought to solve already existed—namely expensive add-on services available through phone providers. ('698 patent at 2:17-22.) Thus, the claims of the '698 patent do not produce a result "unobtainable" using prior art technology.

The '698 patent merely takes existing technology that the inventor did not even claim to invent and applies it to solve a problem that had already been solved by others. This is not inventive. The '698 patent is therefore invalid under Section 101.[5]

## IV. THE FACT THAT THE PATENT OFFICE ALLOWED THE ASSERTED CLAIMS DOES NOT MEAN THE PATENT IS ENTITLED TO ANY SPECIAL PRESUMPTION OF PATENT ELIGIBILITY.

Greenflight discourages the Court from closely scrutinizing its patent because the Patent Office rejected certain claims under Section 101 and allowed other claims after *Alice*. (Opp. at 1.) As an initial matter, the examiner's rejection of Greenflight's claims under Section 101

---

[5] Greenflight does not address any of the dependent claims as either being non-abstract or adding an inventive concept, and thus presumably agrees that these claims are not material to the question of patent-eligibility and rise and fall with the independent claims.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

occurred in an Office Action dated April 16, 2014—months before the Supreme Court's opinion in *Alice* issued.  Moreover, if Greenflight were correct that allowance of claims post-*Alice* led to any additional presumption of validity, newly issued patents would not be subject to successful challenges under Section 101.  But, to the contrary, district courts throughout the country have invalidated claims of over eighteen patents that, like the '698 patent, issued after the Supreme Court's opinion in *Alice*, suggesting that the Patent Office is entitled to no particular deference with respect to determinations of patent eligibility.[6]  Indeed, recent guidance to Patent Office examiners cite extensively to Federal Circuit and Supreme Court case law, indicating that the Patent Office is looking to courts for guidance, rather than shaping the law of patent eligibility.[7]

## V. THE COURT SHOULD NOT ACCEPT GREENFLIGHT'S INVITATION TO REQUIRE THE PARTIES TO EXPEND RESOURCES LITIGATING A PATENT THAT IS INVALID ON ITS FACE.

Greenflight alternatively requests that the Court "defer ruling on this motion until after discovery, claim construction of any disputed claim terms, and expert reports."  (Opp. at 14.)  But, importantly, Greenflight does not identify any particular claim terms whose construction will bear on patent eligibility.  Instead, it points to claim terms that *Whitepages* contends are indefinite

---

[6] *In re West View Res., LLC,* patent cases, No. 14-CV-2675-CAB (WVG), 2015 WL 9685577 (S.D. Cal. Dec. 11, 2015); *Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F.Supp.3d 239 (D. Del. 2015); *Endo Pharms. Inc. v. Actavis Inc.*, C.A. No. 14-1381-RGA, 2015 WL 5580488 (D. Del. Sept. 23, 2015); *Endo Pharms. Inc. v. Actavis Inc.*, C.A. No. 14-1381-RGA, 2015 WL 7253674 (D. Del. Nov. 17, 2015); *Parus Holdings, Inc. v. Sallie Mae Bank*, 137 F.Supp.3d 660 (D. Del. 2015); *SkillSurvey, Inc. v. Checkster LLC*, Civil Action No. 15-1766, 2016 WL 1255785 (E.D. Pa. Mar. 31, 2016); *SnowCast Solutions LLC v. Endurance Specialty Holdings, Ltd.*, No. 15 CV 5305, 2016 WL 1161299 (N.D. Ill. Mar. 23, 2016); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, No. 3:15-cv-164-HES-MCR, 2016 WL 1375141 (M.D. Fla. March 30, 2016); *Racetech, LLC v. Kentucky Downs, LLC*, Civil Action No. 1:15-CV-00059, 2016 WL 843382 (W.D. Ky. Mar. 1, 2016); *MacroPoint, LLC v. FourKites, Inc.*, No. 1:15 CV 1002, 2015 WL 68707118 (N.D. Ohio Nov. 6, 2015); *The Cleveland Clinic Found. v. True Health Diags. LLC*, No. 1:15 CV 2331, 2015 WL 7430082 (N.D. Ohio Nov. 18, 2015); Order Granting Plaintiff's Motion for Summary Judgment, *Clarilogic, Inc. v. Formfree Holdings Corp.*, No. 3:15-cv-41-DMS-NLS, (S.D. Cal. Mar. 4, 2016) Dkt. No. 53; Order Granting Motions For Judgment on the Pleadings, *In re West View Research, LLC*, No. 14-CV-2675-CAB (WVG) (S.D. Cal., Dec. 10 2015) Dkt. No. 60;  Judgment, *In re West View Research, LLC*, No. 14-CV-2675-CAB (WVG) (S.D. Cal., Mar. 31, 2016) Dkt. No. 75; Order Granting Defendant's Motion to Dismiss [16], *Secure Mail Solutions LLC v. Universal Wilde, Inc.*, No. 2:15-cv-7562-DOC (GJSx) (C.D. Cal. Feb. 16, 2016) Dkt. No. 24.

[7] Robert W. Bahr, *Formulating a Subject Matter Eligibility Rejection and Evaluating the Applicant's Response to a Subject Matter Eligibility Rejection,* USPTO (May 4, 2016) available at <http://www.uspto.gov/sites/default/files/documents/ieg-may-2016-memo.pdf >

(but has never contended must be construed in order to determine eligibility under Section 101). Moreover, Greenflight does not identify how discovery could inform this pure issue of law. Where, as here, the asserted patent is ineligible *on its face*, the Court need not engage in discovery or claim construction. *Wolf*, 2014 U.S. Dist. LEXIS 156527, at *17 (patent invalid on Rule 12 because "the Court finds that the basic character of the claimed subject matter is readily ascertainable from the face of the patent") (internal quotation omitted); *Papst Licensing GmbH & Co. KG*, 2016 WL 3196657 at *21 (declining to defer resolving motion for judgment on the pleadings where "Plaintiff has not identified any material factual dispute that exists or any claim construction issue that might affect the Court's Section 101 analysis.").

As Judge Mayer of the Federal Circuit has stated, "[a]ddressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents. Accordingly, where, as here, asserted claims are plainly directed to a patent ineligible abstract idea, we have repeatedly sanctioned a district court's decision to dispose of them on the pleadings." *OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1364-65 (Fed. Cir. 2015) (Mayer, J., concurring).  As noted in Whitepages' opening brief, Judge Mayer's concerns resonate in this case. The Court can, and should, resolve this motion on the pleadings alone.

## VI. CONCLUSION

For the foregoing reasons, Whitepages respectfully requests that the Court grant its motion for judgment on the pleadings, enter a judgment of invalidity under 35 U.S.C. § 101, and dismiss Greenflight's infringement counterclaim.

Dated:   June 13, 2016                           FENWICK & WEST LLP

By: */s/ Bryan A. Kohm*
    Bryan A. Kohm

Attorneys for Plaintiff-Counterdefendant
Whitepages, Inc.