Aldo A. Badini (SBN: 257086)
abadini@winston.com
Constance Ramos (SBN: 203637)
cframos@winston.com
Alexandra McTague (SBN: 290664)
amctague@winston.com
James C. Lin (SBN: 271673)
jalin@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, California 94025-4004
Telephone:    (650) 858-6500
Facsimile:    (650) 858-6550

Attorneys for Defendants
GREENFLIGHT VENTURE
CORPORATION AND JEFFREY ISAACS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WHITEPAGES, INC., a Delaware corporation, <br><br>  Plaintiff, <br><br> v. <br><br> GREENFLIGHT VENTURE CORPORATION, a Florida company, JEFFREY ISAACS, an individual, <br><br>  Defendants. <br><br> GREENFLIGHT VENTURE CORPORATION, a Florida company, JEFFREY ISAACS, an individual, <br><br>  Counterclaim-Plaintiffs, <br><br> v. <br><br> WHITEPAGES, INC., a Delaware corporation, <br><br>  Counterclaim-Defendant. | **Case No. 3:16-cv-00175-RS** <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION --
CASE NO. 3:16-CV-00175-RS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that Defendants Greenflight Venture Corporation and Jeffrey Isaacs (collectively, "Greenflight"), pursuant to Civil Local Rule 7-9(b)(3), hereby respectfully move the Court for leave to file a Motion for Reconsideration of this Court's July 25, 2016 Order Granting Motion for Judgment on the Pleadings (Doc. 48; "Order"), wherein the Court held that U.S. Patent No. 8,861,698 (the '698 Patent) was invalid as directed to unpatentable subject matter. Respectfully, Greenflight's motion for leave is based upon a manifest failure by the Court to consider material facts and dispositive legal arguments presented by the parties in their pleadings, motion papers, and at oral argument.

Specifically, and as explained in further detail below, Greenflight's motion for leave is based upon the following misapprehensions that are evident from the Order:  (1) that Greenflight admitted at oral argument that it did not invent the "SS7 interfacing node" recited in the '698 Patent claims; (2) that the "SS7 dip" and "SS7 interfacing node" are the same thing, and neither is inventive; (3) that the '698 Patent claims "no new app, no new networking equipment, and no new manner of querying a CNAM database," when those novel features are precisely what the '698 Patent does describe and claim; and (4) that the claimed method of the '698 Patent is directed to a "longstanding business practice" of looking up names associated with phone numbers, when, in fact, the patent, its file history, and Whitepages' pleadings show otherwise.  Additionally, the Order fails to consider Whitepages' pleadings asserting its non-infringement which, under governing case law, are highly relevant to its argument that the '698 Patent is abstract and preempts the field.

The Order issued on July 25, 2016, only a few days ago.  Greenflight and counsel have carefully and diligently reviewed the Order and all related portions of the record without undue delay.

**ARGUMENT**

**1.     The Order Relies On An Admission That Was Not Made.**  The Court based its decision, at least in part, on a misunderstanding of a concession by Greenflight's counsel at oral argument.  Specifically, the Court stated that "Greenflight admits it did not invent the SS7 interfacing node […]." ECF 48 at 8:23-24.  This was manifest error.  There was no such admission.

1 Rather, at oral argument, counsel noted (correctly) that there were two types of systems that, prior to
2 the invention, did not communicate with each other: the Internet system which used IP protocols,
3 and the Public Switched Telephone Network (PSTN). And, with respect to the PSTN system,
4 counsel added that the PSTN "uses this SS7 dip. We did not invent that." This concession was
5 consistent with the discussion of the prior art in the patent. What Greenflight *did* invent, as noted in
6 Greenflight's patent, briefing and at oral argument, was a form of bridge (the "SS7 Interfacing
7 Node") that enables an Internet user to communicate directly with the PSTN, in order to access
8 CNAM databases in a manner that was, as noted in the claims, post-page and independent of the
9 called party's telephone carrier and device. *See* '698 Patent at 4:41-42, 4:45-47, 5:1-3. Indeed, the
10 Court's Order cites Greenflight's brief for this very point, where Greenflight noted that the invention
11 is used to "connect[] individual users over the Internet to proprietary CNAM databases *via an SS7*
12 *interfacing node.*" ECF 48 at 8:18-19 (citing [Opp'n] at 7:14-15 (emphasis added)).

