# EXHIBIT A

**Pages 1 - 24**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

```
WHITEPAGES, INC.,              )
                               )
          Plaintiff,           )
                               )
  VS.                          )     NO. CV 16-00175-RS
                               )
JEFFREY ISAACS, ET AL.,        )
                               )
          Defendants.          )
_____)
```

San Francisco, California
Thursday, July 7, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

        FENWICK & WEST, LLP
        555 California Street - 12th Floor
        San Francisco, CA  94104
    BY:  **BRYAN A. KOHM, ESQUIRE**
        **RAVI RANGANATH, ESQUIRE**

For Defendants:

        WINSTON & STRAWN, LLP
        200 Park Avenue
        New York, NY  10166
    BY:  **ALDO A. BADINI, ESQUIRE**
        **CONSTANCE RAMOS, ESQUIRE**
        **JAMES LIN, ESQUIRE**

Reported By:      Pamela A. Batalo, CSR No. 3593, RMR, FCRR
             Official Reporter

1   **Thursday - July 7, 2016**                                  **1:29 p.m.**

2                          **P R O C E E D I N G S**

3                              **---oOo---**

4           **THE CLERK:**  Calling CV 16-175, Whitepages, Inc. vs.

5   Isaacs, et al.

6        Counsel, please come forward and state your appearances.

7           **MR. KOHM:**  Bryan Kohm, Your Honor, Fenwick & West, for

8   Whitepages.  I have with my colleague, Ravi Ranganath.

9           **MR. BADINI:**  Good afternoon, Your Honor.  Aldo Badini

10  for Greenflight and Jeffery Isaacs, and my colleagues, Connie

11  Ramos and James Lin.

12          **THE COURT:**  Good afternoon.

13       This matter is on calendar for a motion for judgment on

14  the pleadings by the plaintiff in this case in this dec relief

15  action, and it's involving, what we're seeing more and more a

16  Section 101 argument.

17       The issue, as it is in these cases, is the two-step

18  inquiry on whether or not we've got patentable subject matter,

19  and then in the event, in this instance, that there is an

20  abstract idea identified, whether or not that's, nonetheless,

21  subject to a determination of validity based on the fact that

22  there's an inventive concept involved in this.

23       So I don't have a tentative to provide to you, but I'll

24  just have some questions.  I notice there is something on the

25  screen.  I tend to disfavor, in motion argument, PowerPoints

1    this limitation is simply doing a call, a query, to the

2    database, and that's what meets it.  And now in its briefing,

3    it also supports the notion that --

4         THE COURT:  Isn't there some concept here that there

5    is a realtime aspect to this that is separate and apart from

6    the principle, that I don't think they argue with, that there

7    is a, even -- prehistory there was a way to look up, take

8    numbers, you can find names; names you can find numbers.  But

9    what they're saying here is you can do it in a more interactive

10   fashion under their patented concept and you can do it in

11   realtime.

12        MR. KOHM:  So they do say that, Your Honor.  But

13   what's real -- what's evident from the patent itself -- and

14   this quote right here is where they say that in their briefing,

15   and if you look in the background of inventions section, it is

16   describing exactly that process.  So they did not create any

17   sort of realtimeness.  There is no inventive aspect of that.

18        This is the same description of how the query is made to a

19   database that is not anything that they've added to the art.

20   The only thing -- the only, quote, inventive contribution here

21   that's alleged or that is reflected in the claims is the use of

22   an internet interface to initiate the query.  And that is all

23   that the patentee has added to this process described in the

24   background of the invention.

25        And *Intellectual Ventures* and many other cases, and *Alice*

6

1    make clear that just adding -- taking something that exists in

2    the world prior to the patent, a normal process, something that

3    is done regularly and applying it to the internet, bringing the

4    internet into it, is not patentable subject matter under 101.

