BRYAN A. KOHM (CSB No. 233276)
bkohm@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:     415.281.1350

ELIZABETH HAGAN (WSBA No. 46933)
Admitted *Pro Hac Vice*
ehagan@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone:    206.389.4510
Facsimile:     206.389.4511

Attorneys for Plaintiff-Counterdefendant
WHITEPAGES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WHITEPAGES, INC., a Delaware corporation,<br><br>　　　　　Plaintiff-Counterdefendant,<br><br>　v.<br><br>GREENFLIGHT VENTURE CORPORATION, a Florida company, and JEFFREY ISAACS, an individual,<br><br>　　　　　Defendants-Counterclaimants. | Case No.: 3:16-cv-00175-RS<br><br>**WHITEPAGES, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION** |

## I. INTRODUCTION

The Court correctly found the '698 patent directed to patent-ineligible subject matter under 35 U.S.C. § 101. Defendants Greenflight Venture Corporation and Jeffrey Isaacs (together, "Greenflight") may disagree, but in their motion for reconsideration identify no error—let alone a "manifest failure by the Court to consider material facts or dispositive legal arguments"—that justifies revisiting the Court's Order. Civil L.R. 7-9(b)(3).[1] Instead, Greenflight merely rehashes arguments already considered—and rejected—by this Court. *See* Civil L.R. 7-9(c) (prohibiting any motion for reconsideration repeating written or oral argument made in opposition to order being appealed).

Disguised as three purported errors, the crux of Greenflight's argument is that the Court failed to credit its counsel's argument regarding the alleged key inventive aspect of the patent—a software "bridge." But the Court explicitly considered this argument and properly rejected it because this "bridge" is not disclosed in the patent. *See* Dkt. No. 48 (Order Granting Judgment on the Pleadings ("Order")) at 11 (noting that bridge that Greenflight's counsel pointed to during argument amounted to nothing more than the use of the Internet to carry out an existing process and that the patent disclosed no programming, unique hardware, or technological improvements). Greenflight's attorney argument alone cannot substitute for actual disclosures in the patent. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (finding claims directed to abstract idea not patentable where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential invention"). Thus, not only is Greenflight's argument improper—as the Court *considered* the argument and found it unpersuasive—but it is incorrect as a matter of law.

Greenflight's argument that its patent must be eligible because Whitepages pled non-infringement likewise lacks merit.[2] As clearly stated by the Federal Circuit in the very case on which Greenflight relies in its motion for reconsideration, "pre-emption is not the test for

---

[1] Greenflight also identifies no change in fact or law that would justify reconsideration under Civil L.R. 7-9(b)(1) or (2).

[2] Greenflight did not make any argument regarding preemption in its Opposition to Whitepages' motion.

WHITEPAGES' OPPOSITION TO
MOTION FOR RECONSIDERATION           1                    Case No.: 3:16-cv-00175-RS

1  determining patent-eligibility." *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, No. 2015-1570, slip
2  op. at 16 (Fed. Cir. July 5, 2016). Even considering preemption, based on Greenflight's proffered
3  read of the patent as stated in its Counterclaims, which reads the "SS7 interfacing node" out of
4  the claims, the patent does indeed cover any use of a database query to look up information
5  associated with a phone number.

6  The Court correctly found that the claims of the '698 patent are directed only to an
7  abstract idea, with no inventive concept to ground that abstract idea in a specific application. The
8  Court should therefore reaffirm its Order finding the '698 patent invalid under Section 101.

9  **II.    ARGUMENT**

10     **A.    Greenflight's Argument Regarding the SS7 Interfacing Node Misses the
               Mark on Multiple Grounds**

12  In arguing that the Court wrongly concluded Greenflight admitted it did not invent the
13  SS7 interfacing node, Greenflight attempts to take advantage of its elusiveness. Examined
14  closely, Greenflight admitted that it did not invent any of the components/methods disclosed as
15  the invention in the patent. Greenflight's counsel sought to avoid these admissions at oral
16  argument by introducing a new component to the invention—the bridge—but no such bridge is
17  described in the specification.[3] But counsel did admit, as the Court found, that Greenflight did
18  not invent the mechanism for carrying out an SS7 dip, which the patent discloses is performed by
19  the SS7 interfacing node.

20  The '698 patent explains the invention as follows: (i) a user enters a phone number via a
21  web application; (ii) "*the system then performs a Global Title Translation (GTT) query **using its**
22  **SS7 interfacing node***"; a GR-1188 CNAM query is then made via SS7; and (iv) the results are
23  returned to the web application.[4]   '698 patent (Summary of the Invention) at 2:44-57 (emphasis

---

[3] The patent does disclose the use of a generic web application for inputting a phone number, but the web application is a separately recited claim element, and it does not perform the functions disclosed as being performed by the SS7 interfacing node.

