BRYAN A. KOHM (CSB No. 233276)
bkohm@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

ELIZABETH HAGAN (WSBA No. 46933)
Admitted *Pro Hac Vice*
ehagan@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone:    206.389.4510
Facsimile:    206.389.4511

Attorneys for Plaintiff-Counterdefendant
WHITEPAGES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WHITEPAGES, INC., a Delaware corporation,<br><br>Plaintiff-Counterdefendant,<br><br>v.<br><br>GREENFLIGHT VENTURE CORPORATION, a Florida company, and JEFFREY ISAACS, an individual,<br><br>Defendants-Counterclaimants. | Case No.: 3:16-cv-00175-RS<br><br>**WHITEPAGES, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**<br><br>Date:        November 3, 2016<br>Time:        1:30 PM<br>Dept:        Courtroom 3, 17th Floor<br>Judge:       Honorable Richard Seeborg |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................................... 3

      A.      Greenflight Attempts to Have Whitepages' Product Removed from the
App Store Through Baseless and Bad Faith Claims of Intellectual
Property Infringement ................................................................................... 3

      B.      Greenflight Continues Its Bad Faith Allegations in an Effort to Extract
Millions of Dollars from Whitepages .......................................................... 4

      C.      Greenflight Engages in Personal Attacks and Attempts to Intimidate
Counsel with False Accusations .................................................................. 6

      D.      Greenflight Refuses to Cooperate in Basic Procedural Matters in an
Effort to Drive Up Litigation Costs ........................................................... 10

      E.      Greenflight Takes Irreconcilable and Baseless Infringement and
Validity Positions ....................................................................................... 12

      F.      Greenflight Again Refuses to Cooperate on Basic Procedural Matters ...... 13

      G.      Greenflight's Lead Counsel Attempts to Intimidate Whitepages'
Counsel to Avoid the Present Motion ......................................................... 14

III.    ARGUMENT ......................................................................................................... 14

      A.      Legal Standard ............................................................................................ 14

      B.      Whitepages Is the Prevailing Party ............................................................ 15

      C.      Greenflight's Objectively Baseless Validity Position Merits an
Exceptional Case Finding ........................................................................... 15

      D.      Greenflight's Bad Faith and Unreasonable Litigation Conduct Provides
Independent Grounds for An Exceptional Case Finding ............................. 18

            1.      Greenflight's Unreasonable and Irreconcilable Infringement and
Validity Contentions ...................................................................... 18

            2.      Greenflight's Pattern of Abusive Conduct Before and During
the Litigation .................................................................................. 19

      E.      The Fees that Whitepages Requests are Reasonable .................................. 22

IV.     CONCLUSION ...................................................................................................... 23

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014) ................................................................................17

5

6

*Alyeska Pipeline Service Co. v. Wilderness Society,*
   421 U.S. 240 (1975) ....................................................................................15

7

*Alzheimer's Inst. of Am., Inc. v. Avid Radiopharm.,*
   No. 10-6908, 2015 WL 1422337 (E.D. Penn. Mar. 30, 2015)....................22

8

9

*Astrazeneca AB v. Dr. Reddy's Labs., Ltd.,*
   No. 07 Civ. 6790, 2010 WL 1375176 (S.D.N.Y. Mar. 30, 2010)................20

10

*Checkpoint Sys., Inc. v. All-Tag Security S.A.,*
   No. 01-2223, 2015 WL 4941793 (E.D. Penn. Aug. 19, 2015) ...............20, 22

11

12

*Dolen v. Rylas,*
   No. 8:09-CV-2120-T-23AEP, 2012 WL 983787 (M.D. Fla. Feb. 10, 2012) ...............21, 22

13

*eDekka LLC v. 3balls.com, Inc.,*
   Nos. 2:15-cv-541, 2:15-cv-585 JRG, 2015 WL 9225038
   (E.D. Tex. Dec. 17, 2015) ......................................................................16, 22

14

15

*Eltech Sys. Corp. v. PPG Indus.,*
   903 F.2d 805 (Fed. Cir. 1990) ...................................................................19

16

17

*Fink v. Gomez,*
   239 F.3d 989 (9th Cir. 2001).....................................................................15

18

*Gametek LLC v. Zynga, Inc.,*
   No. CV 13-2546 RS, 2014 WL 4351414 (N.D. Cal. Sept. 2, 2014)............17

19

*Garfum.com Corp. v. Reflections By Ruth d/b/a/ Bytephoto.com.,*
   No. 14-5919 (JBS/KMW), 2016 WL 1242762(D.N.J. Mar. 30, 2016) .................17

20

21

*Greenflight Venture Corp. v. Whitepages, Inc.,*
   No. 16-80079-CIV-ROSENBERG/HOPKINS (S.D. Fla. Feb. 8, 2016)
   ECF No. 12 ..........................................................................................11, 12

22

23

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.,*
   687 F.3d 1300 (Fed. Cir. 2012), *vacated and remanded on other grounds,*
   134 S. Ct. 1744 (2014) ...............................................................................22

24

25

*Home Gambling Network Inc. v. Piche,*
   No. 2:05-cv-610, 2014 WL 2170600 (D. Nev. May 22, 2014) ..................20

26

27

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.,*
   No. 14-448-GMS, 2016 WL 2090633 (D. Del. May 31, 2016).................17

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Kilopass Tech. Inc. v. Sidense Corp.*,
  No. C 10–02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) .........................................19

*Manildra Milling Corp v. Ogilvie Mills, Inc.*,
  76 F.3d 1178 (Fed. Cir. 1996)..................................................................................................15

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012).............................................................................................18, 22

*Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*,
  726 F.3d 1359 (Fed. Cir. 2013)....................................................................................18, 20, 21

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ................................................................................................14, 15, 18

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
  182 F.2d 1356 (Fed. Cir. 1999)..................................................................................................21

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014)....................................................................................................16

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
  231 F.3d 1339 (Fed. Cir. 2000)..................................................................................................22

**STATUTES**

35 U.S.C. § 101 ....................................................................................................................*passim*

35 U.S.C. § 285 ....................................................................................................................*passim*

**RULES**

Federal Rule of Civil Procedure 54(d)(2) ..............................................................................1, 23

Civil Local Rule 54-5(a) .....................................................................................................1, 14

**OTHER AUTHORITIES**

Robert W. Bahr, *Formulating a Subject Matter Eligibility Rejection and Evaluating the
  Applicant's Response to a Subject Matter Eligibility Rejection*, USPTO (May 4, 2016)
  available at http://www.uspto.gov/sites/default/files/documents/ieg-may-2016-
  memo.pdf .............................................................................................................................17

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WHITEPAGES' MOTION FOR
ATTORNEYS' FEES

iii

Case No.: 3:16-cv-00175-RS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on November 3, 2016 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Richard Seeborg, 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 3, 17th Floor, Plaintiff and Counter-defendant Whitepages, Inc. ("Whitepages") will and hereby does move for an order declaring this case exceptional pursuant to 35 U.S.C. § 285 and granting Whitepages its reasonable attorneys' fees, pursuant to Federal Rule of Civil Procedure 54(d)(2), 35 U.S.C. § 285, and the inherent power of this Court, from Counterclaimants Greenflight Venture Corporation and Jeffrey Isaacs (together, "Greenflight") and their counsel, Winston & Strawn.

