# EXHIBIT 41

```
                                               Pages 1 - 24

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

WHITEPAGES, INC.,              )
                               )
          Plaintiff,           )
                               )
  VS.                          )    NO. CV 16-00175-RS
                               )
JEFFREY ISAACS, ET AL.,        )
                               )
          Defendants.          )
                               )
```

                            San Francisco, California
                            Thursday, July 7, 2016

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

For Plaintiff:
                FENWICK & WEST, LLP
                555 California Street - 12th Floor
                San Francisco, CA  94104
       **BY: BRYAN A. KOHM, ESQUIRE**
            **RAVI RANGANATH, ESQUIRE**

For Defendants:
                WINSTON & STRAWN, LLP
                200 Park Avenue
                New York, NY  10166
       **BY: ALDO A. BADINI, ESQUIRE**
            **CONSTANCE RAMOS, ESQUIRE**
            **JAMES LIN, ESQUIRE**

Reported By:        Pamela A. Batalo, CSR No. 3593, RMR, FCRR
                           Official Reporter

```
 1   Thursday - July 7, 2016                              1:29 p.m.
 2                       P R O C E E D I N G S
 3                             ---oOo---
 4       THE CLERK:  Calling CV 16-175, Whitepages, Inc. vs.
 5   Isaacs, et al.
 6       Counsel, please come forward and state your appearances.
 7       MR. KOHM:  Bryan Kohm, Your Honor, Fenwick & West, for
 8   Whitepages.  I have with my colleague, Ravi Ranganath.
 9       MR. BADINI:  Good afternoon, Your Honor.  Aldo Badini
10   for Greenflight and Jeffery Isaacs, and my colleagues, Connie
11   Ramos and James Lin.
12       THE COURT:  Good afternoon.
13       This matter is on calendar for a motion for judgment on
14   the pleadings by the plaintiff in this case in this dec relief
15   action, and it's involving, what we're seeing more and more a
16   Section 101 argument.
17       The issue, as it is in these cases, is the two-step
18   inquiry on whether or not we've got patentable subject matter,
19   and then in the event, in this instance, that there is an
20   abstract idea identified, whether or not that's, nonetheless,
21   subject to a determination of validity based on the fact that
22   there's an inventive concept involved in this.
23       So I don't have a tentative to provide to you, but I'll
24   just have some questions.  I notice there is something on the
25   screen.  I tend to disfavor, in motion argument, PowerPoints
```

1   the entire -- and both Whitepages and True Software have said,
2   *We don't infringe.  We don't use an SS7 interfacing mode.*  Well
3   if they don't infringe and they don't use the SS7 interfacing
4   mode, where's preemption?
5           **THE COURT:**  If I was to disagree with you on Step 1
6   and determine, contrary to your arguments, that it is an
7   abstract idea, what at Step 2 is the inventive concept?  If you
8   have to fall back on Step 2, what would you identify to me as
9   the inventive concept that the patent presents?
10          **MR. BADINI:**  I would say that the inventive concept is
11  this software bridge that connects one -- this PTSN side to an
12  interface protocol, and nobody had ever built that bridge
13  before this invention.
14      And why is the bridge important?  For the same reasons I
15  told you.  It makes the query carrier independent and device
16  independent.  I would say that's the inventive concept.
17          **THE COURT:**  All right.
18      Mr. Kohm.
19          **MR. KOHM:**  Your Honor, if this patent disclosed a
20  unique bridge, I would agree that it's not subject to 101, but
21  it doesn't.  There is no disclosure here of how --
22          **THE COURT:**  Does the bridge have to be unique for --
23  you're building into that statement the concept that it does
24  have to be, but does it really have to be?  I mean, if -- it
25  gets back to this idea that if you put the pieces together, if

1  the -- the bridge may not be unique, but if nobody before has
2  put all the pieces together, doesn't that give you an inventive
3  concept?
4      **MR. KOHM:**  In this case, no, because it goes back to
5  what I was saying before.  The only combination is this web
6  app.  So the bridge is this web app, the internet interface,
7  which is disclosed as only -- the only disclosure of it is a
8  mobile phone application or a web browser.  The case law is
9  clear that if all you were adding is internet connectivity,
10 that is not an inventive concept.
11     Now, if this patent disclosed a specific mechanism that is
12 used to communicate between the internet and the SS7 query and
13 that there was some particular piece of hardware that they
14 interjected into this, that they added to it that wasn't there
15 before, that might be a different story, but we don't have that
16 here.
17     All we have is the existing SS7 query, and they quote
18 bridge as a web application, and that's all the patent
19 discloses.  It doesn't even disclose what type of web
20 application that would be.
21     **THE COURT:**  Well, how about the -- putting the bridge
22 concept aside, the notion that somehow, as Mr. Badini said,
23 it's now carrier independent and device independent, and that's
24 something new.  How about that?
25     **MR. KOHM:**  One, I just don't think there is any