   **2.    The Order Erroneously Equates A Prior Art "SS7 Dip" With The Invention's
14 "SS7 Interfacing Node."** The fundamental factual error in the Order is to confuse the prior art SS7
15 query—a so-called "SS7 dip"—with the invention's specific inventive bridge (the "SS7 interfacing
16 node") used to connect the Internet world (which utilizes IP protocols) with the Public Switched
17 Telephone Network (PSTN) world. As shown below, the patent claims, specification, and briefing
18 make clear that the two are not the same.

19    (a)  Prior Art SS7 Dips

20    As pointed out in Greenflight's opposition brief, the '698 Patent explains that several
21 different methodologies to perform an SS7 dip already existed at the time of the invention. *See* ECF
22 36 at 5:3-9. This entire process is referred to in the '698 patent as a "'CNAM Database Query' (5)
23 and refers to any of the proper SS7 methods to retrieve CNAM information," *i.e.*, SS7 dips. '698
24 Patent at 3:64-67.

25    (b) The Invention: An SS7 Interfacing Node that is Carrier and Device Independent

26    Prior art SS7 dips took place exclusively in the realm of the PSTN. By contrast, the
27 invention's SS7 interfacing node, as described and claimed in the '698 Patent, permits a <u>carrier and
28 device independent connection</u> between the Internet and the PSTN. As was pointed out at oral

argument, this is spelled out in second sentence of the patent itself: "More specifically, [the invention] relates to a *post-page caller name identification system that bridges SS7 retrievable caller data with a user-accessible IP interface*." '698 Patent at 1:8-10; *see also* Ex. A (Hr'g Tr.) at 12:22-13:11. The two independent claims clearly recite an SS7 interfacing node that is not operating solely in the PSTN realm, but rather is a mechanism to bridge the two worlds for ***real-time access*** and/or a ***direct query*** to the PSTN:

Claim 1 provides:

A system, ***functioning independently of a called party's telephone carrier and device,*** provides a calling party's CNAM after entry of the calling party's telephone number CID, comprising:

a) ***an entry field***, within a HTML web or mobile phone application, permitting the called party to inpute a query, post-page, specifying the CID;

b) ***an SS7 interfacing node permitting real-time access to the SS7 network***;

c) a function ***serving as a direct interface*** between the called party's query and the calling party carrier's respective CNAM database;

d) within the HTML web or mobile phone application, a display of the successfully queried calling party CNAM.

Claim 5 provides:

A method for ***providing a called party with the calling party's CNAM after a network page, independent of interaction with the carrier or device*** receiving the page, comprising the following steps:

a) ***entering*** of the calling party's telephone number CID into a web HTML or mobile phone application query field;

b) ***connecting to the PSTN via an SS7 interfacing node***;

c) ***directly querying*** the calling party carrier CNAM database with the CID query entry;

d) displaying the successfully queried calling party CNAM on the HTML web or mobile phone application user interface.

1    Thus, as noted at oral argument, the inventive concept of the recited "SS7 interfacing
2    node" is exemplified by the recited limitation that the claimed system and method is "carrier
3    independent and device independent."  Ex. A (Hr'g Tr.) at 14:15-16; '698 Patent at 4:41-42 (Claim 1
4    preamble) and 5:2-3 (Claim 5 preamble).   This node, unlike the prior art, communicates with the
5    TCP/IP network and CID entry fields using (in the preferred embodiment of the invention) JSON.
6    *See e.g.* '698 Patent at Fig 4 (200) and 4:31-38.

7    **3.    The Order Fails To Consider The '698 Patent Description Of The Specific,**
8    **Technological Nature Of Its Recited "SS7 Interfacing Node."**   The Order ignores or
9    misconstrues the '698 Patent's description of the nature of the SS7 interfacing node.  In particular,
10   the Court notes that the '698 Patent discloses "no new app, no new networking equipment, and no
11   new manner of querying a CNAM database."  ECF 48 at 11:14-15.   To the contrary, the '698 Patent
12   expressly discloses that Greenflight had commercialized a new app to practice the claimed invention,
13   usable either on computers or smartphones:

14       At time of filing, a commercial implementation of the present invention
15       was offered free-of-charge to the user via either a smartphone applications
16       [sic] or direct web access.

17   '698 Patent at 2:59-62.