5        **THE COURT:**  The case, though, that was pointed out to

6    me, this *Bascom* case, is interesting because it seems to -- it

7    seems to develop the concept that even if all the pieces of the

8    puzzle are all well-known -- and there is no dispute here, I

9    guess, that this SS7 interactive process is -- otherwise known

10   as, I guess, a dip or whatever they call it, is very

11   well-known, it's the standard in the -- the way in which

12   information is accessed in this world, this *Bascom* case sort of

13   suggests that if the inventive concept can be found when you

14   effectively, in a holistic way, put it all together, why isn't

15   that the case here?  Why aren't they effectively -- with the

16   acknowledgment that the particular pieces of the puzzle are

17   well-known, they have come up with a way to order it and

18   implement it that amount to an inventive concept.

19       **MR. KOHM:**  Right.  And I think, Your Honor, that

20   question hits right to the core issue.  And that is in *Bascom*,

21   there were a number of different elements, a number of

22   different pieces.  Each of those different pieces were out

23   there, and what the Court said is that this was inventive

24   because although there were, I think, maybe five different

25   elements that were out there independently, they had not been

1  right side, there's the public telephone switching network that

2  uses this SS7 dip.  We did not invent that.  I will concede

3  that.

4      And the way you access the data in that part of the world

5  pre-invention was you go to -- if you own a device and you have

6  Verizon, as an example, you buy caller ID from Verizon, and you

7  could -- you might get access to the CNAM database.

8      The problem is they may not have access to the other

9  databases, and if you have a different device, you're out of

10  luck.  You have to buy another service or go to another

11  carrier.

12      Here -- the other side of the world is the internet, which

13  uses Internet Protocol.  Does not use the SS7 protocol.

14      In the prior art, and we say this in our Complaint,

15  Whitepages took phone books -- phone books -- and put them on

16  the internet and let users pay a fee and gave them reverse

17  lookup capability.

18      Why did our clients say that was flawed?  Number one, you

19  know, the phone books change.  People drop -- it was not

20  realtime.  And, two, you charge for it, and there were other

21  databases out there.

22      So I need go no further, Your Honor, than the second

23  sentence of the patent to tell you what the invention is.  It's

24  very clear.  It's not a generic web interface, which counsel

25  says it is.

1    It says, "More specifically, it," which is a reference
2    back to the invention, "relates to a post-page caller name
3    identification system" -- *post-page* simply means after the call
4    is over -- "that bridges" -- that's the keyword -- "that
5    bridges SS7 retrievable caller data on this side with a user
6    accessible IP interface on this side."
7    Our client invented that bridge.  Now, he's trying to
8    minimize it, but the reason the bridge is important is in the
9    claims.  Claim 1 and Claim 5 both say that this permits
10    functioning independently of a called party's telephone carrier
11    and device.
12    You don't need to subscribe to Verizon and AT&T.  You
13    just -- you don't need to subscribe to the caller ID system of
14    any of them.  And if you use this system, you can look up a
15    call on any device.  You don't have to buy this system on every
16    device.  That's the invention and that's the limitation.
17    Now, the cases that are cited in the brief, as I said, all
18    involve taking an abstract idea that was done for hundreds of
19    years and saying do it on a computer.  That's not what this is.
20    And SS7 is no abstract idea.  I don't even know what it
21    is, being a psychology major, but I'm trying to figure it out.
22    But, you know, SS7 interfacing node is a very specific concept
23    that's in both of the patent claims.
24    And what's interesting is the cases say the touchstone of
25    the *Alice* inquiry is really preemption.  Are you taking over

1    the entire -- and both Whitepages and True Software have said,

2    *We don't infringe*.  *We don't use an SS7 interfacing mode*.  Well

3    if they don't infringe and they don't use the SS7 interfacing

4    mode, where's preemption?

5            **THE COURT:**  If I was to disagree with you on Step 1

6    and determine, contrary to your arguments, that it is an

7    abstract idea, what at Step 2 is the inventive concept?  If you

8    have to fall back on Step 2, what would you identify to me as

9    the inventive concept that the patent presents?