[4] Whether the SS7 interfacing node is performing only the GTT query or also the GR-1188 CNAM query is irrelevant, as both of those queries were admitted to exist before the '698 patent was filed.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

added). Consistent with this disclosure, Greenflight admitted in its Opposition to Whitepages' Motion for Judgment on the Pleadings that its invention consists of entering a CID (phone number) into a terminal and then submitting a CNAM database query via the SS7 network. Dkt. No. 36 (Greenflight Opp.) at 4-5. The patent discloses that the process of performing a Global Title Translation (GTT) query, subsequent GR-1188 CNAM query, and returning the results to a user existed "[a]t the time of filing." '698 patent at 1:62-2:5. Indeed, Greenflight admitted that the process was "such a common occurrence that the telecom industry simply refers to it as a name 'dip.'" Dkt. 21 (Counterclaim) at 8, ¶ 20. At oral argument, Greenflight's counsel reiterated this admission. Dkt. No. 45 (Hearing Transcript) at 11:23-12:3. The Court thus correctly noted that Greenflight effectively admitted that it did not invent the SS7 interfacing node.

Likewise, in its prior briefing, Greenflight contended that the claimed invention "retrieve[s] the CNAM information sought via an SS7-interfacing node," and "finds the desired CNAM information using an SS7 interfacing node." Dkt. No. 36 at 12. That is, Greenflight described the SS7 interfacing node in its briefing as simply performing an SS7 dip. And in its pleadings, Greenflight further equates the "bridge," which it now asserts is the "SS7 interfacing node," with an SS7 query. Dkt. No. 21 at 8, ¶ 18 ("Jeffrey Isaacs conceived of and invented a technology that bridged the gap between CNAM and internet reverse search. . . . *To accomplish this* in practice, Greenflight uses *an SS7 query* to a CNAM database to obtain the caller name information." (emphasis added)).

Indeed, the only other "technology" in the '698 patent is an Internet interface. But even Greenflight does not claim to have invented the concept of a "user-accessible IP interface"—a generic "HTML web or mobile phone application." '698 patent at 1:10, 4:45 (cl. 1), 5:6 (cl. 5). And as the Court correctly found, the '698 patent has "no disclosure of how the internet interface is joined with the CNAM query." Order at 11.

Greenflight attempts to save the '698 patent by arguing that it invented "a form of bridge," and that this "bridge" is the inventive contribution of the patent. Dkt. No. 50 (Greenflight Motion for Reconsideration ("Mot.")) at 3:5-9; Dkt. No. 45 at 13:7, 14:10-16. But Greenflight never

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

points to an actual disclosure of this "bridge" in the patent. Indeed, the word "bridge" appears only once in the patent, under the "Field of the Invention," which states in conclusory fashion that the claimed invention relates to a "*system that bridges* SS7 retrievable caller data with a user-accessible IP interface." '698 patent at 1:8-10 (emphasis added).

The disclosures/arguments on which Greenflight relies confirm that the notion of bridging the Internet and SS7 network is simply the purpose or outcome:

- SS7 interfacing node enables an Internet user to communicate with the PSTN (Mot. at 2:6-7);
- SS7 interfacing node "permits a carrier independent connection between the Internet and PSTN" (Mot. at 2:27-28; 4:1-6);
- Claim language reciting that the SS7 node enables real-time access and direct querying (Mot. at 3).

These disclosures/arguments do not describe an SS7 interfacing node, much less the operation or structure of such a node. As addressed above, the only description in the patent regarding the actual operation (or structure) of the SS7 interfacing node relates to the SS7 dip. Moreover, the specification lacks any description of a particular bridge, never mind any description of software or hardware that acts as a bridge in the system. Greenflight's attorney argument notwithstanding, a software bridge that the patent does not disclose cannot confer patent eligibility under Section 101. *Internet Patents Corp.*, 790 F.3d at 1348 (finding claims to abstract idea not patentable where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential invention").

**B. Greenflight's Claim to Have Created a Practicing Application Corresponding to the Claimed Invention Does Not Affect the Section 101 Analysis**

Greenflight also contends that the Court erred in failing to consider the patent's disclosure that "[a]t time of filing, a commercial implementation of the present invention was offered free-of-charge to the user via either a smartphone applications or direct web access." Mot. at 4 (citing 2:59-62) But merely stating—without any support or description—that such an application or web interface existed does not identify the "specific technological nature" of the claimed SS7

interfacing node.  Indeed, as the Court correctly found, "the patent discloses no programming, algorithm, unique hardware, or technological or procedural improvements."  Order, Dkt. No. 48 at 11.  The patent's token reference to Greenflight's purported practicing application does not disclose a specific algorithm, special programming, unique hardware, or a technological or procedural improvement.  Indeed, far from identifying any inventive contribution, this statement in the patent—devoid of any detail whatsoever related to the purportedly practicing product or service—only supports the notion that Greenflight's alleged invention constitutes nothing more than employing a generic "web or mobile phone application" to perform an SS7 dip.  Consistent with this conclusion, Greenflight points to a picture of an "SS7 switch" in Figure 2 as purportedly disclosing the claimed interface and providing "new networking equipment"—but this figure discloses nothing beyond the description of an SS7 dip in the prior art.  '698 patent at Fig. 2, 1:62–2:5.