Whitepages bases this motion upon the facts and authorities stated in its accompanying Memorandum of Points and Authorities, the Declaration of Bryan A. Kohm in support thereof and the exhibits attached thereto, the pleadings and evidence of record in this matter, and any argument of counsel that may be heard by the Court.  This motion follows a conference of counsel pursuant to Civil L.R. 54-5(a), which took place on September 16, 2016.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case has been exceptional at all stages and on all fronts.  No reasonable basis existed to assert infringement.  Nor did a basis exist to believe the patent was valid.  From day one, Greenflight relied on irreconcilable infringement and validity positions, all contrary to law, that would either render the patent not infringed or invalid, or both, precluding any possibility of success on the merits.

Although the patent makes clear that CNAM queries were commonplace before the patent, Greenflight asserted that its "patent claim *covers any and all CNAM protocol originated data.*"  Consistent with this view, it argued that the "SS7 interfacing node" limitation was "trivial" and should be ignored when evaluating possible infringement.  After Whitepages filed a motion for judgment on the pleadings on the ground that the '698 patent claimed patent ineligible subject matter, Greenflight did an about-face.  The SS7 interfacing node instantly became the foundation of the '698 patent—the magic sauce, so to speak.  But nowhere in the patent was this

alleged novel interface disclosed—except for the equipment used for a commonplace "dip."  In other words, Greenflight argued that the patent was valid because the claims were directed to an interface nowhere disclosed in the patent.

At the conclusion of the hearing on Whitepages' motion for judgment on the pleadings, counsel incredibly suggested that if the Court were inclined to grant the motion, Greenflight should be permitted to "tinker with" its admissions to avoid judgment.  Demonstrating a refusal to cooperate whatsoever, Greenflight then refused to stipulate to judgment following the Court's denial of its motion for reconsideration unless Whitepages agreed to waive its right to fees.

Greenflight's conduct throughout the dispute was no less exceptional.  In effort to gain leverage over Whitepages, Greenflight harassed Apple, threatening legal action and an injunction unless it removed the Whitepages' Caller ID app from the App Store.  In doing so, Greenflight asserted infringement without basis and in bad faith, evidenced by its assertion that Whitepages infringed the '698 patent only by infringing "limitation 1c."   It also alleged infringement of non-existent intellectual property rights and falsely asserted that Whitepages' alleged infringement threatened the "safety and privacy" of Apple's customers.

Because Greenflight refused to stop its unlawful conduct, Whitepages was left with no choice but to file suit.  Despite its aggressive conduct and accusations, Greenflight evaded service yet filed an infringement action in Florida.  In what can only be described as a misguided attempt at extortion, Greenflight accused Whitepages' counsel of racketeering, advised counsel to engage its "compliance officer," and threatened to report counsel to the California Bar unless counsel withdrew the complaint filed in this action.

In light of Greenflight's unreasonable positions and behavior in this case, Whitepages respectfully requests an order deeming this case exceptional under 35 U.S.C. § 285 and granting Whitepages an award of its attorneys' fees under both Section 285 and this Court's inherent power.  Because counsel also pursued a baseless case, Whitepages also asks that fees be awarded against counsel, Winston & Strawn, from the time when it appeared in the action.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## II.   STATEMENT OF FACTS

### A.   Greenflight Attempts to Have Whitepages' Product Removed from the App Store Through Baseless and Bad Faith Claims of Intellectual Property Infringement

This dispute began on August 24, 2015, when Whitepages first received notice of Greenflight's allegations.  Rather than directly notifying Whitepages of its infringement allegations, Greenflight instead lodged a complaint with third party Apple, in which it alleged that Whitepages' Caller ID app infringed U.S. Patent No. 8,861,698 ("the '698 patent").  Declaration of Bryan A. Kohm in Support of Whitepages' Motion for Attorneys' Fees ("Kohm Decl."), Ex. 1.[1]  In its complaint to Apple, Greenflight falsely alleged that "WhitePages substantially duplicates [Greenflight's] CNAM based reverse query system," and threatened that Greenflight would be "filling [*sic*] for injunctive relief and damages in USDC" if Apple did not "immediately" remove Whitepages' app from Apple's iTunes App Store.  *Id.*, Ex. 1 at 2.

Greenflight explained the basis for its allegations four days later in another email to Apple, wherein Greenflight's president, Ianina Petrea, stated that the Whitepages' app "infringes on United States Patent 8,861,698 *claim 1(c)* by offering an app with a 'function serving as an interface between the query and the carrier's respective CNAM database.'"  *Id.*, Ex. 2 (emphasis added).  Ms. Petrea elaborated on the basis for Greenflight's allegations and informed Apple that the '698 patent covered any means of obtaining CNAM data:

> [I]t is quite easy to recognize CNAM-sourced data with its distinct 15-character limitation.  When Whitepages ID launched several weeks ago, we spotted what readily appears to be CNAM data and subsequently filed notice with iTunes.
>
> . . . ***[O]ur patent claim covers any and all CNAM protocol originated data***.  Put simply, our claim language broadly covers any app that offers a "function serving as an interface between the query and the carrier's respective CNAM database."

*Id.*, Ex. 2 at 1 (emphasis added).  Greenflight even went as far as asserting that Whitepages' alleged infringement threatened the "safety and privacy rights" of Apple's customers.  *Id.* at 2 ("We are particularly concerned how this infringement potentially affects the safety and privacy

---

[1] The claims of the '698 patent are described in Whitepages' Motion for Judgment on the Pleadings.  Dkt. No. 31 at 5.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  rights of iTunes users and the greater public.").

2  Ms. Petrea's email further accused Whitepages of infringing additional "privacy control"

3  intellectual property rights, but did not specify what these rights were or how Whitepages

4  possibly infringed:

> By failing to acknowledge our intellectual property rights,
> specifically this privacy control, Whitepages potentially harms all
> users of this system and the Public Switched Telephone Network
> (PSTN).

8  *Id.*, Ex. 2 at 2.

9  Rather than litigate a patent case over email copying Apple's employees, Whitepages

10  responded concisely, denying the allegations in full and noting that its counsel would contact

11  Greenflight soon.  *Id.*, Ex. 2 at 1.

**B.      Greenflight Continues Its Bad Faith Allegations in an Effort to Extract
Millions of Dollars from Whitepages**

14  On September 11, 2015, Whitepages' outside counsel, Bryan Kohm of Fenwick & West

15  LLP ("Fenwick"), wrote to Ms. Petrea, requesting clarification regarding Greenflight's

16  infringement allegations and identification of the privacy control intellectual property rights

17  referenced in Greenflight's August 28 email.  *Id.*, Ex. 3.  Defendant Jeffrey Isaacs, Greenflight's

18  CEO, responded to Mr. Kohm's letter on September 27, referring to Ms. Petrea's August 28 email

19  as "[a] substantiated notice of infringement," and alleging that "Whitepages ID app infringes on

20  patent 8,861,698 either directly or under federal equivalency doctrine."  *Id.*, Ex. 4.  Mr. Isaacs

21  also asked to meet with Whitepages to discuss "a range of solutions to our IP concerns, several of

22  which could mutually benefit Whitepages," but, despite Mr. Kohm's request, did not otherwise

23  address Greenflight's allegations.  *Id.*  Mr. Kohm responded and requested confirmation that

24  Greenflight's infringement theory "is based on the allegation that Whitepages allegedly practices

25  claim 1(c)" of the '698 patent, and again requested information regarding Greenflight's alleged

26  opt-out privacy control system intellectual property rights "[i]n order to make the parties'

27  discussions productive."  *Id.*, Ex. 5.