1  argument.
2  **THE COURT:**  That one, the one from yesterday, was a
3  natural phenomena case.
4  **MR. BADINI:**  Correct.
5  **THE COURT:**  But Step 2 is, nonetheless, the same
6  analytically.
7  **MR. BADINI:**  Correct.
8  **MR. KOHM:**  I will just say on the preemption point,
9  Your Honor, the notion that Greenflight advances in its
10  counterclaim that simply by accessing a CNAM database, you are
11  necessarily practicing the SS7 interface node, I think that
12  actually is locking up the entire ability to access an SS -- I
13  mean, a CNAM database, because they say you meet this
14  limitation if you access a CNAM database.  Final, done.
15      It wasn't about how you access it or the specific
16  mechanism to do it.  They say in their infringement assertions
17  in the counterclaim, if you access it, you necessarily infringe
18  this claim.
19  **THE COURT:**  I take it you agree with the language from
20  my case that counsel read.  Okay.
21      Thank you very much.  I will take the matter under
22  submission and go through the materials again and give you an
23  order.
24  **MR. KOHM:**  Thank you, Your Honor.
25  **MR. BADINI:**  Actually, may I turn to a housekeeping

1  matter, Your Honor, which may or may not have relevance to
2  this.
3       Counsel advised me that some of the assets, I believe --
4  and you'll correct me if I'm wrong -- of the DJ plaintiff may
5  have been transferred to another company, and so we've
6  discussed the issue, and we think the best way to handle this
7  is to do a stipulated new Amended Complaint, or I guess it
8  would be a supplemental Complaint, which we would then respond
9  to, but that may have the effect of altering some of the dates.
10      **THE COURT:**  Well, should decision on this motion await
11 that process so that it's clear that -- I mean, I assume the
12 arguments don't change with respect to this motion once that
13 amendment process is done, so --
14      **MR. BADINI:**  So certainly the arguments will not
15 change, but obviously if there is a new Complaint, we will file
16 a new Answer and counterclaims and we might tinker with some
17 things.
18      **THE COURT:**  Okay.  So what do you want me to do?  Is
19 the request then or suggestion that I should wait for that
20 process and not issue a decision on this until the dust settles
21 and we see, you know, who's who, or should I barrel -- you may
22 get it all done before I issue my order, so I'm not telling you
23 it's imminent, but I just --
24      **MR. BADINI:**  Let me put it this way.  I believe you
25 can rule in our favor without waiting.

1     I don't agree with counsel's characterization of some of
2 the things we said in our Answer and counterclaims.  And to the
3 extent your opinion is relying on any such things in our Answer
4 and counterclaim, those may be changed.
5     **THE COURT:**  So what is your view about the timing?
6     **MR. KOHM:**  The pleadings have closed as to Whitepages.
7 This is the first I heard counsel inform me that they plan on
8 changing their allegations to try to circumvent the 101 motion.
9     **MR. BADINI:**  That's not what I said.
10    **MR. KOHM:**  In light of that, Your Honor, I need to
11 revisit whether amending the Complaint is the right way to do
12 it or whether we want to just bring the party in in other ways.
13 But I think the pleading are closed as to the parties here, and
14 that's all that is required for a judgment on the pleadings.
15    **THE COURT:**  I think you need some closure on this
16 ministerial, if we can characterize it that way, process.
17    **MR. KOHM:**  We can, by, let's say, Tuesday, work out
18 the process that we are going to implement.
19    **THE COURT:**  Okay.  It may be just by natural process
20 that you'll get that all done before I'm issuing the order.
21 Obviously, if you go through this process and one side or the
22 other says oh, there is going to be a fundamental change of
23 some kind, I need to be alerted to that fact because what I
24 don't want to do is make some -- I don't want to have to
25 reinvent the wheel if I make a decision that then I have to go