18       The claims themselves, in addition to reciting an "SS7 interfacing node," also suggest the use
19   of <u>specialized software</u> to permit a CID entry field and provide a CNAM query results field, which
20   simply is part of a "generic" web browser.  This was a new manner of querying a CNAM database
21   (via the Internet) which had never been practiced before.  To characterize the patent as disclosing
22   "no new networking equipment" is plainly contrary to the '698 Patent's disclosure.  *See* '698 Patent
23   at Fig. 2 (displaying "SS7 interfacing switch" between the Internet and PSTN CNAM databases).
24       Ignoring the evidence as to the specialized nature of the invention, the Order instead accepts
25   Whitepages' argument that the recited "SS7 interfacing node" (which Whitepages *expressly denies* is
26   included in its accused products which use the Internet) is merely a "generic web browser" (ECF 48
27   at 8:18).  But this conclusion too completely disregards the record and the patent itself.  There is no
28   basis to suppose (counterfactually) that any of the features of the invention—***including the use of a***

*CID entry field to provide real time access to CNAM databases, independent of device or telephone carrier*—could be accomplished with a generic web browser.  Rather, this supposition is contrary to the pleadings (ECF 21 at ¶ 18), specification ('698 Patent at Abstr., 2:29-32, 4:41-44, 5:1-3), and argument.

Indeed counsel for WP relied on *Intellectual Ventures LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) at oral argument (Ex. A (Hr'g Tr.) at 5:12-6:4) to suggest that Greenflight was merely using a generic web browser.  Greenflight observed that in *Intellectual Ventures*, the patentee had conceded that it had not invented an interactive interface that manages website content.  Ex. A (Hr'g Tr.) at 18:14-19.  Here, by contrast, Greenflight explained at oral argument: "We say in the patent we invented this interface." Ex. A (Hr'g Tr.) at 18:24.

In short, by including the express limitation of SS7 interfacing node in both of the independent claims, the claims recite a "concrete or tangible application" that takes them out of the realm of an "abstraction."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907, 192 L. Ed. 2d 929 (2015). Neither the Court nor opposing counsel has cited any case where any such specific language has been held to create an "abstract idea," and Greenflight is aware of none.  Here, as in *Enfish*, the mere fact that the invention has an "ability to run on a general-purpose computer" does not doom the claims.  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016).  And just as *Bascom* concluded that "[o]n this limited record, this specific method of filtering Internet content cannot be said, as a matter of law, to have been conventional or generic," so too the claims here cannot be said to fall into such a category where such a conclusion would disregard the intrinsic record and the pleadings of the parties.  *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, No. 2015-1763, 2016 WL 3514158, at *6 (Fed. Cir. June 27, 2016).

**4.    The Order Includes An Erroneous Factual Finding of An Alleged "Longstanding Business Practice."**  The Order concludes, without citation, that "[t]he patent employs industry-standard technology to perform a longstanding business practice …" ECF 48 at 7:15-16.  This was manifest error.  Dealing first with the pre-computer era, there is no record evidence that "reverse lookups" were then "standard" or "longstanding."  Whitepages improperly (in

the context of a Rule 12(b)(6) motion) sought to counter the assertions in the pleadings and the patent specification by asserting that "so-called 'Grey pages' sorted by number, as opposed to name, existed long before Greenflight's invention." ECF 37 at 9:4-6.  But the only citation for this assertion was an article in *Wikipedia*, which counsel for Whitepages admitted could not be considered on a 12(b)(6) motion.  Ex. A (Hr'g Tr.) at 17:1-10.  Thus, there was no support for the Order's factual assertion.  Neither the '698 Patent nor the pleadings anywhere reference any so-called "grey pages," or whether they were available to consumers.  The Order opines that the "reverse lookup" process "is one humans can perform by sliding a finger down the columns of a phone book …," but such opinion is without basis, purely speculative, and contrary to the pleadings and law.[1]

With respect to the post-computer era, while Greenflight acknowledges the existence of prior art means to perform some limited "reverse lookups" with computers, it was manifest error for the Order to conclude that "reverse lookup was practiced [on the Internet] in a manner similar to the invention prior to the patent's filing date." ECF 48 at 8:11-12.  There was no record support for this conclusion.  The Whitepages solution, as noted in the pleadings, had severe limitations,  including most fundamentally that it did not directly query the CNAM databases (as the claimed invention does), and only listed landlines contained in public telephone books.  Prior art "reverse lookups" also did not include cell phone numbers, and provided only a "single snapshot of time," and not updated in *real time*, as enabled by the patented invention.  ECF 21 at Counterclaim ¶ 13.