10           **MR. BADINI:**  I would say that the inventive concept is

11   this software bridge that connects one -- this PTSN side to an

12   interface protocol, and nobody had ever built that bridge

13   before this invention.

14       And why is the bridge important?  For the same reasons I

15   told you.  It makes the query carrier independent and device

16   independent.  I would say that's the inventive concept.

17           **THE COURT:**  All right.

18       Mr. Kohm.

19           **MR. KOHM:**  Your Honor, if this patent disclosed a

20   unique bridge, I would agree that it's not subject to 101, but

21   it doesn't.  There is no disclosure here of how --

22           **THE COURT:**  Does the bridge have to be unique for --

23   you're building into that statement the concept that it does

24   have to be, but does it really have to be?  I mean, if -- it

25   gets back to this idea that if you put the pieces together, if

1    **THE COURT:**  What is your view on the propriety of my

2    considering, on a motion for judgment on the pleadings,

3    Wikipedia material that you point me to, and why is that not

4    out of bounds in a motion of this kind?

5    **MR. KOHM:**  I don't think you should consider it, and I

6    think we said that in our briefing.  We raised that only to

7    show that unsubstantiated assertions that they were making were

8    wrong.  I don't think that it needs to be considered.  I don't

9    think -- it's certainly outside the bounds and is unnecessary

10   for determination of this.

11       I don't -- I quite frankly don't even think it's that

12   relevant at the end of the day because we have the patent

13   itself unquestionably telling us what existed prior to the

14   patent.

15       **THE COURT:**  Okay.  So you think -- you agree that what

16   I need to do to decide this motion is to limit myself to the

17   patent and to the argument in the briefs, but I can't look

18   beyond that.

19       **MR. KOHM:**  And the pleadings as well, Your Honor.

20   They make representations in the pleadings that I think are

21   very telling.

22       **THE COURT:**  Okay.

23       Mr. Badini.

24       **MR. BADINI:**  So a couple of things.  I think that the

25   arguments that counsel are making may be fine 112 arguments,

1    but they're not 101 arguments.  When he keeps saying there is

2    no disclosure of this, that's a 112 argument.  This isn't

3    enabled.  That's number one.

4         Number two, the argument proves too much because it would

5    invalidate every software patent.  I have never seen a software

6    patent with the code attached to the patent.  It's always

7    described in English terms, as this patent does.

8         But if you -- the important point is there isn't a generic

9    web server here.  You know, I noticed that in his PowerPoints,

10   he's relying heavily on this *Intellectual Ventures* case,

11   Federal Circuit 2015, to argue that you can't just say add a

12   generic web server and make it -- it's the last page,

13   Your Honor -- and make it patentable.

14        I took a look at that case, and in that case, there was a

15   concession by counsel for the patent holder that they didn't

16   invent the interface.  It says nowhere -- this is from the

17   opinion.  "Nowhere does Intellectual Ventures assert that it

18   invented an interactive interface that manages website

19   content."

20        So if you use a generic web server -- and what does that

21   mean?  That's like Chrome, that's like Internet Explorer.  Of

22   course you can't turn a non-inventive concept into a an

23   inventive concept by saying *use a generic web server*.

24        We say in the patent we invented this interface.  Now, he

25   may have an enablement motion down the line, but it certainly

1   necessarily file something, but I don't want, obviously, one

2   side communicating without the other side's involvement.  I

3   just want to know, okay, there is nothing coming, or there is

4   something coming in conjunction with my process here.

5          **MR. KOHM:**  Understood, Your Honor.

6          **MR. BADINI:**  Understood.

7          **THE COURT:**  Thank you.

8

9              (Proceedings adjourned at 2:02 p.m.)

10

11

12                 CERTIFICATE OF REPORTER

13         I certify that the foregoing is a correct transcript

14   from the record of proceedings in the above-entitled matter.

15

16   DATE:   Wednesday, July 13, 2016

17

18   *Pamela A. Batalo*

19   _____
     Pamela A. Batalo, CSR No. 3593, RMR, FCRR
20   U.S. Court Reporter

21

22

23

24

25