Greenflight's argument that data entry fields (used to input a phone number) somehow convert a web browser into "specialized software" defies common sense.  Mot. at 4.  A web browser is routinely used to input data, such as names, addresses and phone numbers.  Additionally, Greenflight's attempt to contrast a generic web browser with a web app that functions "independent of device or telephone carrier" misses the mark.  *Id.* at 4-5.  Generic web browsers are, by nature, generic—therefore not dependent on a particular device or telephone carrier.

    **C.**    **Greenflight's Patent and Pleadings Make Clear that the Invention Employs Longstanding Business Practices**

Greenflight next contends that the Court erred in finding that the '698 patent "suggests lookups and reverse lookups are longstanding business practices."  Mot. at 5-7; Order at 8.  But this finding is supported by both the '698 patent's specification and Greenflight's pleadings.  The specification states that switchboard operators identified the calling party to the called party over 50 years ago.  '698 patent at 1:19-30.  It also states that "caller identification" was invented by the mid-1970's, widely implemented by the late 1980's, and had "tens of millions of subscribers" by the late 1990's.  *Id.* at 1:30-48; *see also* Dkt. No. 21 at 5, ¶ 12 (describing "Caller Name ID"

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

lookups "reaching widespread use" by the 1980's). The patent further states that this reverse lookup became "industry-standard, used in landlines, VOIP, and mobile phones "over the past decade," and identifies cost as the main limitation of the prior art. '698 patent at 1:53-2:22. That is, the patent concedes that reverse lookups had existed for decades and were widely used, and that the patent merely sought to make this longstanding business practice more accessible and less costly to consumers by using the internet to do it. *Id.* at 2:20–65 ("By utilizing the present invention, the end-user consolidates CNAM services and enjoys significant cost savings."). But as the Court correctly noted, using the internet to perform a longstanding business practice, without more, is not patentable. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014); *Telinit Technologies, LLC v. Alteva, Inc.*, No. 2:14-CV-369, 2015 WL 5578604, at *16 (E.D. Tex. Sept. 21, 2015). Nor is the business idea of making an existing service using existing technology available to customers at a lower cost.

### D. Whitepages' Assertion of Non-Infringement Does Not Affect the '698 Patent's Lack of Patentability

Greenflight contends that because Whitepages seeks a declaratory judgment of non-infringement, the '698 patent does not preempt the entire field and thus is patent eligible. Mot. at 7. This contention lacks merit on multiple grounds.

As an initial matter, "pre-emption is not the test for determining patent-eligibility." *Rapid Litig. Mgmt.*, slip op. at 16; *see also Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility.").

But even considering preemption, the '698 patent is still patent-ineligible. Based on the infringement allegations in Greenflight's Counterclaims, the "SS7 interfacing node" covers any software that accesses a CNAM database, whether or not it utilizes an SS7 query of a CNAM database. Dkt. No. 21 at 7-8, ¶ 20 ("Greenflight asserts that if name data originally derives from a CNAM database, SS7 compatible protocols were utilized."). As Greenflight's infringement allegations read out the "SS7 interfacing node" or any requirement that SS7 protocols are used in

retrieving caller ID information, it purports to preempt the entire field of reverse lookups.[5]

Nevertheless, Greenflight misapplies the standard on a motion for judgment on the pleadings, which requires accepting Greenflight's, not Whitepages', allegations as true. *Guidiville Rancheria of Cal. v. United States of America*, 5 F. Supp. 3d 1142, 1151 (N.D. Cal. 2013) ("Under Rule 12(c) of the Federal Rules of Civil Procedure, judgment on the pleadings may be granted when, *accepting as true all material allegations contained in the nonmoving party's pleadings*, the moving party is entitled to judgment as a matter of law.") (emphasis added).

### III. CONCLUSION

For the foregoing reasons, Whitepages respectfully requests that the Court reaffirm its Order granting Whitepages' Motion for Judgment on the Pleadings of Section 101 invalidity.

Dated: August 9, 2016          FENWICK & WEST LLP

By: */s/ Bryan A. Kohm*
    Bryan A. Kohm

    Attorneys for Plaintiff-Counterdefendant
    Whitepages, Inc.

---

[5] Although irrelevant, Greenflight misconstrues Whitepages' non-infringement position. Whitepages' position is consistent with the Court's finding and Whitepages' argument. Specifically, Whitepages does not perform an SS7 dip and thus lacks an SS7 interfacing node. Nothing about Whitepages' non-infringement position supports Greenflight's argument that an SS7 interfacing node is a specialized "bridge." To the contrary, the fact that the parties are involved in this lawsuit demonstrates that Greenflight seeks to preempt the entire field of reverse lookups, irrespective of whether SS7 is involved at all.