28  Mr. Isaacs responded on October 9, 2015, reiterating Greenflight's belief that Whitepages'

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Caller ID app "offers as [*sic*] function serving as an interface between the query and the carrier's

2   respective CNAM database.  This function is element C of '698 Independent Claim #1."  *Id.*,

3   Ex. 6.  As for the other claim limitations, including the "SS7 interfacing node," which is element

4   1(b), Mr. Isaacs stated that "it was implied that the remainder of Claim #1's elements were also

5   implemented by the accused [Whitepages app]," but that Greenflight "viewed the other elements

6   . . . as *trivial*" and thus did not identify any support for its allegations as to these elements.  *Id.*

7   (emphasis added).

8   In his email, Mr. Isaacs admitted that Greenflight possessed no intellectual property rights

9   in an "opt-out" privacy control:

10
11          To clarify, our concerns regarding opt-out IP did not relate directly
            to any other patent, or specifically to '698 Claim #4, but rather, the
            public interest concerns against allowing a plethora of infringers to
12          operate Post-Page Caller Name Services via internet applications.

13   *Id.*  Mr. Isaacs and Mr. Kohm later conducted a teleconference to discuss Greenflight's

14   allegations.  *Id.* ¶ 8, Exs. 7–8.  In that conference, Mr. Isaacs confirmed that, contrary to

15   Greenflight's prior representations to Apple and Whitepages, Greenflight indeed had no

16   intellectual property rights in a "privacy control" system.  *Id.*, Ex. 13.

17   On December 16, 2015, Mr. Isaacs forwarded to Mr. Kohm an email chain indicating that

18   he had continued to harass both Apple—regarding purported infringement by the Whitepages

19   app—and Whitepages' management, despite the fact that Whitepages had already asked Mr.

20   Isaacs to direct his inquiries to Whitepages' outside counsel.  *Id.*, Ex. 9.  Greenflight's continued

21   misconduct threatened to interfere with Whitepages' business.  Specifically, in an email from

22   "Apple Legal" to Whitepages dated December 11, 2015, Apple stated that Greenflight had

23   advised it "that this matter is still not resolved," and that "[i]f the matter is not resolved shortly,

24   Apple may be forced to pull [Whitepages'] applications(s) from the App Store."  *Id.*  Mr. Isaacs

25   also forwarded Mr. Kohm a copy of a message sent via LinkedIn to Whitepages' CEO, Alex

26   Algard, offering "exclusive rights" to Greenflight's patent or, alternatively, requesting licensing

27   discussions.  *Id.*

28   Mr. Kohm responded that day, and asked for confirmation as to whether Greenflight's

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   position was that any means to connect to a CNAM database infringed the '698 patent. *Id.*,

2   Ex. 10.  On December 17, 2015, Mr. Isaacs confirmed that, according to Greenflight, the claims

3   of the '698 patent could be infringed "without technically ever utilizing SS7," including by

4   connecting to a server via a USB cable. *Id.*, Ex. 11.

5       On January 7, 2016, Mr. Isaacs informed Whitepages that it intended to pursue litigation

6   against Whitepages. *Id.*, Ex. 12.  Mr. Isaacs' email also stated that Greenflight's "co-director, Mr.

7   Baker" would be in Vancouver in February, and Greenflight "would hope to meet with

8   [Whitepages] by this time at the latest to reach a resolution agreement." *Id.*

9       **C.    Greenflight Engages in Personal Attacks and Attempts to Intimidate Counsel
10              with False Accusations**

11      On January 11, 2016, Mr. Kohm sent a letter to Mr. Isaacs explaining why Greenflight's

12  infringement allegations against Whitepages were objectively baseless and made in bad faith. *Id.*,

13  Ex. 13.  The letter identified numerous flaws in Greenflight's infringement theory, and explained

14  that its statements to Apple regarding Whitepages' purported infringement and its assertion of

15  non-existent "privacy control" intellectual property rights constituted a basis for trade libel, libel,

16  and unfair competition claims. *Id.*  In so doing, the letter quoted from Greenflight's emails and

17  referenced the October 23 teleconference. *Id.*  Whitepages filed the instant lawsuit the same day

18  in the Northern District of California, asserting trade libel, libel, and unfair competition against

19  Ms. Petrea, Mr. Isaacs, and Greenflight, and requesting declaratory judgment of non-infringement

20  of the '698 patent.  Dkt. No. 1.  As a compromise and in the interest of resolving the parties'

21  dispute, Whitepages offered to forego its claims if Greenflight agreed to withdraw the complaint

22  it lodged with Apple and granted Whitepages a covenant not to sue.  Kohm Decl., Ex. 13 at 1, 3–

23  4.

24      Mr. Isaacs responded on January 12, 2016 with the first of several groundless attacks on

25  Whitepages' attorney, Mr. Kohm.  *Id.*, Ex. 14.  He accused Mr. Kohm of "illegally record[ing]"

26  their "off-record and informal" October 23, 2015 teleconference, and threatened to "report this

27  matter to the California bar" if Mr. Kohm did not "issue a statement rescinding any reliance on

28  [their] informal discussions":

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3
4
5

> First, you reference a conversation that we had agreed was verbal off-record and informal, and I never gave you permission to record it in any way. Please issue a statement rescinding any reliance on our informal discussions, or I will have to report this matter to the California bar. Obviously a seasoned patent law firm could obfuscate issues, such as "interfacing node" by claiming various different contexts used in verbal conversation. I expect better of Fenwick and, again, request your confirmation that you did not illegally record our telephone call.

6  *Id.* He also requested a 14-day extension to respond to Whitepage's offer, and complained that

7  Whitepages had not presented any evidence of non-infringement and had "refused to speak" to

8  Greenflight. *Id.*

9      Later that day, Mr. Isaacs sent another email to both Mr. Kohm and Whitepages' CEO,

10 Alex Algard, threatening that a lawsuit was "in the process of delivery to the relevant District

11 Court" and extending an offer for Whitepages to acquire all rights to the '698 patent for $15

12 million. *Id.*, Ex. 15. In the same email, Mr. Isaacs accused Whitepages' CEO, Mr. Algard, of

13 "making false statements to the nation" when he said on a cable news television program that the

14 Whitepages' app was the "leading" caller ID app for smartphones, and demanded that Mr. Algard

15 issue a retraction. *Id.* The email's signature block indicated that a copy had been or would be

16 sent to Apple, as well as to TrueCaller and a venture capital firm, Kleiner Perkins. *Id.*

17     Mr. Kohm responded to Mr. Isaacs' latest emails on January 13, 2016, requesting that all

18 communications be directed to him as Whitepages' attorney for this matter, rather than to

19 Whitepages' executives, and agreeing to the requested extension. *Id.*, Ex. 16. Mr. Kohm also

20 informed Mr. Isaacs that he was mistaken regarding the alleged recording of telephone

21 conversations, noted that it was unclear what Mr. Isaacs meant by "off the record," and explained

22 again that an infringement allegation must have a reasonable basis, which Greenflight lacked. *Id.*

23     On January 14, 2016, Greenflight Venture Corporation (but not Mr. Isaacs) filed suit in

24 the Southern District of Florida (the "Florida action") against Whitepages, Mr. Algard, and

25 Swedish corporation True Software Scandinavia AB ("True Software") (creator of the TrueCaller

26 app), alleging that Whitepages and Mr. Algard infringe the '698 patent via Whitepages' Caller ID

27 app. *Id.*, Ex. 17. The complaint was signed by David A. Greene of Fox Rothschild LLP. *Id.*,

28 Ex. 17 at 8.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   The next day, Mr. Kohm contacted Mr. Greene to discuss the Greenflight's allegations

2   and to ask whether Mr. Greene would accept service of Whitepages' complaint in the California

3   action.  *Id.*, Ex. 18.  In response to Mr. Kohm's inquiry to Mr. Greene, Mr. Isaacs emailed Mr.