In short, because prior art computer lookups did not access CNAM databases to provide reverse lookups <u>independent of carrier and device</u>, and they did not utilize the inventive bridge of the

---

[1] The Order is wrong to suggest that Counterclaim ¶12 noted that "Baby Bell operators disbursed paper phone books to landline customers, enabling lookups *and reverse lookups* …" *See* ECF 48 at 8.  Counterclaim ¶12 says no such thing.  Instead, it states the opposite: "Originally, the Baby Bells disbursed paper phone books to each landline customer, which served as the primary mode of looking up a phone number by the customer's name.  In the 1980s, telephone companies began offering 'Caller Name ID' as an add-on feature for a landline telephone subscription. … *Prior to that time, a called party generally had no way to trace the name of a caller;  calls were anonymous.*" (emphasis added).  Finally, it is contrary to governing law for the Court to conclude that because a human could *theoretically* have used a normal phone book (arranged by names) to painstakingly find the name of a caller when only the number is known, the fact that something might be *possible* does not transform it into a "fundamental economic practice long prevalent in our system of commerce" as contemplated by *Bilski* and *Alice* [*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2350 *(2014)*, citing *Bilski v. Kappos,* 561 U.S. 593 (2010)]

1  '698 Patent's SS7 Interfacing node, they did not practice the invention.[2]

2  **5.    The Order Fails to Consider Whitepages' Admissions in its *Alice* Preemption Analysis.**  Finally (for purposes of this Motion for Leave to File a Motion for Reconsideration), the Order's cursory preemption analysis fails to even mention or consider Whitepages' admissions that it does not infringe because it does not have or use the recited "SS7 interfacing node."

The normal procedural context of a Section 101 motion is where a defendant brings such a motion before answering an infringement complaint, and so there is no allegation of non-infringement.  Here, however, Whitepages is the declaratory judgment plaintiff.  Whitepages argues in its complaint that the invention, properly understood, is narrowly construed to require "an SS7 interfacing node permitting real-time access to the SS7 network." Whitepages alleges that this is a limitation that, in words or substance, appears in all independent claims.  *See* ECF 17 at ¶ 15.  Based upon this, Whitepages alleges that it does not infringe.  Whitepages expressly denies that it meets the "SS7 interfacing node" limitation and avers that its app has "no such feature."  ECF 38 at ¶ 2a.  (Notably, True Software says the same as to its product (ECF 38 at ¶ 2c)).[3]  Under the law, such admissions are significant to a preemption analysis.  *See, e.g., Rapid Litigation Management v. CellzDirect, Inc.*, No. 15-1570, slip op. at  (Fed. Cir. July 5, 2016) (Ex. B) ("… we note the district court's findings that … '[defendant] has already managed to engineer around the patent.'  These findings accord with our conclusion that the patent is not 'directed to' a patent-ineligible building block of human ingenuity.") (citation omitted).  The Order's failure to consider these admissions thus warrant the Court's reconsideration of the motion.

## CONCLUSION

Greenflight's patent is entitled to a presumption of validity.  35 U.S.C. § 282 ("A patent shall be presumed valid.").  The patent was examined, prosecuted, and issued post-*Alice*.  For all of the

---

[2] As recited in the title of the '698 patent, the improvement over the prior art also included *post-page* caller-ID function, or after the phone call (*see also e.g.* Claim 1 and Claim 5 preambles). The patent even concedes this rearrangement of steps is "next best" from a functionality point of view; but it is superior from a cost-savings point of view.  '698 Patent at 2:33-43.

[3] Indeed, consistent with its denials in the pleadings, on the date of this motion, TrueSoftware served Answers to Requests for Admission that deny that its products use key features of the invention. These Answers are consistent with True Software's pleadings denying infringement, and illustrate the absurdity of movants arguing both that the invention preempts the field and that they do not infringe because their products do not have the claimed features.

above reasons, Greenflight respectfully requests leave of Court to file a motion for reconsideration of its July 25, 2016 Order.

Dated:  July 28, 2016                           WINSTON & STRAWN LLP

                                        By:      /s/ Aldo A. Badini
                                                Aldo A. Badini
                                                Constance Ramos
                                                James C. Lin
                                                Attorneys for Defendants and Counterclaim-Plaintiffs GREENFLIGHT VENTURE CORPORATION and JEFFREY ISAACS