4   Kohm to advise him that Mr. Greene was involved with the Florida complaint exclusively, and

5   that all communications related to the California action should be directed to Mr. Isaacs.[2]  *Id.*,

6   Ex. 19.

7   On January 19, 2016, Mr. Isaacs directly contacted Mr. Kohm, demanding to know why

8   Whitepages had not yet filed a notice of related cases in the California action.  *Id.*, Ex. 20.  A few

9   hours later, he requested documentation and information from Whitepages related to the parties'

10   dispute, framing the request as "in regard to the complaint [Greenflight] filed with Apple, Inc,

11   and not any other related USDC processes."  *Id.*, Ex. 21.  When informed the next morning that

12   this requested discovery should proceed according to the Federal and Local Rules regarding

13   discovery, Mr. Isaacs suggested Whitepages' refusal to immediately provide the requested

14   information to Greenflight constituted interference with *Apple's* "right to investigate an infringing

15   app on their own App Store."  *Id.*, Ex. 22.

16   That same day, January 20, Ms. Petrea and Mr. Isaacs co-signed a letter to Apple and

17   Whitepages, attaching Mr. Kohm's January 11 letter to Greenflight and the complaints in both

18   lawsuits.  *Id.*, Ex. 23.  The letter again reiterated Greenflight's baseless infringement theory and

19   made clear Greenflight's understanding that its patent covered "1970s technology" that

20   Whitepages allegedly must infringe:

> We believe Whitepages now attempts to mislead regarding
> infringement of the second element of the first '698 patent claim,
> specifically, an "SS7 interfacing node." As we mentioned back in
> August, SS7 CNAM is a 1970s technology which has a
> characteristic 15-character limit. We have conducted tests of "ID by
> Whitepages" which show it frequently returns the exact same result
> as SS7 CNAM, and is indeed limited to 15-characters.

21

22

23

24

25   *Id.*, Ex. 23 at 3.  Greenflight again demanded that Apple "settle this controversy" and "promptly

26

27   [2] To ensure that Greenflight and its counsel were on the same page concerning Mr. Isaacs'
    representation that counsel only represented Greenflight with respect to the Florida action, Mr.
    Kohm sent an email to Mr. Isaacs and Greenflight's Florida counsel confirming this fact.  *Id.*,

28   Ex. 19.

remove" Whitepages' app from the App Store.  *Id.*  And despite Mr. Isaacs' concession that Greenflight had no intellectual property rights related to privacy protections, Greenflight again alleged that "Whitepages' app harms the customer privacy opt-out ability." *Id.*  Mr. Isaacs sent the letter to Mr. Kohm under separate cover the same day.  *Id.*, Ex. 24.  His cover email strongly suggested that Greenflight may attempt to amend the claims of the '698 patent—in view of the non-infringement contentions Whitepages' had provided to Greenflight in pre-litigation discussions—solely for purposes of covering the Whitepages' app:

> Our patent can be continued until October 2016 in the event , as a pro se applicant, some claim language needs to be amended. I don't believe this is the case, as you can see , we believe an SS7 interfacing node is outsourced by all industry leading CNAM providers.

*Id.*

The next day, January 21, 2016, Mr. Isaacs unleashed a series of email communications to Whitepages' counsel that took an increasingly and disturbingly aggressive tone.  Mr. Isaacs informed Whitepages that he believed Greenflight's letter to Apple the day before "complied with the spirit of [Whitepages'] January 11th offer to dismiss the CAND libel / trade libel claims in exchange for retraction of our demand to pull the app," as Greenflight did not "seek any action adverse to [Whitepages] by Apple that their own legal department did not investigate and verify," and requested that Whitepages withdraw its claims.  *Id.*, Ex. 25.  Mr. Isaacs also reiterated that the '698 patent "may be amended until October," but stated that Greenflight was "not aware of any necessity to do so" at that point as Greenflight believed Whitepages "outsources the SS7 node, and this is covered by the claims."  *Id.*

Upon receiving Mr. Kohm's response that the January 20th letter to Apple did not "compl[y] with the spirit of [Whitepages'] January 11th letter," but in fact did the opposite, *see id.*, Ex. 26 at 1, Mr. Isaacs insisted that Whitepages' offer had been accepted, and began insulting Mr. Kohm and accusing him of criminal activity, which Greenflight would report to the authorities unless Whitepages withdrew its complaint:

> Your offer was accepted, and you must retract the libel claims, or Greenflight will take action against you personally, and Fenwick for breach of contract amongst other claims. ***Frankly, what you are***

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

> *suggesting - that Greenflight interfere with Apple's own internal investgation, smells of racketeering and I will be reporting this to the California Bar if you don't honor the contract*.

> Please provide official confirmation that of [*sic*] you and Fenwick are dishonoring the contract no later than 48 hours from now.  For Fenwick, I hereby request an agent other than yourself to indicate their position, or I will seek injunctive action against the firm. *You've been a partner for a few months now, and my best understanding is that you're simply not used to operating such an important case independently*.

*Id.* (emphasis added).  In a second email following the first by mere minutes, Mr. Isaacs escalated his accusations against Mr. Kohm and Fenwick:

> On further notice, *Greenflight and my position is that you and your firm are now committing a crime by threatening us not to enven [sic] ask Apple to investigate a patent matter.*

> I hereby instruct you to cease and desist all communication to me or Greenflight from this point forward, or *the matter will be referred to appropriate authorities*.

> Again - CEASE AND DESIST - no further contact from you personally. We will seek escalation with Fenwick's compliance department.

*Id.*, Ex. 27 at 1.  A few minutes later, Mr. Isaacs sent yet another email, simply stating "CEASE AND DESIST" in all capital letters.  *Id.*, Ex. 28 at 1.

Only after this exchange, which Mr. Kohm forwarded to Greenflight's Florida counsel, was Florida counsel authorized to communicate with Mr. Kohm regarding the California action. *Id.*, Exs. 29–30.

**D.    Greenflight Refuses to Cooperate in Basic Procedural Matters in an Effort to Drive Up Litigation Costs**

In light of the duplicative filing in Florida, Whitepages' counsel reached out to Greenflight's counsel to explore the possibility of avoiding unnecessary motion practice.  To allow time for that discussion, and because Whitepages was still in the process of retaining local counsel in Florida, Whitepages requested a one-week extension to respond to Greenflight's complaint in the Florida action.  *Id.*, Ex. 38 at 1-2.  Greenflight's counsel agreed to the extension. *Id.*  Yet the night Whitepages filed an unopposed motion requesting the one-week extension, Mr. Isaacs sent an email informing Whitepages that Greenflight had new counsel and opposed the

1  extension:

2      Greenflight Venture Corporation's counsel has been changed to
       Winston & Strawn.
3
4      Greenflight NEVER AUTHORIZED an extension of time for
       Whitepages to serve a responsive pleading.  Please retract or correct
5      your USDC filing IMMEDIATELY.

6      Whitepages' Response is DUE February 9 2016.

7  *Id.*, Ex. 38 at 2, 8.  Whitepages filed an additional notice in the Florida action regarding Mr.

8  Isaacs' communicated desires.  *Id.*, Ex. 38 at 1.  The Florida court treated Whitepages' motion as

9  opposed and granted it.  Order Noting Notice, *Greenflight Venture Corp. v. Whitepages, Inc.*, No.

10  16-80079-CIV-ROSENBERG/HOPKINS (S.D. Fla. Feb. 8, 2016) ECF No. 12.

11      Meanwhile, Greenflight evaded Whitepages' attempts to serve the complaint and

12  summons in the California action.  On its 2015 Annual Report filed with the Florida Secretary of

13  State, Greenflight listed its registered agent as Ianina Petrea, at 10312 Orchid Reserve Drive,

14  West Palm Beach, Florida 33412.  Kohm Decl., Ex. 31.  Greenflight filed its 2016 Annual Report

15  on January 16, 2016, and changed its registered agent to Jeffrey Isaacs—still at the 10312 Orchid

16  Reserve Drive, West Palm Beach address.  *Id.*, Ex. 32.  Greenflight also alleged, in both the

17  complaint it filed in the Florida action and in its counterclaims in the instant action, that 10312

18  Orchid Reserve Drive, West Palm Beach, Florida was the location of its headquarters.  *Id.*, Ex. 17

19  at 1; Dkt. No. 21 at 3.  The address listed is a private residence.  *See* Kohm Decl., Ex. 33.  When

20  Whitepages attempted personal service at that address on Greenflight, Ms. Petrea, and Mr. Isaacs,

21  the person residing at the private residence stated that neither Mr. Isaacs nor Ms. Petrea had

22  resided there in years.  *Id.*, Exs. 34–36.  Indeed, Mr. Isaacs returned a summons mailed to that

23  address, accusing counsel of "harassing" his stepmother by mailing items there.  *Id.*, Ex. 37.

24      Greenflight and its new counsel, Winston & Strawn, refused to discuss the possibility

25  coming to an agreement regarding in which forum—here, or Florida—the litigation should

26  proceed.  Instead, Greenflight forced Whitepages to prepare and file a motion to dismiss or

27  transfer venue.  *See* Defendant Whitepages, Inc. and Alex Algard's Motion to Dismiss or Transfer

28  Venue for Lack of Personal Jurisdiction, Improper Venue, and Pursuant to the First-to-File Rule

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and Incorporated Memorandum in Support of Motion, *Greenflight Venture Corp. v. Whitepages, Inc.*, No. 16-80079-CIV-ROSENBERG/HOPKINS (S.D. Fla. Feb. 16, 2016) ECF No. 13.  Only after Whitepages' motion was filed did Greenflight accept service and agree to litigate in this forum.  Whitepages agreed to dismiss its libel, trade libel, and unfair competition claims in exchange for Greenflight 1) dismissing Whitepages and Alex Algard as defendants in the Florida action; 2) not challenging personal jurisdiction or venue here or moving to transfer; and 3) not pursuing its dispute with Apple during the pendency of this action.  Kohm Decl., Ex. 39. Greenflight filed a stipulation dismissing the Whitepages defendants from the Florida action on March 4 (SD Fla. Case No. 16-80079, Dkt. No. 16), and Whitepages accordingly filed an amended and supplemental complaint, asserting only its claim of declaratory judgment of non-infringement in this action on March 9.  Dkt. No. 17.[3]

But on May 10, 2016, Greenflight violated this agreement.   Mr. Isaacs emailed Apple to again assert infringement of the '698 patent and demand resolution of its dispute:

> We await response from Apple as to what their final determination/action will be regarding our complaint. Our position is that Apple is willfully infringing the patent by failing to fully execute their Apple Developer Agreement vis-a-vis IP infringement.

*See* Kohm Decl., Ex. 40.  Mr. Isaacs' violation of the agreement resulted in nullifying its terms, permitting Whitepages to again to pursue claims for Greenflight's and Mr. Isaacs' misconduct. *Id*.

### E.   Greenflight Takes Irreconcilable and Baseless Infringement and Validity Positions

Greenflight answered Whitepages' amended complaint on March 28, 2016, counterclaiming infringement of the '698 patent.  Dkt. No. 21 at 3–11.  In its counterclaim, Greenflight explained that Whitepages practiced the "SS7 interfacing node" limitation because "name data originally derives from a CNAM database."  *Id*. at 7–8 ¶ 20.  As described by

---

[3] The amended and supplemental complaint recited one new event: a January 14, 2016 assignment of a portion of ownership interest in the '698 patent from Jeffrey Isaacs to Greenflight, recorded in the United States Patent and Trademark Office, and attached to the amended and supplemental complaint as Exhibit B.  Dkt. No 17 ¶ 12.

1   Greenflight, therefore, the limitation requiring "connect[ion] to the PSTN via an SS7 interfacing

2   node" is met so long as the queried database contains CNAM data.

3        On May 23, 2016, Whitepages filed a motion for judgment on the pleadings on its

4   affirmative defense that the '698 patent is invalid under 35 U.S.C. § 101 for lack of patentable

5   subject matter.  Dkt. No. 31.  In its opposition to Whitepages' motion, Greenflight did an about-

6   face and stressed that the key element of the patent is the "SS7 interfacing node."  Greenflight

7   argued that this "bridge" was the inventive concept that made the '698 patent more than an

8   abstract idea, and that it was not simply querying a CNAM database.  *See* Dkt. No. 36 at 11–14.

9   At oral argument, Greenflight's counsel made this argument clear:

10          I would say that the inventive concept is this software bridge that
            connects one – this PTSN side to an interface protocol, and nobody
11          had ever built that bridge before this invention. . . . I would say
            that's the inventive concept.
12

13   Kohm Decl., Ex. 41 at 14:10–16.  Notably, this position is directly contrary to Greenflight's

14   position that anything obtaining CNAM data is an SS7 interfacing node, and its earlier assertion

15   that it is a trivial limitation which should be disregarded.

16        Incredibly, Greenflight's counsel also stated to the Court that if the Court were inclined to

17   grant Whitepages' motion, Greenflight would like the opportunity to modify its pleadings because

18   it  "might tinker with some things," and that the admissions it had made in those documents "may

19   be changed."  *Id.* at 21:14–22:4.  The Court granted Whitepages' motion on July 25, 2016,

20   finding the '698 patent invalid under 35 U.S.C. § 101, and dismissing Greenflight's counterclaim

21   as moot.  Dkt. No. 48.  Greenflight promptly moved for leave to file a motion for reconsideration,

22   focusing again on the importance of the "SS7 interfacing node."  Dkt. Nos. 49–50.  After granting

23   Greenflight leave to file its motion and taking briefing from both parties, the Court denied the

24   motion for reconsideration on August 16, 2016.  Dkt. Nos. 52 (Order Granting Motion for Leave);

25   54 (Order Denying Motion for Reconsideration).

26   **F.    Greenflight Again Refuses to Cooperate on Basic Procedural Matters**

27        Because the Court's order granting Whitepages' motion for judgment on the pleadings

28   rendered all remaining claims moot, Whitepages reached out to Greenflight to request that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Greenflight stipulate to entry of judgment.  Kohm Decl., Ex. 42.  But Greenflight refused to so

2   stipulate unless Whitepages waived its rights to fees and costs.  *Id.*  Whitepages accordingly filed

3   an opposed motion for entry of judgment at 3:22 pm on September 7, 2016, which the Court

4   granted at 4:34 pm the same day.  Dkt. Nos. 57 (motion); 59 (order).  At 4:29 pm, Greenflight

5   filed a notice of appeal, entered as a Notice of Appeal to the 9th Circuit Court of Appeals.  Dkt.

6   No. 58.  At 4:58 pm, Greenflight filed a second notice of appeal, entered as a Notice of Appeal to

7   the Federal Circuit.  Dkt. No. 60.  The next day, Greenflight filed a third notice of appeal.  Dkt.

8   No. 61.

9         **G.**      **Greenflight's Lead Counsel Attempts to Intimidate Whitepages' Counsel to**

10                  **Avoid the Present Motion**

11       In accordance with Local Rule 54-5(a), Whitepages requested a meet and confer with

12  Greenflight regarding the present motion.  During that teleconference, which was held on

13  September 16, 2016, Greenflight's lead counsel proceeded to yell at counsel and threatened to

14  "hit you [Whitepages and/or its counsel] hard" if it filed the motion, including by filing its own

15  motion for sanctions.  Kohm Decl., Ex. 43.  Mr. Kohm, Whitepages' lead counsel, was traveling

16  and unable to join the teleconference but received a report following the call.  Mr. Kohm

17  subsequently sent an email to Greenflight's lead counsel, Mr. Badini, asking him not to yell at

18  Mr. Kohm's colleagues and to direct his unprofessional conduct at Mr. Kohm, if anyone.  *Id.*, Ex

19  44.  Mr. Badini responded by denying that yelled at anyone, though notably admitted to acting

20  "irate" during the call.  *Id.*, Ex. 45.

21  **III.**    **ARGUMENT**

22      **A.**    **Legal Standard**

23       35 U.S.C. § 285 provides for an award of "reasonable attorney fees" to the prevailing

24  party in "exceptional" cases.  A case is exceptional if it "stands out from others" with respect to

25  either of two prongs: 1) "the substantive strength of a party's litigation position (considering both

26  the governing law and the facts of the case)" or 2) "the unreasonable manner in which the case

27  was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756

28  (2014).  Section 285 does not call for any specific standard of proof, but rather requires a "simple

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

discretionary inquiry" into the exceptionality of a case, "considering the totality of the circumstances." *Id.* at 1756, 1758.  Conduct need not be independently sanctionable to justify the award of fees under this section.  *Id.* at 1756.

A district court may also impose sanctions under its inherent power if it finds that a party has acted in bad faith.  *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59 (1975) (holding that federal courts have the inherent power to award attorneys' fees "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (internal quotation omitted); *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("[S]anctions are available [under a court's inherent power] if the court specifically finds bad faith or conduct tantamount to bad faith.").

## B.     Whitepages Is the Prevailing Party

Whitepages is unquestionably the prevailing party in this action.  The Court granted Whitepages' motion for judgment on the pleadings on its affirmative defense that Greenflight's asserted patent is invalid under 35 U.S.C. § 101, and reaffirmed that decision when Greenflight moved for reconsideration.  Dkt. Nos. 48, 54.  Because the Court found in Whitepages' favor, and because it declared Greenflight's patent invalid, Whitepages is the prevailing party.  *See Manildra Milling Corp v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996) (holding that "as a matter of law, a party who has a competitor's patent declared invalid meets the definition of 'prevailing party'").

## C.     Greenflight's Objectively Baseless Validity Position Merits an Exceptional Case Finding

A case may be found exceptional under 35 U.S.C. § 285 where the substantive strength of a party's litigation position is particularly weak.  *Octane Fitness*, 134 S. Ct. at 1756.  This prong may be met where a party either presents "exceptionally meritless claims" or brings a claim in subjective bad faith.  *Id.* at 1757.  Here, Greenflight's claims were both objectively meritless and brought in bad faith.

Greenflight's position regarding the validity of the '698 patent under 35 U.S.C. § 101 was objectively meritless.  The '698 patent asserted by Greenflight is "demonstrably weak on its

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

face." *See eDekka LLC v. 3balls.com, Inc.*, Nos. 2:15-cv-541, 2:15-cv-585 JRG, 2015 WL 9225038, at *2–4 (E.D. Tex. Dec. 17, 2015) (finding an unreasonable § 101 position regarding a "demonstrably weak" patent supported finding the case exceptional under § 285). As this Court found, the claims of the patent "are directed to the patent-ineligible abstract idea of looking up a name associated with a phone number." Dkt. No. 48 at 7 (noting that "[t]he patent employs industry-standard technology to perform a longstanding business practice, with no asserted improvement other than to use generic internet applications to obtain certain customer side advantages"). Although the facial weakness of the '698 patent, alone, justifies an award of fees, the arguments made by Greenflight demonstrate that no reasonable person could believe the patent to be valid.

In defending against Whitepages' motion for judgment on the pleadings, Greenflight argued that the inventive concept was a "software bridge" nowhere disclosed in the specification. *See eDekka*, 2015 WL 9225038 at *2–4 (finding eDekka's § 101 position unreasonable where it had "absolutely no basis in the claim language" and "[a]t best . . . include[d] terms that 'may vaguely allude to'" the argued activity). Specifically, Greenflight asserted that the claimed "SS7 interfacing node" was an inventive "bridge" resulting in "a new manner of querying a CNAM database (via the Internet) which had never been practiced before." Dkt. No. 50 at 2, 4. Greenflight's counsel focused on this alleged "software bridge" at oral argument as the inventive concept. *See supra* at 12–13. But Greenflight never pointed to any actual disclosure of such a "bridge" in the patent—no special programming, algorithm, or any set of steps for implementing the purported central innovation of the patent. As the Court pointed out, Greenflight "cannot explain how its invention redounds to anything other than using the Internet to perform the prior art CNAM query," and merely claiming "use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter." Dkt. No. 54 at 1:28–2:9 (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014)). In short, in its opposition to Whitepages' motion, at oral argument, and in its motion for reconsideration, Greenflight "repeatedly offered insupportable arguments on behalf of an obviously weak patent." *eDekka*, 2015 WL 9225038 at *4 ("This causes the Court to question whether eDekka engaged in a reasonable and thorough

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    pre-suit investigation regarding the § 101 standard and relevant authority . . . .").

2          Greenflight cannot claim that uncertainty in the law justifies its meritless positions.  The

3    Supreme Court's governing case on patent eligibility in this area came out over a year before

4    Greenflight first accused Whitepages of infringing the '698 patent, and two years before

5    Greenflight argued its insupportable § 101 position.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134

6    S. Ct. 2347 (2014) (decided June 19, 2014).  At the time of filing, there was no longer any

7    confusion as to whether using the Internet to perform an abstract idea was patent-eligible.  *See*

8    *Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. 14-448-GMS, 2016 WL 2090633, at *3

9    (D. Del. May 31, 2016) (in finding the case exceptional, noting that "by the time of the *Alice*

10   decision, [patentee] was on notice that its claims . . . covered an abstract idea and that the

11   introduction of a computer into these claims did not alter the analysis"); *Garfum.com Corp. v.*

12   *Reflections By Ruth d/b/a/ Bytephoto.com.*, No. 14-5919 (JBS/KMW), 2016 WL 1242762 at *8

13   (D.N.J. Mar. 30, 2016) (finding case exceptional based on patentee's weak litigation position,

14   noting that "although the law on patent eligible subject matter had been in flux, a sufficient

15   number of cases had been decided [post-*Alice*] by the time of briefing that [the patentee] should

16   have realized that its arguments under 35 U.S.C. § 101 were untenable").  *C.f. Gametek LLC v.*

17   *Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (in denying

18   attorneys' fees where defendant prevailed on motion for judgment on the pleadings under § 101,

19   noting that it was "particularly relevant . . . that the substantive law in this area was unsettled at

20   the time of the prior Order," as *Alice* had not yet been decided).  Greenflight knew or should have

21   known that its position was objectively meritless.[4]

22   _____

23   [4] Greenflight may point to the fact that the claims of the '698 patent were allowed *after* the
     Supreme Court's decision in *Alice* issued as evidence that it had a reasonable belief that the '698
     patent was valid under Section 101.  But the examiner's rejection of Greenflight's claims under

24   Section 101 occurred in an Office Action dated April 16, 2014—months before the Supreme
     Court's opinion in *Alice* issued.  Moreover, recent guidance to Patent Office examiners cite

25   extensively to Federal Circuit and Supreme Court case law, indicating that the Patent Office is
     looking to courts for guidance, rather than shaping the law of patent eligibility.  Robert W. Bahr,

26   *Formulating a Subject Matter Eligibility Rejection and Evaluating the Applicant's Response to a
     Subject Matter Eligibility Rejection*, USPTO (May 4, 2016) available at

27   http://www.uspto.gov/sites/default/files/documents/ieg-may-2016-memo.pdf.  To the extent
     Greenflight and its counsel relied on any additional presumption of validity in asserting the '698

28   patent based on the fact that it issued after *Alice*, such reliance was unreasonable.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### D. Greenflight's Bad Faith and Unreasonable Litigation Conduct Provides Independent Grounds for An Exceptional Case Finding

Not only was Greenflight's litigation position substantively weak, but Greenflight routinely engaged in bad faith conduct throughout this litigation. "[L]itigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." *Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 726 F.3d 1359, 1366–67 (Fed. Cir. 2013) (quoting *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012)) (affirming exceptional case finding based on a pattern of misconduct and unprofessional behavior creating a "vexatious litigation strategy"). Greenflight maintained untenable infringement and validity arguments, refused to cooperate on basic procedural matters, attempted to gain leverage over Whitepages by making baseless and false accusations to Apple, and engaged in abusive conduct "This vexatious conduct is, by definition, litigation misconduct," and warrants an exceptional case finding. *MarcTec*, 664 F.3d at 920–21 (affirming fees award where plaintiff "initiated a frivolous lawsuit" and "persisted in advancing unfounded arguments that unnecessarily extended this litigation" causing defendant to "incur needless litigation expenses"). The totality of the circumstances demands an exceptional case finding here. *See Octane Fitness*, 134 S. Ct. at 1756.

#### 1. Greenflight's Unreasonable and Irreconcilable Infringement and Validity Contentions

The bad faith nature of Greenflight's infringement allegations is evidenced by the unreasonable infringement and validity positions. Its bad faith is compounded by the fact that those infringement and validity positions were irreconcilable, and thus no plausible path existed to prevail on the merits.

Greenflight's infringement allegations were based solely on an observation that Whitepages' app returns results that are sometimes 15 characters in length. *See* Dkt. No. 21 at 7 ¶ 20; Kohm Decl., Exs. 2, 23. This, according to Greenflight, means Whitepages' app *must* get its data from a CNAM database, which Greenflight asserted was all that was required to infringe the patent. Kohm Decl., Ex. 2. at 1 (asserting that the '698 patent "covers any app that offers a 'function serving as an interface between the query and the carrier's respective CNAM

database"). Greenflight's infringement allegations effectively read out the "SS7 interfacing node" limitation of the claims. In his October 9, 2015 email to Whitepages' counsel, Mr. Isaacs emphasized Greenflight's reliance on "element C" of claim 1, and described the other elements of that claim—including the recitation of an "SS7 interfacing node"—as "trivial." *See* Kohm Decl., Ex. 6. In December, Mr. Isaacs confirmed that in Greenflight's view, infringement could occur without "ever utilizing SS7" at all. *Id.*, Ex. 11. Given that Greenflight's infringement theory relied on vitiating the "SS7 interfacing node" limitation, it was baseless on its face. The Court can—and should—infer bad faith here given Greenflight's "manifestly unreasonable" assessment of infringement. *Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990) ("the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court").

Greenflight's validity position was similarly meritless. As addressed above, Greenflight's argument in support of its position that the '698 claimed patentable subject matter focused on a "bridge" nowhere disclosed in the patent.

The bad faith nature of Greenflight's claims becomes even more evident when its infringement and validity positions are considered together. For its infringement position, Greenflight asserted that "SS7 interfacing node" is a "trivial" limitation, and its position read the limitation out of the claims. But that same limitation was the key inventive concept upon which, according to Greenflight, the validity of the patent rests. Greenflight's attempt to argue one position on infringement, and then flip to the opposite in an attempt avoid an unfavorable ruling on validity, amounts to gamesmanship, and demonstrates the bad faith nature of Greenflight's claims. *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10–02066 SI, 2014 WL 3956703, at *10 (N.D. Cal. Aug. 12, 2014) (characterizing Kilopass's attempt to change its baseless position regarding claim scope as "gamesmanship," in finding the case exceptional).

### 2.    Greenflight's Pattern of Abusive Conduct Before and During the Litigation

Greenflight's assertion of a facially invalid patent, combined with is objectively meritless and bad faith infringement allegations, provide more than an adequate basis to award fees. But

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

that *combined* with its conduct—both before and during the litigation—compels a finding of exceptionality and an award of Whitepages' reasonable attorneys' fees.

This began with Greenflight's pre-litigation infringement correspondence, in which it repeatedly harassed Whitepages' business partner Apple, demanding that Apple remove Whitepages' application from its App Store. This harassment, which was calculated to gain leverage over Whitepages and gain a business advantage, supports a finding of an exceptional case. *Monolithic*, 726 F.3d at 1369 (finding "an abusive 'pattern'" and "vexatious strategy" where patentee filed lawsuits against accused infringer's customers in retaliation for accused infringer's filing of declaratory judgment action); *Astrazeneca AB v. Dr. Reddy's Labs., Ltd.*, No. 07 Civ. 6790, 2010 WL 1375176, at *1, *4, *9 (S.D.N.Y. Mar. 30, 2010) (finding infringement allegations were "never even close to being close" and awarding fees where the "lawsuit was nothing more than an effort to keep a legitimate competitor out of the market on flimsy-to-nonexistent grounds"); *Checkpoint Sys., Inc. v. All-Tag Security S.A.*, No. 01-2223, 2015 WL 4941793, at *2–3 (E.D. Penn. Aug. 19, 2015)  ("This case 'stands out from others' in that Checkpoint brought suit in bad faith with the improper motive of crippling Defendants' business.").

In that pre-litigation correspondence, Greenflight also threatened to assert intellectual property related to so-called "privacy controls"—intellectual property Mr. Isaacs ultimately conceded did not exist. *See, e.g.*, Kohm Decl., Ex. 2 ("By failing to acknowledge our intellectual property rights, specifically this privacy control, Whitepages potentially harms all users of this system"); *id.* Ex. 6 (Mr. Isaacs admitting that Greenflight's "concerns regarding opt-out IP did not relate directly to any other patent, or specifically to '698 Claim #4").  Greenflight's assertion of a patent it did not own likewise supports a finding of an exceptional case. *See, e.g.*, *Home Gambling Network Inc. v. Piche*, No. 2:05-cv-610, 2014 WL 2170600, *9 (D. Nev. May 22, 2014) (awarding attorneys' fees, finding that the "totality of the circumstances warrants a finding of 'exceptionality' in this case because . . . Plaintiffs attempted to sue for infringement of a patent that they did not own").

Once Whitepages filed is complaint in this case, Greenflight made a strategic decision to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   do whatever it could to increase Whitepages' litigation costs by refusing to cooperate in even the

2   most basic of procedural matters.  For example, as discussed above, Greenflight:  (i) evaded

3   service of process in the California action; (ii) simultaneously filed its *own* unnecessary patent

4   infringement action in the Southern District of Florida; (iii) agreed to an extension for

5   Whitepages to respond to that complaint and subsequently reneged on that commitment; (iv)

6   initially refused to stipulate to consolidation of the two cases in this Court (despite the fact that

7   Whitepages' action was first-filed), forcing Whitepages to file a motion to transfer; and (v) only

8   after Whitepages prepared and filed that transfer motion agreed to transfer in exchange for

9   Whitepages' agreement to forego certain of the claims asserted in its complaint.

10          As a further example, when Whitepages prevailed on its motion for judgment on the

11  pleadings, Greenflight filed a completely meritless motion for reconsideration, rehashing the

12  same arguments it had already made in opposition to Whitepages' motion.  And when the Court

13  denied Greenflight's motion for reconsideration, fully and finally resolving the Section 101

14  invalidity issue in Whitepages' favor, rendering the '698 patent invalid, and mooting any other

15  related claims, Greenflight refused to stipulate to entry of judgment forcing Whitepages to file an

16  opposed motion for entry of judgment.  This procedural gamesmanship merits an award of fees.

17  *Dolen v. Rylas*, No. 8:09-CV-2120-T-23AEP, 2012 WL 983787, at *3 (M.D. Fla. Feb. 10, 2012)

18  (awarding fees for pattern of conduct including, among other things, "manipulating service of

19  process, . . . filing multiple motions for sanctions (each of which were denied), filing multiple

20  amended complaints, and threatening to dismiss the action [in order to] reinitiate the case in

21  Florida state court," finding that this behavior amounted to "vexatious and unreasonable conduct

22  that multiplied the proceedings"); *Monolithic*, 726 F.3d at 1367-68 (finding case exceptional

23  where defendant filed numerous baseless motions); *see also Pharmacia & Upjohn Co. v. Mylan*

24  *Pharms., Inc.*, 182 F.2d 1356, 1360–61 (Fed. Cir. 1999) (instructing district court on remand to

25  consider whether baselessly opposing a motion, combined with maintaining a meritless claim,

26  were vexatious litigation tactics sufficient to warrant an exceptional case finding).

27          Finally, Greenflight engaged in a pattern of aggressive and threatening communications

28  with no conceivable purpose other than to intimidate Whitepages and deter it from pursuing its

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  claims and vindicating its technology.  For example, Mr. Isaacs personally attacked Whitepages'

2  counsel, Mr. Kohm, on numerous occasions, falsely accusing him of recording phone

3  conversations and committing criminal acts such as racketeering and threatening to report him to

4  the state bar association.  And Greenflight's counsel, when put on notice of Whitepages' motion,

5  threatened to "hit you [Whitepages and/or its counsel] hard" if it proceeded with the filing of the

6  present motion.  *See* Kohm Decl., Ex. 43.  This unprofessional conduct similarly provides a basis

7  for an award of attorneys' fees.  *Dolen*, 2012 WL 983787 at *3 (awarding fees where plaintiff

8  "fil[ed] state bar grievances against the Defendants' counsel"); *Checkpoint Sys., Inc.*, 2015 WL

9  4941793 at *3 (awarding fees where plaintiff threatened to "bleed [defendant] with legal fees

10  unless [it] capitulated"); *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharm.*, No. 10-6908, 2015

11  WL 1422337, at *3 (E.D. Penn. Mar. 30, 2015) (finding case exceptional where conduct was

12  "rare and beyond common decency" and "motivated by ego and greed").

13       Even if any one of these examples individually does not rise to the level of sanctionable

14  behavior, in their totality—particularly when combined with Greenflight's assertion of a facially

15  invalid patent and objectively meritless infringement allegations—they justify a finding that this

16  case is exceptional and an award of Whitepages' reasonable attorneys' fees.  *Yamanouchi Pharm.*

17  *Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000) (in affirming an

18  exceptional case finding, noting that "the district court must look at the totality of the

19  circumstances" during its assessment); *eDekka LLC*, 2015 WL 9225038 at *4 (baseless validity

20  position combined with unreasonable litigation strategy merited award of fees under totality of

21  circumstances).

22       **E.     The Fees that Whitepages Requests are Reasonable**

23       A district court has discretion to award attorney fees where it finds a case exceptional

24  under Section 285.  *MarcTec*, 664 F.3d at 915.  The Court should exercise its discretion here to

25  award the fees both because Greenflight's substantive litigation position was objectively baseless,

26  and to represent the "*extra* legal effort" Whitepages was forced to expend "to counteract

27  [Greenflight's] misconduct."  *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300,

28  1316 (Fed. Cir. 2012), *vacated and remanded on other grounds*, 134 S. Ct. 1744 (2014) (quoting

1   *Beckman Instruments*, 892 F.2d at 1553) (emphasis in original).

2          Whitepages jointly and severally seeks $219,311.50 in attorneys' fees from Greenflight

3   Venture Corporation and Jeffrey Isaacs for defending against Greenflight's baseless infringement

4   claims, and $199,043.50 in attorneys' fees from Greenflight's counsel, Winston & Strawn, for the

5   same.  Kohm Decl. ¶¶45–64.  The fees accrued by Whitepages' counsel in this patent litigation

6   action are reasonable, and the rates are comparable to those of other firms with significant

7   intellectual property litigation firms in the San Francisco metropolitan area.  *Id.*¶¶ 50–61. In

8   accordance with Federal Rule of Civil Procedure 54(d)(2)(c), Whitepages will, if the Court

9   wishes, submit additional evidentiary support for the reasonableness of the amount and fees

10  claimed after the Court determines liability for the same.

11  **IV.    CONCLUSION**

12         For the foregoing reasons, Whitepages respectfully requests that the Court grant its motion

13  finding this case exceptional and award Whitepages attorneys' fees under 35 U.S.C. § 285 and the

14  inherent power of this Court.

15  Dated:    September 21, 2016            FENWICK & WEST LLP

16

17                                        By: */s/Bryan A. Kohm*
                                              Bryan A. Kohm
18
                                          Attorneys for Plaintiff-Counterdefendant
19                                        Whitepages, Inc.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO