Aldo A. Badini (SBN: 257086)
abadini@winston.com
James C. Lin (SBN: 271673)
jalin@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, California 94025-4004
Telephone:    (650) 858-6500
Facsimile:     (650) 858-6550

Constance F. Ramos (SBN: 203637)
cframos@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone:    (415) 591-1000
Facsimile:     (415) 591-1400

Attorneys for Defendants
GREENFLIGHT VENTURE CORPORATION
AND JEFFREY ISAACS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WHITEPAGES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GREENFLIGHT VENTURE CORPORATION, a Florida company, JEFFREY ISAACS, an individual,<br><br>Defendants. | **Case No. 3:16-cv-00175-RS**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES** |
| GREENFLIGHT VENTURE CORPORATION, a Florida company, JEFFREY ISAACS, an individual,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>WHITEPAGES, INC., a Delaware corporation,<br><br>Counterclaim-Defendant. | Date:  November 3, 2016<br>Time: 1:30 PM<br>Dept:  Courtroom 3, 17th Floor<br>Judge: Honorable Richard Seeborg |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTS ............................................................................................................... 1

    A.   Greenflight Attempted to Resolve This Dispute Without Court Intervention, Through Apple's IP Dispute Resolution Procedure ........................................ 1

    B.   Whitepages Short-Circuited Apple's IP Dispute Resolution Procedure By Filing Suit First Against Inventor Isaacs, His Wife, And Their Fledgling Startup, Greenflight,  In Federal Court, 3000 Miles and Three Time Zones Away ........................................................................................................... 3

    C.   Whitepages' Counsel Repeatedly Violated California's "No Contact" Rule With Intimidating and Harassing Emails to Greenflight's CEO, Mr. Isaacs ............... 4

    D.   The Parties Entered Into A Partial Settlement Agreement In Early March 2016, Wherein All Parties Agreed To Bear Their Own Fees And Costs ................... 6

    E.   Approximately Two Months Later, Whitepages Divested Its Entire Accused Caller-ID Business To Form A New Company:  Hiya, Inc. .......................................... 7

III. WHITEPAGES IS NOT ENTITLED TO AN AWARD OF FEES ........................................ 8

    A.   Legal Standards ........................................................................................ 8

    B.   Whitepages' Reliance On Pre-Litigation Conduct For Fee-Shifting Is Frivolous ............................................................................................... 10

        1.   Whitepages Waived Any Right to Claim Fees Based Upon Pre-Litigation Conduct When It Signed the March 4, 2016 Settlement Agreement with Greenflight, Mr. Isaacs, And Ms. Petrea ........................... 10

        2.   Mr. Isaacs' Statements To Apple Were Privileged ........................................ 10

        3.   Mr. Isaacs' Statements About The Scope Of Greenflight's Patent Cannot Be Used As A "Fee-Shifting" Weapon Against Defendants ............ 12

        4.   Whitepages Ignores The Rule Of *Dominant Semiconductor*—That A Patent Owner Cannot Be Held Liable For Good Faith Communications Of Its Infringement Allegations ........................................................ 13

    C.   Whitepage's Reliance On Litigation Conduct For Fee-Shifting Is Frivolous ............ 16

        1.   Whitepages, Not Greenflight, Initiated Legal Proceedings ........................... 16

        2.   Whitepages Sued Mr. Isaacs And Ms. Petrea Individually Without Basis ........................................................................................... 17

        3.   Whitepages' Reliance On Statements Made By Mr. Isaacs Is Barred Because Counsel Obtained Those Statements In Violation Of California's "No Contact" Rule ........................................................ 18

1

    4.    Whitepages Agreed To Bear Its Own Fees And Costs In This Dispute ......... 20

2    D.    Greenflight's Allegations and Litigation Conduct Were Not In Bad Faith ............... 21

3    E.    Whitepages Fees Are Unsubstantiated And Therefore Unreasonable ....................... 24

4   IV.    CONCLUSION.................................................................................................................... 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abeles v. State Bar*,
    9 Cal. 3d 603 (1973) ...................................................................................................19

*Action Apartment Ass'n, Inc. v. City of Santa Monica*,
    41 Cal. 4th 1232 (2007) ..............................................................................................11

*Matter of Alexander*,
    No. 11-O-12821, 2014 WL 1778656 (Cal. Bar Ct. Apr. 30, 2014) ............................19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S.Ct. 2347 (2014) ...................................................................................................2

*Bell Howell Document Management v. Altek Sys.*,
    132 F.3d 701 (Fed. Cir. 1997) ....................................................................................12

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .........................................................................................................9

*Cognex Corp. v. Microscan Sys., Inc.*,
    No. 13–2027, 2014 WL 2989975 (S.D.N.Y. June 30, 2014) ........................................8

*Crawford v. City & Cty. of San Francisco*,
    No. C 16-1301 CW, 2016 WL 3418540 (N.D. Cal. June 22, 2016) ............................11

*Dealtrack, Inc. v. Huber*,
    460 F. Supp. 2d 1177 (C.D. Cal. 2006) ......................................................................10

*Dominant Semiconductor Sdn. Bhd. v. OSRAM GmbH*,
    524 F.3d 1254 (Fed. Cir. 2008) ............................................................................13, 14

*eDekka, LLC v. 3balls.com, Inc.*,
    NOS. 2:15-CV-541, 2:15-CV-585 JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17,
    2015) ...............................................................................................................13, 14, 22, 23

*Eisenberg v. Alameda Newspapers, Inc.*,
    74 Cal. App. 4th 1359 (1999) .....................................................................................11

*Falcon v. Long Beach Genetics, Inc.*,
    224 Cal. App. 4th 1263 (2014) ...................................................................................11

*Gametek LLC v. Zynga, Inc.*,
    No. CV 13–2546 RS, 2014 WL 4351414 (N.D. Cal. Sept. 2, 2014) .......................8, 10

*GoDaddy.com LLC v. RPost Communications Limited, et al.*,
  No. CV-14-00126-PHX-JAT, 2016 WL 4569122 (D. Ariz. Aug. 31, 2016) ...............................10

*GP Indus., Inc. v. Eran Indus., Inc.*,
  500 F.3d 1369 (Fed. Cir. 2007)..................................................................................................14

*GPNE Corp. v. Fleematics USA, LLC*,
  No. 13-2049-SLR-SRF, 2015 WL 730046 (D. Del. Feb. 20, 2015)............................................15

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  687 F.3d 1300 (Fed. Cir. 2012), *vacated and remanded on other grounds*, 134
  S.Ct. 1744 (2014) .........................................................................................................................8

*iLOR, LLC v. Google, Inc.*,
  631 F.3d 1372 (Fed. Cir. 2011).....................................................................................................9

*Intellect Wireless, Inc. v. Sharp Corp.*,
  No. 10–6763, 2014 WL 2443871 (N.D. Ill. May 30, 2014) ..........................................................8

*In Re Keegan Management Co., Securities Litigation*,
  78 F.3d 431 (9th Cir. 1996) ..........................................................................................................9

*In re Keegan Mgmt. Co., Sec. Litig.*,
  78 F.3d at 436–37 (only attorneys, and not their law firms, may be sanctioned
  under 28 U.S.C. § 1927) ..............................................................................................................24

*Kirola v. City & Cty. of San Francisco*,
  No. C 07-03685 SBA, at *2 (N.D. Cal. Sept. 7, 2010)................................................................20

*Lerette v. Dean Witter Org.*,
  60 Cal. App. 3d 573 (1976) ........................................................................................................11

*Markman v. Westview*,
  52 F.3d 967 (Fed. Cir. 1995), *aff'd* 515 U.S. 370 (1996) ...........................................................12

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  No. 2015-1080, 2016 WL 4896481 (Fed. Cir. Sept. 13, 2016) ...................................................22

*Minor v. Barnes & Noble Booksellers, Inc.*,
  No. RG09-450216, 2010 WL 5068685 (Cal. Sup. Ct. 2010) ......................................................20

*Monolithic Power v O2 Micro*,
  726 F.3d 1359 (Fed. Cir. 2013)...................................................................................................22

*Newman v. Checkrite Cal., Inc.*,
  912 F. Supp. 1354 (E.D. Cal 1995)..............................................................................................11

*O'Connor v. Uber Techs., Inc.*,
  No. 13-CV-03826-EMC(DMR), 2016 WL 107461 (N.D. Cal. Jan. 11, 2016) ...........................19

*Octane Fitness, LLC v. ICON Health & Fitness*,
    134 S. Ct. 1749 (2014)..................................................................8, 9, 14, 15

*Phonometrics, Inc. v. ITT Sheraton Corp.*,
    64 Fed. Appx. 219 (Fed. Cir. 2003)...........................................................9

*Precision Links Inc. v. USA Products Group, Inc.*
    No. 08–576, 2014 WL 2861759 (W.D.N.C. June 24, 2014)...........................9

*Roton Barrier, Inc. v. Stanley Works*,
    79 F.3d 1112 (Fed. Cir. 1996)..................................................................13

*Skyline Steel, LLC v. PilePro, LLC*,
    101 F. Supp. 3d 394 (S.D.N.Y. 2015).........................................................15

*Snider v. Superior Court*,
    113 Cal. App. 4th 1187 (2003)..................................................................20

*Solomon v. Kimberley-Clark Corp.*,
    216 F.3d 1372 (Fed. Cir. 2000).................................................................13

*U.S. v. Powe*,
    9 F.3d 68 (9th Cir. 1993).........................................................................20

*U.S. v. Sierra Pac. Indus.*,
    857 F. Supp. 2d 975 (E.D. Cal. 2011).........................................................20

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015)......................................................12

*United States v. Lopez*,
    4 F.3d 1455 (9th Cir. 1993).....................................................................19

*United States v. Stoneberger*,
    805 F.2d 1391 (9th Cir. 1986)...................................................................9

*United States v. Talao*,
    No. CR-97-0217-VRW, 1998 WL 1114043 (N.D. Cal. Aug. 14, 1998), *vacated in*
    *part on other grounds*, No. CR-97-0217-VRW, 1998 WL 1114044 (N.D. Cal.
    Oct. 1, 1998)........................................................................................19

*Visto Corp. v. Sproqit Technology*,
    360 F. Supp. 2d 1064 (N.D. Cal. 2005)................................................10, 11

*Voice Techs. Group, Inc. v. VMC Sys., Inc.*,
    164 F.3d 605 (Fed. Cir. 1999)..................................................................13

*Yagman v. Republic Ins.*,
    987 F.2d 622 (9th Cir. 1993).....................................................................9

*Zambrano v. City of Tustin,*
    885 F.2d 1473 (9th Cir. 1989) .......................................................................................... 9

**Statutes**

35 U.S.C. § 101 ...................................................................................................... *passim*

35 U.S.C. § 282 ....................................................................................................... 2, 21

35 U.S.C. § 285 ...................................................................................................... *passim*

28 USC § 1927 ................................................................................................................ 24

Cal. Code. Civ. Proc. § 425.16 .................................................................................... 12

## I.      INTRODUCTION

Whitepages' motion for attorneys' fees is frivolous.   It was *Whitepages, not Greenflight,* who initiated this litigation, prematurely terminating the Apple IP Dispute Resolution Procedure which the parties had agreed to follow.  It was Whitepages who personally threatened to sue, and ultimately did sue Greenflight's CEO, Jeffrey Isaacs, and his wife on baseless tort claims that were only dismissed pursuant to a Settlement Agreement (where each side agreed to bear its own fees and costs), on the condition that Greenflight not contest venue in this Court, notwithstanding Greenflight's location in Florida.

While Whitepages now asserts that the patent is "facially invalid" it *never brought a declaratory judgment of invalidity in this action, nor did it ever question the validity of the patent prior to this litigation.* While Whitepages asserts that Greenflight's accusations of infringement are also sanctionable, it does not explain how that position can be squared with its position in its §101 motion that the patent at issue covers the waterfront.

And while Whitepages relies extensively on personal discussions between its counsel, Mr. Kohm, and Greenflight's CEO, Mr. Isaacs, it does not inform the Court that some of those discussions were in direct violation of California's Rules of Professional Ethics, which proscribe communications between an attorney and a party known to be represented by counsel.  Nor does it inform the Court of the leading Federal Circuit case governing the treatment of accusations of infringement, *Dominant Semiconductor,* notwithstanding the fact that counsel for Greenflight expressly advised Whitepages of this governing authority during the meet and confer held in connection with this motion on September 16, 2016.

This motion should never have been brought.  It should be denied outright, and Greenflight should be awarded its fees and costs in responding to it.

## II.     FACTS

### A.      Greenflight Attempted to Resolve This Dispute Without Court Intervention, Through Apple's IP Dispute Resolution Procedure

Greenflight is a small startup company based in Florida and founded by Jeffrey Isaacs, its CEO, based on technology he invented in 2013 and patented in 2014 under U.S. Patent No. 8,861,698 (the "'698 patent").  Isaacs Decl., ¶¶ 1, 3, 6, 7.  Mr. Isaacs is the sole inventor of a system

1    and method for identifying names associated with telephone numbers *independent of the telephone*

2    *carriers*.  He filed for a United States patent on his invention in February 2014, and prosecuted his

3    patent *pro se.  Id.*,¶¶ 7-9.  The prosecution history for the '698 patent shows that the claims were

4    initially rejected as drawn to unpatentable subject matter under 35 U.S.C. § 101, that Mr. Isaacs

5    successfully overcame that rejection, and that the claims were subsequently amended *after* the

6    Supreme Court's June 2014 decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347

7    (2014) with the assistance of the patent examiner, leading to issuance of the patent in October 2014.

8    *See id.,* ¶¶ 9-20 (discussing *pro se* prosecution of the '698 patent, including these events).

9         Prior to this litigation, Mr. Isaacs never had any reason to believe that the '698 patent could

10   be invalid.  *Id.*, ¶¶ 22-23.  Indeed, the patent statute affords a patentee a statutory presumption of

11   validity under 35 U.S.C. § 282 ("A patent shall be presumed valid.").  Mr. Isaacs understood and

12   believed that the United States patent office had properly and thoroughly examined his claims and

13   issued the '698 patent for at least all of the reasons set forth in the "Notice of Allowability."   *Id.*

14        In 2014, Mr. Isaacs founded Greenflight to exploit the '698 patent by offering a mobile

15   phone application and web-based Caller-ID system based upon his invention.  *Id.*, ¶¶ 7-8, 24.

16   Exploitation of the '698 patent is Greenflight's sole source of annual revenues.  *Id.*, ¶ 8.[1]

17        This dispute arose in August 2015 when Mr. Isaacs discovered that a competitor business—

18   Whitepages, Inc.—was offering through the Apple iTunes App Store what he believed to be an

19   infringing mobile phone application.  *Id.*,¶ 25.  Because Greenflight's entire business model was

20   premised on the protection of Mr. Isaacs' invention by a United States patent grant, the company

21   decided to commence Apple's intellectual property dispute resolution procedure for mobile

22   application developers (the "Apple IP Dispute Resolution Procedure"), which is posted on Apple's

23   App Store developers' website, and which applies to all vendors offering products through the App

24   Store, including Whitepages.  *Id.*, ¶ 26.

25        The Apple IP Dispute Resolution Procedure—agreed to by both Whitepages and

26   Greenflight—requires each mobile application developer to keep its contact information up to date,

27

28   ───────────────
[1] Whitepages' annual revenues in 2015 were reported to Forbes magazine as $70 million.  Isaacs
Decl., ¶ 56.

1    so that Apple can pass it along if there is an IP dispute.   Isaacs Decl., ¶¶ 26-27 (describing the App

2    Store dispute resolution procedure for IP disputes).  Under that procedure, Apple may, as it did in this

3    case, request that a party accused of infringement provide documentation demonstrating that there is

4    in fact no such IP violation.  As set forth below, there is no evidence that Whitepages ever did so.

5         Greenflight made numerous attempts to avoid having to seek redress from the federal judicial

6    system by instead seeking to resolve this patent infringement dispute through Apple's IP Dispute

7    Resolution Procedure).  Isaacs Decl., ¶¶ 26-42, Ex. L (emails relating to communications under

8    Apple's IP Dispute Resolution Procedure).  In response, rather than engage in good faith dispute

9    resolution discussions, Whitepages instead threatened personal tort claims against Mr. Isaacs and his

10   wife, Ianina Petrea, if Greenflight did not withdraw its complaint to Apple.  Doc. 64-14 ("In addition

11   to Greenflight's liability, your and Ms. Petrea's personal involvement in this conduct renders both of

12   you personally liable for these tortious acts.").  In addition, although Apple entreated Whitepages to

13   produce evidence of non-infringement,[2]  Whitepages  and instead declined to communicate its non-

14   infringement position to either Apple or Greenflight in any meaningful manner.  *See* Docs. 64-2

15   (Kohm response to Apple) and 64-15 (Isaacs email: "Please be reminded that [] direct discussions

16   [are] required by Apple's terms and conditions, and to date your client has refused to speak to us and

17   has refused to produce any evidence that the patent is not infringed.  As you know, patents are

18   presumed valid and we have given Whitepages 4 months to respond with evidence supporting their

19   belief.").

20        **B.    Whitepages Short-Circuited Apple's IP Dispute Resolution Procedure By Filing
21              Suit First Against Inventor Isaacs, His Wife, And Their Fledgling Startup,
                Greenflight,  In Federal Court, 3000 Miles and Three Time Zones Away**

22        On January 11, 2016, Whitepages filed the present lawsuit, alleging a variety of California

23   state tort claims (trade libel, libel, and unfair competition) against Mr. Isaacs and Ms. Petrea, and

24   seeking a declaratory judgment of non-infringement of the '698 patent against Greenflight and Mr.

25

26   ───────────────
     [2] *See* Kohm Decl., Ex. 1 (8/22/15 email from Apple Legal to Whitepages:  "We look forward to
     receiving written assurance that your application does not infringe Complainant's [Greenflight's]
27   rights, or that the parties are taking steps to promptly resolve the matter.  Please keep us apprised of
     your progress.  […]  Written assurance of rights may include confirmation that your application does
28   not infringe Complainant's rights, an express authorization from Complainant, or other evidence
     acceptable to Apple, *and should include documentation wherever possible.*") (emphasis added).

1    Isaacs.  Doc. 1.  ***No claim for declaratory judgment of invalidity was pled, nor was any question of***

2    ***invalidity or unpatentable subject matter ever raised in Whitepages' pre-litigation***

3    ***communications with Mr. Isaacs.***  *Id.*; Isaacs Decl., ¶ 44.  *See also id.* ¶¶ 3-5 (Greenflight, Mr.

4    Isaacs, and Ms. Petrea had no California presence).

5        On January 14, 2016, Mr. Isaacs assigned rights and interests in the '698 patent to

6    Greenflight.  Ramos Decl., Ex. 1 ('698 patent file wrapper) at 116-118 (assignment).  Greenflight,

7    having no business in California, then filed a second-filed patent infringement lawsuit in Florida (its

8    state of incorporation and principal place of business), through its counsel, Fox Rothschild LLP,

9    against Whitepages, its founder and CEO, Alex Algard, and another entity.  Doc. 64-18.

10       **C.    Whitepages' Counsel Repeatedly Violated California's "No Contact" Rule With
            Intimidating and Harassing Emails to Greenflight's CEO, Mr. Isaacs**

11       No later than January 15, 2016, Whitepages' California counsel, Bryan Kohm, became aware

12   that David Greene, an attorney at Fox Rothschild LLP, represented at least Greenflight with respect

13   to the '698 patent dispute.  Mr. Kohm wrote: "I learned today that you represent Greenflight Venture

14   Corporation [] ***with respect to its claims of infringement against Whitepages.")***  *See* Doc. 64-19

15   (1/15/16 email (emphasis added)).  Despite this knowledge of the representation, four days later, on

16   January 19, 2016, Mr. Kohm made direct contact with Greenflight's CEO, Mr. Isaacs (who is not an

17   attorney), asking Mr. Isaacs whether Mr. Kohm could communicate directly with him regarding the

18   '698 patent dispute.  Doc. 64-20 (1/19/16 email; Kohm: "As I understand your email below, Mr.

19   Greene does not represent Greenlight or you with respect to Whitepages' California action and you

20   desire to communicate directly with me regarding that matter.  Please confirm that my understanding

21   is correct and I will follow up with you.").  At that point in time, the '698 patent dispute was pending

22   in two federal courts—the Northern District of California and the Southern District of Florida—and

23   involved numerous parties (three companies and three individuals) and claims, including patent

24   infringement, a declaratory judgment of noninfringement, trade libel, libel, and unfair competition

25   under California law.

26       Mr. Isaacs responded later that day on behalf of Greenflight that his company was, indeed,

27   represented by counsel in the '698 patent infringement dispute.  Doc. 64-22 (1/19/16 email; Isaacs:

28   "To reiterate, as of now Greenflight handles Apple communications directly; we have retained

4

1    counsel only for a patent infringement case filed in SDFL.").  Nonetheless, Mr. Kohm persisted in

2    his direct communications with Mr. Isaacs regarding the parties' '698 patent infringement dispute,

3    without express permission from Fox Rothschild LLP.

4         For example, five days after Mr. Kohm acknowledged Fox Rothschild as Greenflight's

5    counsel, he wrote in an email directly to Mr. Isaacs:

6         Jeffrey,

7         As you know, this matter is now the subject of an action pending before the United States
     District Court for the Northern District of California ("the district court action").  Any and all
8         matters concerning this dispute, including the requested discovery below, should
     proceed according the procedures of that Court.
9

10   Doc. 64-23 at 2 (1/20/16 email from Kohm to Isaacs).

11        Greenflight's response reaffirmed that it was represented by counsel and offered to negotiate

12   a license:

13        Please see our attached letter to Apple. ***We have reviewed your claims and discussed***
     ***them with [multiple] law firms***.  We have good faith belief in our infringement claims.
14        […]  We have offered to show documentation of sample contracts.  On the other hand,
     your client has refused to produce evidence pursuant to Apple's App Review
15        Guidelines and iOS Developer Rules & Regulations.

16        We continue to rely upon the high standards Apple sets for the App Store. We await
     your production of evidence acceptable to Apple of non-infringement. […] [¶] We
17        await your client's evidence, documentation, and willingness to meet and confer.

18   Doc. 64-25 (1/21/16 email from Isaacs to Kohm) (emphasis added.)

19        Notwithstanding these repeated confirmations that Greenflight was represented by counsel,

20   ***and having received no express permission from David Greene, or any other attorney at Fox***

21   ***Rothschild LLP, allowing direct communications with Greenflight's CEO***, Mr. Kohm continued to

22   complain directly to Mr. Isaacs about Greenflight's use of Apple's IP Dispute Resolution Procedure,

23   threatening to pursue libel and unfair competition claims against Mr. Isaacs and his wife personally,

24   and to seek an injunction against them:

25        Jeffrey,

26        You have not complied with the spirit of my January 11th letter.  In that letter,
     Whitepages offered to dismiss the California action if "you provide notice to
     Apple…that Greenflight has withdrawn its claim against Whitepages…and covenants
27        to not again assert its meritless claims against Whitepages."  You have done neither. In
     fact, your letter to Apple yesterday does precisely the opposite.  You again suggest that
28        Whitepages infringes the '698 patent and ask that Apple remove the Whitepages ID app
     from the App Store.  Your unlawful conduct has caused Whitepages significant harm,

5

and it will proceed with its claims against you, Ms. Petrea and Greenflight to recover its damages and to obtain a court injunction barring this unlawful conduct from continuing.

Doc. 64-27 at 2 (1/22/16 Kohm email to Greenflight).[3]  Ultimately, Mr. Isaacs directed Mr. Kohm to "cease and desist" communicating with him (Doc. 64-28), which Mr. Kohm ignored the next day:

> Jeffrey,
>
> As my letter of January 11 states, ***Whitepages demands that you and Greenflight advise Apple that you have withdrawn your claim and covenant not to assert those claims again in the future.***  Whitepages is not asking you to state that the patent doesn't exist—only that you have withdrawn your claims.  If you and Greenflight would like to accept Whitepages' offer, I will prepare a covenant for you and Greenflight to sign covenanting not assert infringement of the '698 patent against Whitepages.

Doc. 64-29 at 2 (emphasis added).

### D. The Parties Entered Into A Partial Settlement Agreement In Early March 2016, Wherein All Parties Agreed To Bear Their Own Fees And Costs

With dueling actions in California and Florida relating to the same infringement allegations, the parties engaged in discussions which resulted in the execution of a March 4, 2016 partial Settlement Agreement.  Doc. 64-40.  Whitepages agreed to dismiss its state tort claims against Mr. Isaacs, his wife, and Greenflight, and Greenflight agreed to dismiss its Florida action and to litigate the '698 patent infringement dispute in California against Whitepages alone.  *Id.*  The Recitals of the Settlement Agreement make it clear that there was ***one dispute between the parties***—that involving whether or not Whitepages infringes Greenflight's '698 patent:

> WHEREAS Whitepages sued Greenflight and Isaacs for a declaratory judgment of noninfringement of U.S. Patent No. 8,861,698 and sued Greenflight, Isaacs and Petrea for libel (second cause of action), trade libel (third cause of action), and unfair competition (fourth cause of action) (the second, third, and fourth causes of action are collectively the "Trade Libel Claims"), in the Northern District of California, Case No. 3: 16-cv-00175-RS ("the California Action");
>
> WHEREAS Greenflight sued Whitepages and Alex Algard for patent infringement of U.S. Patent No. 8,861,698 in the Southern District of Florida, Case No. 9: 1 6-cv-80079 ("the Florida Action");
>
> WHEREAS the Parties wish to streamline the litigations to more efficiently address the issues between them…

*See id.* at 2 (Recitals).  This is fully consistent with Mr. Kohm's email to Fox Rothschild describing

---

[3] This threatening and intimidating email by Mr. Kohm baited CEO Isaacs into making the "racketeering" statement on which Whitepages motion now seeks to rely—*see* Doc. 64-27.

6

1    his understanding of the subject matter of the representation as Greenflight's "claims of infringement

2    against Whitepages."

3          The very first substantive paragraph of the Settlement Agreement also provides:  "The

4    Parties will enter a stipulation of dismissal in the Florida Action, dismissing Whitepages and Alex

5    Algard without prejudice, and such stipulation shall be filed no later than March 4, 2016, *with each*

6    *party to bear its own costs and fees.*"  *Id.*  Greenflight fulfilled its obligation under this provision.

7    Ramos Decl., Ex. 2 (stipulation dismissing Florida action).  Pursuant to the Settlement Agreement,

8    Whitepages then amended its complaint on March 9, 2016 to drop its tort claims and include only

9    one cause of action:  declaratory judgment of noninfringement of the '698 patent.  Doc. 17.

10         As with its original complaint, Whitepages' amended complaint failed to plead that the '698

11   patent was facially invalid as unpatentable subject matter—a claim it now makes in its pending

12   motion for fees.  Mot. at 19, 26; *see also* Doc. 17.  It also failed to plead a declaratory judgment

13   cause of action relating to the validity of the patent.  *Id.*  Its prayer for relief also failed to seek a

14   declaratory judgment that the '698 patent is invalid.  *Id.* at 5.  In fact, the word "invalid" appears

15   nowhere in Whitepages' amended complaint.  *The argument that the '698 patent is "facially*

16   *invalid" was made for the very first time in the present motion for fees*.

17       **E.**    **Approximately Two Months Later, Whitepages Divested Its Entire Accused**
           **Caller-ID Business To Form A New Company:  Hiya, Inc.**

18         In or about early May 2016, counsel for Whitepages asserted that Whitepages had spun-out

19   its Caller-ID business unit (which produced the accused infringing products) into Hiya.  Doc. 64-41

20   at 2 (5/1/1 email from Kohm to Greenflight's counsel).  When Hiya's caller-ID product became

21   available on the Apple iTunes Store ("HIYA Caller ID and Block"), Mr. Isaacs evaluated its features

22   and concluded that it was likely the same as (or substantially similar to) Whitepages' formerly

23   accused mobile application, and therefore likely infringed the '698 patent.  Isaacs Decl., ¶ 52.

24   Indeed, as part of the spinoff, Hiya announced plans to operate with at least 40 of the 160 employees

25   at Whitepages, the majority of whom appear to be engineers.  Ramos Decl., Ex. 3.  A former

26   engineer at Whitepages who worked on its accused infringing "ID by Whitepages" product, Jeff

27   Thompson, was later employed by Hiya as its technical lead in "Caller Id."  *Id.*, Ex. 4 (Thompson

28   LinkedIn profile).  According to Mr. Thompson's LinkedIn profile, Hiya is "formerly the Caller-Id

7

1   and Spam divisions of Whitepages." *Id.*

2       In light of those changed circumstances, Mr. Isaacs re-contacted Apple under the Apple IP

3   Dispute Resolution Procedure in order to alert Apple Legal of this new entity—Hiya, Inc.—which  it

4   believed was infringing its duly issued '698 patent.  Doc. 64-41 at 3.  Hiya was not a party to the

5   March 2016 Settlement Agreement, nor subject to any of its terms.  Doc. 64-40.

6   **III.     WHITEPAGES IS NOT ENTITLED TO AN AWARD OF FEES**

7           **A.     Legal Standards**

8       Fee-shifting in a patent litigation case is expressly reserved for "exceptional" cases.  35

9   U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing

10  party").  But an "exceptional" case must be "one that stands out from others with respect to 'the

11  substantive strength of a party's litigating position (considering both the governing law and the facts

12  of the case)'" or "the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v.*

13  *ICON Health & Fitness*, 134 S. Ct. 1749, 1756 (2014) (internal citations omitted).

14      "The purpose of section 285, unlike that of Rule 11, is not to control the local bar's litigation

15  practices . . . but is remedial and for the purpose of compensating the prevailing party for the costs it

16  incurred in the prosecution or defense of a case where it would be grossly unjust, based on the

17  baselessness of the suit or because of litigation or Patent Office misconduct, to require it to bear its

18  own costs."  *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc*., 687 F.3d 1300, 1310 n. 1 (Fed. Cir.

19  2012), *vacated and remanded on other grounds*, 134 S.Ct. 1744 (2014); *see Octane*, 134 S.Ct. at

20  1756-57 ("sanctionable conduct is not the appropriate benchmark"); *see also Gametek LLC v. Zynga,*

21  *Inc*., No. CV 13–2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (order denying

22  defendants' motion for attorneys' fees) (J. Seeborg).  "Although *Octane* eased the standard for fee-

23  shifting, and clearly reduced the prevailing party's burden from clear and convincing to a

24  preponderance of the evidence, post-*Octane* decisions awarding fees have concerned egregious

25  behavior."  *Id.,* (citing *Intellect Wireless, Inc. v. Sharp Corp*., No. 10–6763, 2014 WL 2443871, at

26  *6 (N.D. Ill. May 30, 2014) (awarding fees based on false declarations before the PTO, without

27  which, the court concluded, the plaintiff would not have obtained the patents at issue)); *see also*

28  *Cognex Corp. v. Microscan Sys., Inc*., No. 13–2027, 2014 WL 2989975, at *4 (S.D.N.Y. June 30,

8

2014) (criticizing plaintiff for post-trial motions that simply sought to re-litigate issues decided during trial and awarding fees at least as to those motions); *Precision Links Inc. v. USA Products Group, Inc.* No. 08–576, 2014 WL 2861759 at *3 (W.D.N.C. June 24, 2014) (criticizing plaintiff for seeking a preliminary injunction based in large part on a previously-rejected theory of liability and filing frivolous post-dismissal motions).  Further, unlike other sanctions, sanctions under § 285 may not be assessed against counsel—only against a party.  *Phonometrics, Inc. v. ITT Sheraton Corp.*, 64 Fed. Appx. 219, 222 (Fed. Cir. 2003).

Sanctions against attorneys may be sought under the court's inherent power.  Yet, an award of attorneys' fees under the court's "inherent power" is reserved for only three "narrowly defined circumstances." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).  <u>First</u>, under the "common fund exception," the Court may award attorneys' fees "to a party whose litigation efforts directly benefit others." *Id.* (citation omitted).  <u>Second</u>, the Court may impose attorneys' fees as a sanction for "'willful disobedience of a court order.'" *Id.* (quoting *Alyeska Pipeline Serv.*, 421 U.S. at 258).  <u>Third</u>, the Court may assess attorneys' fees as a sanction "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . .'" *Octane Fitness*, 134 S. Ct. at 1758 (quoting *Alyeska Pipeline Serv.*, 421 U.S. at 258–59).  "In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order[.]" *Chambers*, 501 U.S. at 46 (internal citations and quotations omitted); *see also iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011) ("a court can invoke its inherent power to award such fees [not allowed under 35 U.S.C. § 285] in exceptional cases based upon a finding of bad faith").

In sanctioning counsel, "Courts may not invoke [inherent] powers without a specific finding of bad faith." *In Re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 436 (9th Cir. 1996) (internal quotations omitted (citing *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993)); *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986) (same); *see also Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989) ("To insure that restraint is properly exercised, we have routinely insisted upon a finding of bad faith before sanctions may be imposed

1    under the court's inherent power.").  Not surprisingly, with such high standards, requests for fee

2    awards in patent cases under *Octane* and the court's inherent powers are commonly denied.  *See,*

3    *e.g., Vasudevan Software, Inc., Microstrategy, Inc.*, No. 11-cv-06637-RS, 2015 WL 4940635 (N.D.

4    Cal. Aug. 19, 2015); *Gametek LLC v. Zynga, Inc.*, No. CV 13–2546 RS, 2014 WL 4351414 (N.D.

5    Cal. Sept. 2, 2014); *GoDaddy.com LLC v. RPost Communications Limited, et al.*, No. CV-14-00126-

6    PHX-JAT, 2016 WL 4569122 (D. Ariz. Aug. 31, 2016).

7         **B.    Whitepages' Reliance On Pre-Litigation Conduct For Fee-Shifting Is Frivolous**

8              **1.    Whitepages Waived Any Right to Claim Fees Based Upon Pre-Litigation**
                       **Conduct When It Signed the March 4, 2016 Settlement Agreement with**
9                      **Greenflight, Mr. Isaacs, And Ms. Petrea**

10        As described above, the March 4 partial Settlement Agreement included Whitepages'

11   agreement to bear its attorneys' fees and costs incurred in connection with Greenflight's filing and

12   pendency of its Florida cause of action, which inherently included, *inter alia*, all pre-litigation

13   activities.  Greenflight only filed its Florida complaint for patent infringement because Whitepages

14   had already filed a declaratory judgment action in California—where none of the defendants

15   resided—short-circuiting Apple's IP Dispute Resolution Procedure that Greenflight had initiated in

16   good faith.  Greenflight lived up to its end of the bargain in the Settlement Agreement by not

17   challenging personal jurisdiction or venue over it in this action.  By contrast, Whitepages' argument

18   that it is not bound by its agreement to absorb its own fees because Greenflight "breached" the

19   Settlement Agreement when it contacted Apple regarding Hiya is meritless.  Hiya was a brand new

20   entity and not a party to the Settlement Agreement, nor the beneficiary of any of its terms.

21             **2.    Mr. Isaacs' Statements To Apple Were Privileged**

22        Whitepages also has no legitimate complaint that Greenflight (through Mr. Isaacs and/or Ms.

23   Petrea) behaved improperly—let alone to the point of warranting fee-shifting—in its

24   communications with Apple or Whitepages' counsel.  Those communications were privileged.  *See*

25   *Dealtrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1181 (C.D. Cal. 2006) (striking libel claim in patent

26   dispute because of litigation privilege); *Visto Corp. v. Sproqit Technology*, 360 F. Supp. 2d 1064,

27   1069 (N.D. Cal. 2005) (applying litigation privilege to counterclaims for interference with

28   prospective economic advantage and defamation in patent dispute).

In California, the litigation privilege "applies to any communication (1) made in a judicial or quasi-judicial proceeding, (2) by litigants or other participants authorized by law, in or out of court, (3) to achieve the objects of litigation, (4) and which has some connection or logical relation to the action." *Visto Corp.*, 360 F. Supp. 2d at 1068.  It also routinely applies to pre-litigation communications.  *Id.* (citing *Lerette v. Dean Witter Org.*, 60 Cal. App. 3d 573, 575, 577-578 (1976) (holding that a defendant's demand letter informing plaintiff that unless settlement was reached, defendant planned to sue plaintiff, was fully privileged)).  The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (citations and internal quotation marks omitted); *Crawford v. City & Cty. of San Francisco*, No. C 16-1301 CW, 2016 WL 3418540, at *6 (N.D. Cal. June 22, 2016).  "[J]udicial or quasi-judicial proceedings" are "defined broadly to include all kinds of truth-seeking proceedings, including administrative, legislative and other official proceedings." *Falcon v. Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1271–73 (2014) (internal quotations omitted).  For the privilege to apply, the communication must be in furtherance of the objects of the proceeding, or have some logical relation to, the proceeding, and not be extraneous to the proceeding.  *Id.* (internal quotations omitted).  Thus, Greenflight's pre-litigation (and post-litigation) communications under Apple's IP Dispute Resolution Procedure were protected by this privilege and cannot be the basis for any fee-shifting.

Greenflight approached Whitepages in good faith using Apple's IP Dispute Resolution Procedure, while contemplating potential patent litigation, and in response to actual litigation after Whitepages hurled this matter into federal court.  Isaacs Decl., ¶¶ 25-38. Greenflight's  letters to seek a license from Whitepages (*id.,* Ex. L) were protected.  *See Newman v. Checkrite Cal., Inc.,* 912 F. Supp. 1354, 1374 (E.D. Cal 1995); *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1379-80 (1999) (holding that the threat of litigation does not invoke the privilege, but good faith contemplation of an imminent, impending resort to the judicial system does).  In fact, Greenflight's communications to both Apple and Whitepages initiated a proceeding to which Whitepages had expressly consented to when it chose to offer its accused infringing product on the App Store.  Isaacs Decl., Ex. J (iOS Developer Program License Agreement) at 46.  Greenflight

1    hoped to protect its business and resolve this dispute *outside of formal litigation* through a licensing

2    arrangement with Whitepages.  *Id.*, ¶¶ 25-30.  Whitepages, however, never meaningfully responded

3    to Apple's or Greenflight's reasonable requests for evidence of non-infringement.  Isaacs Decl., ¶

4    49.[4]

              **3.     Mr. Isaacs' Statements About The Scope Of Greenflight's Patent Cannot**

5                      **Be Used As A "Fee-Shifting" Weapon Against Defendants**

6              Mr. Isaac's statements as to the scope of his own invention and the '698 patent were

7    qualified by the fact that he is not a lawyer (much less a patent lawyer skilled in claim

8    interpretation), of which Whitepages' counsel, Bryan Kohm, was keenly aware:  On December 17,

9    2015, Mr. Isaacs informed Mr. Kohm, "Just as a disclaimer obviously the language of the patent

10   takes precedence over my own annotations and explanations made during the course of

11   correspondence with you and your client … so [communications] should only be viewed as a

12   courtesy to facilitate dialogue and not a binding narrowing (or expansion) of claims."  Doc. 64-12

13   (12/17/15 email from Isaacs to Kohm).  Whitepage's motion, however, entirely ignores this caveat

14   and seeks to take advantage of statements made by a non-lawyer to Whitepages' counsel.  Apart

15   from the violation of the California ethics rules, Whitepages' reliance on Mr. Isaacs' pre-litigation

16   statements relating to the nature of his invention ignores black letter law that an inventor's

17   characterization of the scope of his patent claims is entitled to little or no weight.  *Markman v.*

18   *Westview*, 52 F.3d 967, 985 (Fed. Cir. 1995), *aff'd* 515 U.S. 370 (1996) (holding that inventor

19   testimony as to "[t]he subjective intent of the inventor when he used a particular term is of little or

20   no probative weight in determining the scope of a claim (except as documented in the prosecution

21   history).").  "[I]t is not unusual for there to be a significant difference between what an inventor

22   thinks his patented invention is and what the ultimate scope of the claims is after allowance by the

23   PTO."  *Id.  See also Bell Howell Document Management v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir.

24   1997) ("The testimony of an inventor and his attorney concerning claim construction is [] entitled to

25   little or no consideration.  The testimony of an inventor is often a self-serving, after-the-fact attempt

26

27   ――――――――――――――――
     [4] A number of cases address the overlap between California's anti-SLAPP statute, Cal. Code. Civ.
     Proc. § 425.16, and the litigation privilege, considering the scope of the privilege based on
28   overlapping policy justifications underlying both.  *See e.g. UMG Recordings, Inc. v. Glob. Eagle*
     *Entm't, Inc.*, 117 F. Supp. 3d 1092, 1114–15 (C.D. Cal. 2015).

to state what should have been part of his or her patent application […]"); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996) ("We have previously stated that an inventor's after-the-fact testimony is of little weight compared to the clear import of the patent disclosure itself.") (internal quotation marks omitted); *Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615-16 (Fed. Cir. 1999) (noting that "the inventor cannot by later testimony change the invention and the claims from their meaning at the time the patent was drafted and granted"); *Solomon v. Kimberley-Clark Corp.*,  216 F.3d 1372, 1380 (Fed. Cir. 2000) (holding inventor's testimony cannot be used to invalidate patent under 112 ¶ 2, because claims must be viewed objectively, and inventor testimony is given little weight when construing patent claims).  The argument that because Mr. Isaacs vacillated about the scope of his patent protection, he must surely have been acting egregiously, is therefore unfounded and frivolous.

### 4. Whitepages Ignores The Rule Of *Dominant Semiconductor*—That A Patent Owner Cannot Be Held Liable For Good Faith Communications Of Its Infringement Allegations

Counsel for Greenflight told the two Fenwick associate attorneys on the "meet and confer" for the present motion—neither of whom were lead counsel—that any fee shifting argument based on pre-litigation infringement allegations was barred by the *Dominant Semiconductor* case.  Ramos Decl., ¶¶ 5-9.[5]  In response, the Fenwick attorneys indicated that they were not familiar with the decision, notwithstanding the fact that one of the cases Whitepages was said to be relying upon, *eDekka*, cited *Dominant* with approval.[6]  Greenflight's counsel subsequently communicated with lead counsel (Mr. Kohm) about the decision.  Ramos Decl., Exs. 5, 6 (email exchanges re *Dominant*).  Whitepages' fees motion never even cites *Dominant,* much less attempts to distinguish it, notwithstanding the pre-filing notice that was provided.

While Whitepages heavily relies upon the argument that Greenflight's statements to Apple and its pre-litigation statements to Whitepages' counsel were tortious, federal patent law preempts state tort liability when a patentee in good faith communicates allegations of infringement. *Dominant Semiconductor Sdn. Bhd. v. OSRAM GmbH,* 524 F.3d 1254, 1260 (Fed. Cir. 2008)

---

[5] Whitepages' lead counsel and signatory on this motion, Bryan Kohm, did not attend the meeting.

[6] *See eDekka, LLC v. 3balls.com, Inc.*, NOS. 2:15-CV-541, 2:15-CV-585 JRG, 2015 WL 9225038, *3, (E.D. Tex. Dec. 17, 2015).

1   ("federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless

2   the plaintiff can show that the patent holder acted in bad faith.") (citations omitted).  *Dominant*

3   establishes that a showing of bad faith is required to establish liability when allegations of patent

4   infringement are involved, even if bad faith is not otherwise an element of the tort claim.  *Id.*  Bad

5   faith cannot be shown unless there is both objective baselessness and subjective bad faith.  *Id.*  To be

6   objectively baseless, the infringement allegations must be such that "no reasonable litigant could

7   reasonably expect success on the merits."  *Id.* (quoting *GP Indus., Inc. v. Eran Indus., Inc.,* 500 F.3d

8   1369, 1374 (Fed. Cir. 2007).

9        The *Dominant* decision and the high standard for bad faith makes good public policy sense:

10   courts do not want to prevent claims of infringement from being made because the patent holder is

11   concerned about blowback litigation.  This was first recognized in *Prof'l Real Estate Investors, Inc.*

12   *v. Columbia Pictures Indus., Inc.*, where the court stated "an objectively reasonable effort to litigate

13   cannot be a sham regardless of subjective intent."  508 U.S. 49 (1993) at 57.

14        *Dominant* also recognized the objective baselessness bad faith standard should be equally

15   applied to pre-litigation communications. 524 F.3d at 1260 n. 5 (where plaintiff sought a declaratory

16   judgment of non-infringement and alleged various state-law tort claims against a defendant for

17   communicating infringement allegations to its own distributors and contractors, the bad faith

18   standard could not be satisfied because the plaintiff could not show that the defendant's assertions

19   were objectively baseless).  Thus, from pre-litigation communication through the end of the dispute,

20   a showing of both objective and subjective baselessness is required in order to find bad faith and

21   punish the patentee for communicating its rights.  *Id.* at 1260; *see also G.P. Indus.*, 500 F.3d at 1373.

22        Whitepages completely ignores *Dominant*.   Instead, Whitepages attempts to rely entirely on

23   the recent Supreme Court decision in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct.

24   1749 (2014).[7]  In *Octane Fitness*, the Supreme Court held a case is exceptional under 35 U.S.C. §

25   285  considering (1) "the substantive strength of a party's litigating position (considering both the

26

27   _____

28   [7] Whitepages does cite a case that relied on *Dominant* post-*Octane Fitness,* further demonstrating
     that the principle survives *Octane Fitness.  See eDekka*, 2015 WL 9225038 at *3 (citing the
     objectively baseless standard from *Dominant*).

14

1    governing law and facts of the case)" or (2) "the unreasonable manner in which the case was

2    litigated." *Id.* at 1756.

3           But *Octane Fitness* does not overrule *Dominant* or remove the objective bad faith

4    requirement from cases involving a patentee's infringement communications.  Courts have expressly

5    reaffirmed the continued validity of *Dominant* after *Octane*.  This includes not only the authority

6    cited by Whitepages in its fees motion (e.g. *eDekka*) but other authority ignored by Whitepages.  *See*

7    *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 403 n. 4 (S.D.N.Y. 2015) (applying

8    *Dominant* instead of *Octane Fitness* in the context of determining whether a patentee acted in bad

9    faith, noting that "neither the Supreme Court nor the Federal Circuit has explicitly disavowed the

10   test" in this context); *accord GPNE Corp. v. Fleematics USA, LLC*, No. 13-2049-SLR-SRF, 2015

11   WL 730046, at *3 (D. Del. Feb. 20, 2015) (applying the two-part test to determine whether patentee

12   acted in bad faith).

13          *Dominant* is, in fact, consistent with *Octane Fitness.*  True, *Octane Fitness* is undoubtedly

14   applicable to Section 285 motions as a whole.  *Octane Fitness*, 134 S. Ct. at 1756.  But *Octane*

15   *Fitness* does not operate in a vacuum.  The Court must still consider the subject matter of the

16   activities which are said to justify fee-shifting.  So when part of a motion for fees under § 285 relies

17   on the patentee's alleged bad faith accusation of infringement, *Dominant* is still applicable.

18          Applied to the facts of this case, it is difficult to fathom how Whitepages can assert that

19   Greenflight's allegations of infringement were objectively baseless when it has taken the position in

20   its 101 motion (accepted by the Court) that Greenflight's '698 patent essentially covers the

21   waterfront and seeks to preempt all activity in this area.  *See* Mot. at 20 (quoting Doc. 48 (Order re

22   Judgment on the Pleadings) at 7) ("The patent employs industry-standard technology to perform a

23   longstanding business practice, with no asserted improvement other than to use generic internet

24   applications to obtain certain customer side advantages.  As such, the claims are directed to the

25   patent-ineligible abstract idea of looking up a name associated with a phone number.").  Whitepages

26   cannot have it both ways.  If the patent was as broad as it asserts, then certainly allegations of

27   infringement are not objectively baseless.  As for subjective bad faith, Whitepages' motion sets forth

28   no facts (as opposed to summary conclusions) whatsoever suggesting subjective bad faith on the part

of Greenflight or its principals.  Greenflight did not advertise its infringement allegations to the world in an attempt to hurt Whitepages' business.  Isaacs Decl., ¶ 45.  Rather, Greenflight used the Apple IP Dispute Resolution Procedure in repeated attempts to engage in a negotiated solution.[8]  By contrast, Whitepages repeatedly lobbed meritless threats at Mr. Isaacs and his wife individually, as well as at tiny Greenflight, and ultimately filed suit against all of them.

**C.      Whitepage's Reliance On Litigation Conduct For Fee-Shifting Is Frivolous**

**1.      Whitepages, Not Greenflight, Initiated Legal Proceedings**

Whitepages, not Greenflight, initiated legal proceedings.  The lawsuit prematurely cut-off Greenflight's settlement efforts through Apple's IP Dispute Resolution Procedure.

Greenflight repeatedly informed Whitepages of its willingness to resolve its infringement concerns in a cooperative manner, through one-one-one discussions or through the Apple IP Dispute Resolution Procedure it had initiated, rather than resorting to litigation.  *See* Doc 64-3 (8/28/15 email from Ms. Petrea to WhitePages via Apple's dispute resolution platform: "Greenflight remains willing to work to resolve these concerns with Whitepages and is optimistic a solution exists which best serves iTunes users and the greater public."); Doc. 64-5 (9/27/15 email from Mr. Isaacs to Mr. Kohm:  "There exist a range of solutions to our IP concerns, several of which could mutually benefit Whitepages.  We would like to propose a meeting to discuss the entire matter … If your client is agreeable, we will notify Apple that both parties are scheduling preliminary discussions with the hope of reaching a mutually acceptable outcome."); Doc. 64-10 (Mr.  Isaacs to Whitepages' counsel: "Any proper licensee of our invention must utilize our shared opt-out system, and preferably, offer a co-branded service.  I'd be happy to discuss this with you by telephone, which may be more efficient.").  Indeed, four days before Whitepages filed its lawsuit, Mr. Isaacs expressed to Mr. Kohm the hope to meet with the Whitepages business folks in February "to reach a resolution agreement."  Doc. 64-13.  Instead of setting up such a meeting, however, on January 11, 2016, Mr. Kohm threatened Mr. Isaacs and Ms. Petrea with trade libel and unfair competition claims.  *Id.* ("Please be advised that this conduct constitutes at least trade libel, libel, and unfair competition.  In

[8] *See also* Isaacs Decl., ¶¶ 25-30; 49-50 (describing motivations for approaching Whitepages through Apple's IP Dispute Resolution Procedure and for filing Florida action).

1  the event that Apple removes the Whitepages ID app from the App Store, this conduct would also

2  support claims of intentional interference with contractual relations and intentional interference with

3  prospective economic advantage. . . . [Y]our and Ms. Petrea's personal involvement in this conduct

4  renders both of you personally liable for these tortious acts."). The letter purported to give them and

5  Greenflight until 5:00 p.m. on January 14, 2016 to withdraw its pursuit of a resolution through

6  Apple's IP Dispute Resolution Procedure. *Id.* But that promise of a safe harbor was **a ruse to**

7  **secure a favorable forum:** Whitepages filed this lawsuit against them later that same day. Doc. 1.

8  Whitepages admitted that Greenflight's communications through Apple's dispute resolution

9  platform were aimed at *licensing*, *not litigation*. *See* Doc. 64-14 (1/11/16 Letter from Whitepages to

10  Greenflight, acknowledging that "statements to Apple regarding the Whitepages ID app and

11  Greenflight's intellectual property rights" were "all in an effort to solicit either an unwarranted

12  license or business relationship with Whitepages."). Even after Whitepages filed its California

13  complaint, Mr. Isaacs continued to attempt to resolve the matter outside of Court. On January 12,

14  for example, Mr. Isaacs emailed Mr. Kohm "request[ing] a conference call with your client before

15  your deadline *to discuss this matter and avoid unnecessary litigation and costs to the federal legal*

16  *system.*" Doc. 64-15 (emphasis added). The email also summarized Whitepages' refusal to work

17  with Greenflight pursuant to the Apple agreement: "to date your client has refused to speak to us

18  and has refused to provide any evidence that the patent is not infringed. As you know, we have

19  given Whitepages 4 months to respond with evidence supporting their belief." *Id.*; *see also* Doc. 64-

20  23 (January 20 email from Isaacs to Kohm: "Greenflight still awaits your compliance (5 months

21  overdue) with Apple's App Store/developer rules & regulations.").

22      **2.**    **Whitepages Sued Mr. Isaacs And Ms. Petrea Individually Without Basis**

23  Whitepages' counsel had a duty to research the law and facts prior to filing suit against Mr.

24  Isaacs and his wife personally. *See, e.g.*, Fed. R. Civ. P. 11; Cal. Prof. Conduct Rule 5-200; N.D.

25  Cal. Guidelines for Prof. Conduct at 7. Had he done so, he would have known that the

26  communications alleged to be the basis of those tort claims are protected by an absolute privilege, as

27  described in detail above. He would have also known that the rule of *Dominant Semiconductor*

28  would require pleading with specificity objective baselessness and subjective bad faith on the part of

17

1   all three parties.  But Whitepages' own exhibits submitted in support of its motion show that

2   Whitepages had **no evidence of bad faith whatsoever** on the part of Greenflight, Mr. Isaacs, or Ms.

3   Petrea.  In fact, the documentation filed in support of the present fee motion shows quite the

4   contrary.  And Whitepages' eagerness to dismiss those claims to secure Whitepages' forum of

5   choice speaks volumes for their merits.

6           **3.**     **Whitepages' Reliance On Statements Made By Mr. Isaacs Is Barred Because Counsel Obtained Those Statements In Violation Of California's "No Contact" Rule**

7

8          Whitepages' reliance on various  statements made by Greenflight's CEO, Mr. Isaacs, is

9   furthermore barred because those statements were obtained by Whitepages' counsel, Bryan Kohm,

10  in violation of California's "No Contact" rule.  *See* Cal. Prof. Conduct Rule 2-100.  The No Contact

11  Rule prohibits an attorney, while representing a client, to communicate about the subject of the

12  representation with another party known to be represented by another lawyer in the matter, *unless*

13  *the member has the consent of that other lawyer.  See id.* at 2-100(A).  Under this rule, as soon as

14  Whitepages' counsel learned of Fox Rothschild's representation of Greenflight in the '698 patent

15  dispute (admittedly, no later than January 15, 2016, *see* Doc. 64-19), the "No Contact" rule

16  prohibited any further communications with Greenflight's CEO, Jeffrey Isaacs.  *See id.* at 2-100(B).

17  Although Whitepages' current motion extensively relies on post-January 15 communications

18  between Mr. Kohm and Mr. Isaacs (*see, e.g.*, Mot. at 8-10, 12-15, 22-23), Mr. Kohm provides no

19  evidence that he ever received express consent from Greenflight's counsel to speak directly with

20  Greenflight regarding the '698 patent infringement dispute.

21         It appears that Mr. Kohm seeks to justify his inappropriate communications with a

22  represented party by taking the position that Whitepages' California action was a different "subject

23  of representation" than Greenflight's co-pending Florida action, notwithstanding the fact that they

24  both concerned alleged infringement of the '698 patent.  But this view is not only unsupported by the

25  letter and spirit of the "No Contact" rule, it is also inconsistent with Mr. Kohm's own,

26  contemporaneous characterization of the "subject of representation" to Greenflight's attorney, David

27  Greene.  *See* Doc. 64-19 (1/15/16 email from Kohm to Greene, defining the subject matter of the

28  representation as Greenflight's "claims of infringement against Whitepages.").  Moreover, the

18

1    parties themselves treated the cases as relating to one over-arching dispute in the March 4, 2016

2    partial Settlement Agreement, namely, allegations of '698 patent infringement covered by the two

3    federal court proceedings.  *See* Doc. 64-40 at Recitals.

4          Whitepages also apparently believes that because Mr. Isaacs (the client) initiated contact with

5    Mr. Kohm and gave Mr. Kohm purported consent to speak with him, that is sufficient.  But that is

6    not what the ethical rules provide.[9]  It matters not what the represented party says, even if the

7    represented party invites the communication.  Opinions interpreting the Rule are clear that only the

8    lawyer – not the represented party – can provide the requisite consent, even if the represented party

9    initiates the contact.  *See* State Bar of Cal., Standing Comm. on Prof'l Responsibility and Conduct,

10   Formal Opinion No. 1996-145 ("The prohibition of rule 2-100 is applicable regardless of whether

11   the communication is initiated by the party rather than the attorney.");  *see also id*., Formal Opinion

12   No. 2011-181 (affirming that "[c]onsent of the represented party is not sufficient," and explaining

13   further that "Rule 2-100 specifies that the consent of the other lawyer is required in order for a

14   member to communicate with a represented party about the subject of the representation.").  The

15   case law is in accord.  *See, e.g.*, *United States v. Lopez*, 4 F.3d 1455, 1462 (9th Cir. 1993)

16   (explaining that a party cannot waive their "rights" under Rule 2-100 because the rule "is

17   fundamentally concerned with the *duties* of attorneys, not with the *rights* of parties"); *United States*

18   *v. Talao*, No. CR-97-0217-VRW, 1998 WL 1114043, at *5 (N.D. Cal. Aug. 14, 1998), *vacated in*

19   *part on other grounds*, No. CR-97-0217-VRW, 1998 WL 1114044 (N.D. Cal. Oct. 1, 1998) (" the

20   only person who may waive [Rule 2-100] is the represented party's attorney"); *Matter of Alexander*,

21   No. 11-O-12821, 2014 WL 1778656, at *6 (Cal. Bar Ct. Apr. 30, 2014) (finding that an attorney

22   violated rule 2-100(A) by speaking at an ex parte meeting with a party without the attorney's consent

23   when he knew the party was represented by counsel).[10]

24   ---

[9] *See, e.g., Abeles v. State Bar*, 9 Cal. 3d 603, 610 (1973) (the California Supreme Court held where
25   defense counsel and an individual plaintiff ran into each other at a restaurant, and the plaintiff told
     the attorney that the law firm did not represent him and was not authorized to file any lawsuit on his
26   behalf, that the attorney violated Rule 2-100 (formerly Rule 12) because the attorney knew that the
     plaintiff was represented by counsel when he met with him, despite the fact that the plaintiff
27   expressly denied such representation, and finding further that plaintiff having an attorney of record
     constituted "knowledge" that the party was represented, and the plaintiff's representations to the
28   contrary did not eradicate that knowledge).

[10] Nor can silence on the part of the attorney constitute consent.  *See, e.g., O'Connor v. Uber Techs.*,

1      Once the No-Contact rule is violated, the law is clear that counsel cannot rely upon any

2   communications that were obtained in violation of the rule.  *See, e.g., U.S. v. Powe*, 9 F.3d 68, 69

3   (9th Cir. 1993) (holding that "a court is empowered to exclude evidence obtained in violation of the

4   Rule"); *U.S. v. Sierra Pac. Indus.*, 857 F. Supp. 2d 975, 984 (E.D. Cal. 2011) (finding that the

5   exclusion of "all evidence or information obtained through the improper contacts" was proper);

6   *Snider v. Superior Court*, 113 Cal. App. 4th 1187, 1212 (2003) (holding that if an attorney violates

7   the attorney-client privilege of the opposing party by engaging in ex parte communications, "the

8   court may . . . exclude improperly obtained evidence or take other appropriate measures to achieve

9   justice and ameliorate the effect of improper conduct") (internal quotations omitted).  Thus,

10  Whitepages may not rely on Mr. Isaacs statements which it obtained after becoming aware of the

11  representation.

12              **4.      Whitepages Agreed To Bear Its Own Fees And Costs In This Dispute**

13      In response to Whitepages' California lawsuit—which included the frivolous, yet highly

14  intimidating, libel and unfair competition claims against Mr. Isaacs and Ms. Petrea—Greenflight

15  filed its countersuit infringement case in Florida, where Greenflight is located.  As described above,

16  as partial settlement, Greenflight agreed in March to drop its Florida case and not challenge

17  jurisdiction in California, provided that Whitepages dismiss its meritless tort claims against Mr.

18  Isaacs and Ms. Petrea individually and stipulate that ***the parties would each bear their own fees and***

19  ***costs in the dispute***.  *See* Doc. 64-40, ¶¶ 1, 2, 3.  The Settlement Agreement expressly contemplated

20  that Greenflight's answer in California would contain its counterclaim of '698 patent infringement,

21  which was the basis of its Florida complaint.  *Id.*, ¶ 3.  Thus,  Whitepages waived any right to seek

22

23  ─────────────────────────────────────────────

24  *Inc.*, No. 13-CV-03826-EMC(DMR), 2016 WL 107461, at *4 (N.D. Cal. Jan. 11, 2016) (citing
    *Kirola v. City & Cty. of San Francisco*, No. C 07-03685 SBA, at *2 (N.D. Cal. Sept. 7, 2010))
    (ethical rules prohibit communication by defense attorney with individual class members once a
25  class action has been certified, absent express consent, citing to Cal. Prof. Conduct Rule 2-100 and
    ABA Model Rule 4.2); *Minor v. Barnes & Noble Booksellers, Inc.*, No. RG09-450216, 2010 WL
26  5068685 (Cal. Sup. Ct. 2010) ( "Defense Counsel's suggestion that knowledge of the negotiations
    amounts to consent under the rule, and therefore excuses their conduct is not supported by any
27  authority.  Rule 2-100 speaks of 'consent,' not 'knowledge' or 'acquiescence.'"); *see also* State Bar
    of Cal, Standing Comm. On Prof'l Responsibility and Conduct, Formal Opinion 2011-181 ("copying
28  the other lawyer on correspondence is not necessarily sufficient—the rule requires consent," citing to
    NY cases and an ABA ethics opinion).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES - CASE NO. 3:16-CV-00175-RS

1    fees and costs from Greenflight in connection with the infringement dispute.[11]

2         **D.    Greenflight's Allegations and Litigation Conduct Were Not In Bad Faith**

3         As to infringement, Whitepages cannot simultaneously argue that Greenflight's '698 patent

4    claims are abstract, unpatentable subject matter under § 101 and, at the same time, assert (as it does

5    now) that there could have been no good faith argument of infringement.  In any event, both

6    Greenflight and Apple repeatedly asked for evidence of non-infringement, which Whitepages

7    refused to give in any meaningful way.  Instead, Whitepages cut short the dispute resolution process

8    by bringing  this lawsuit.  And no facts were found in this case with respect to the infringement (or

9    noninfringement) of the accused products because the case was dismissed on a motion on the

10   pleadings, before any discovery occurred.[12]

11        As to validity, the prosecution history shows that: (1) the original claims of the '698 patent

12   were initially rejected as unpatentable subject matter under § 101; (2) *the § 101 rejection was*

13   *overcome by amendment*; and (3) the claims were further amended at the request of the examiner

14   post-*Alice* and issued with the extensive reasons for allowance, including (*inter alia*):

15        The utility of the present invention is to identify the calling party's name when only
16        the CID is known. […]  ***The present invention's post-page functionality***
         ***complements the prior art.***  […]  CNAM implementation has been declining for a
17        decade due to increasing complexity of carriers.  This necessitates the present
         invention as the next-best solution for an end-user wishing to identify a calling party.
18        To attain this, the present invention comprises a system that interfaces the user
         directly with the calling party's SS7 SCP-connected CNAM database. […] ***The end-***
19        ***user consolidates CNAM services and enjoys significant cost savings***. A commercial
         implementation of the present invention was offered free-of-charge to the user via
20        either a smartphone applications or direct web access. ***As stated above, the CNAM***
         ***functionality offered by the present invention is often unavailable, even as a***
21        ***premium service, on many VOIP and cellular carriers.***

22   Ramos Decl., Ex. 1 (file wrapper) at 149-150 (reasons for allowance); see also Isaacs Decl., ¶¶11-20.

23        Thus, in light of the '698 patent's prosecution history, the statutory presumption of validity

24   under 35 U.S.C. § 282 ("A patent shall be presumed valid."), and the fact that Mr. Isaacs (who is not

25   trained in patent law) patented his invention *pro se*, there is simply no reasoned basis to allege that

26

27   ---
     [11] The Settlement Agreement gives this Court jurisdiction to enforce its terms. Doc. 64-40, ¶ 5.

28   [12] Whitepages also seeks fees for responding to discovery requests, but no substantive answers to
     interrogatories were provided, and no documents were ever produced.  Ramos Decl., ¶ 7.

1    Greenflight should have known that its patent was invalid.[13]

2            The argument that the '698 patent is "facially invalid" (Mot. at 19, 26) is clearly an

3    *afterthought* that Whitepages conjured up in connection with the present motion:  neither its original

4    complaint (Doc. 1), nor its amended complaint (Doc. 17) asserted a claim for declaratory judgment

5    of invalidity, and even its motion for judgment on the pleadings (Doc. 31) did not rely solely on the

6    four corners of the patent, putting the lie to its "facial invalidity" claim.  ***Throughout the entire pre-***

7    ***litigation back-and-forth, Whitepages never made any assertion that the '698 patent was invalid.***

8    Its newly concocted argument of "facial invalidity" derives from a case Whitepages cites in its

9    motion for the purpose of seeking fees—*eDekka*—an untimely argument that smacks of bad faith

10   and should be rejected.[14]

11           Indeed, not a single case Whitepages cites to buttress its motion for fees is even remotely

12   similar to the facts here.  For example, the only case that Whitepages cites in which the party moving

13   for fees was a plaintiff seeking a declaratory judgment of noninfringement is *Monolithic Power v O2*

14   *Micro*, 726 F.3d 1359 (Fed. Cir. 2013).  In *Monolithic Power*, the Federal Circuit agreed with the

15   district court "that O2 Micro's rampant misconduct so severely affected every stage of the litigation

16   that a full award of attorney fees was proper here."  *Id.* at  1369.  There, however, the court relied on

17   years of litigation history between the parties including the fact that O2 offered false testimony

18   regarding a critical date relating to its invention.  *Id.* at 1364, 1367.  No such  facts are present here.

19           None of the other cases Whitepages relies upon award fees to a declaratory judgment

20   plaintiff, and they all involve some sort of egregious fact(s), which just are not present here.  For

21   example, in *eDekka*, the patent issued prior to *Alice* and the asserted claims were not limited to a

22   computer, but covered any instance of storing information.  2015 WL 9225038 at *2.  *eDekka* also

23   had a pattern of suing hundreds of defendants and seeking cost of litigation settlements for just a few

24   thousand dollars, which "reflects an aggressive strategy that avoids testing its case on the merits."

25

26   [13] To the contrary, Greenflight respectfully believes the Court's decision was in error and intends to
     prosecute a timely appeal to the Federal Circuit.

27   [14] The USPTO authority Whitepages cites in support of its motion predates recent case law from the
     Federal Circuit seeking to clarify *Alice*, favoring a finding of §101 patentability of the '698 patent
28   claims. *See  e.g. McRO, Inc. v. Bandai Namco Games Am. Inc.,* No. 2015-1080, 2016 WL 4896481,
     at *6 (Fed. Cir. Sept. 13, 2016). WhitePages of course does not cite that law.

22

1    *Id.* at \*4.  Whitepages relies heavily on *eDekka*, but the facts in that case bear no resemblance to the

2    facts here.  The same is true for the other cases cited in Whitepages' motion.[15]

3            If any party has vexatiously and wantonly multiplied the proceedings, it is Whitepages, not

4    Greenflight (or its counsel).  The latest example is the bringing of this very motion.  Whitepages'

5    treatment of the parties' meet and confer on the present motion is telling.  First, despite initiating the

6    scheduling process for the meet and confer (Ramos Decl., ¶ 7), Whitepages chose to schedule it at a

7    time when its lead counsel and signatory on its fee motion would be *not* available.  And the fact that

8    Greenflight reminded counsel that filing a frivolous motion for fees is itself sanctionable was

9    necessary under the circumstances.  *See* Ramos Decl., ¶¶ 6-9 (describing meet and confer and

10   attaching emails between counsel subsequent to same).[16]  Greenflight's counsel properly put

11

12   [15] *See, e.g.*, *Garfum.com Corp. v. Reflections By Ruth* (Mot. At 17) (patentee dismissed its case and gave a covenant not to sue after a hearing was set on a § 101 motion, having made low settlement demands suggesting a nuisance case); *MarcTec v. Johnson & Johnson* (Mot. at 18) (conduct was

13   exceptional because the claim construction was frivolous and contrary to prosecution disclaimers; patentee had also relied on expert testimony that did not meet the requirements for scientific

14   reliability or relevance required by FRE 702 and *Daubert*.); *Eltech Sys. Corp. v. PPG Indus.* (Mot. at 19) (baseless infringement allegations, leading to a presumption that no pre-suit investigation had

15   been conducted.); *Kilopass Tech. Inc. v. Sidense Corp.* (Mot. at 19) (patentee had an opinion of counsel that there was no infringement but brought suit anyway); *Astrazeneca AB v. Dr. Reddy's*

16   *Labs., Ltd.* (Mot. at 20) (defendant produced evidence prior to suit showing that it did not infringe; plaintiff moved forward anyway which had the intended effect of preventing the defendant's product

17   from making it to market; plaintiff also asserted "a tortured claim construction in derogation of the prosecution history." (at \*9)); *Checkpoint Sys., Inc. v. All-Tag Security S.A.* (Mot. at 20) (patentee

18   had already acquired three competitors, and was now suing the fourth and last competitor in the market—it threatened to "bleed them dry with fees" and push them into bankruptcy; patentee never

19   evaluated the product before filing suit, and the infringement expert relied upon never evaluated the product either); *Home Gambling Network Inc. v. Piche* (Mot. at 20) (the court found patent misuse

20   in the scope of a license granted to the defendant, that the plaintiff did not own an asserted patent, and that it had made facially void infringement allegations); *Dolen v Rylas* (Mot. at 21) (not a patent

21   case; defendants' dilatory conduct and 12 baseless motions justified fee shifting for only a portion of plaintiff's conduct – this case is incorrectly cited by Whitepages with respect to conduct on which

22   fees are actually awarded); *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.* (Mot. at 21) (remanded on appeal, because, *inter alia*, the district court should have considered the totality of the

23   circumstances); *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharm.* (Mot. at 22) (jury found that Alzheimer's institute did not own the patent, and that a co-inventor was not named on the patent;

24   evidence also showed a conspiracy to defraud the rightful owner of its patent rights:  "The deception, the planning, the execution of the scheme and the motivation of AIA, Sexton, Mullan and Hardy

25   were hardly common or ordinary.  Indeed, their conduct was rare and beyond common decency. They were motivated by ego and greed.  Bringing this action was nothing more than a perpetuation of

26   the conspiracy."); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.* (Mot. at 22) (fees awarded to patentee because defendant had failed to support its ANDA filing alleging invalidity, and also

27   relied on an erroneous opinion of counsel; defendant also was found to have willfully infringed). [16] In fact, Whitepages terminated the meet and confer as soon as Greenflight's counsel explained

28   why the threatened fee motion had no basis in law and, if filed, would be frivolous and the basis of a counter-motion for fees.  Ramos Decl., ¶ 9.

1    Whitepages on notice of the problems with their fees motion, particularly since Whitepages had

2    threatened a motion under 28 USC § 1927 *to attack personally* Greenflight's attorneys at Winston &

3    Strawn—*i.e.,* Mr. Badini, Ms. Ramos, Mr., Lin, and Ms. McTague—without offering one shred of

4    evidence or case supporting such a motion. *Id.,* ¶ 9. *See In re Keegan Mgmt. Co., Sec. Litig.*, 78

5    F.3d at 436–37 (only attorneys, and not their law firms, may be sanctioned under 28 U.S.C. § 1927).

6    In light of such unfounded and personal threats against Greenflight's counsel, and given Whitepages

7    history in this case of filing frivolous claims against individuals Isaacs and Petrea, Greenflight's

8    counsel was understandably candid and outspoken.

9        As the case docket shows; (1) *Whitepages* commenced court action in January, short-

10   circuiting the Apple dispute resolution procedure, and then amended its complaint in early March;

11   (2) Winston's  litigation team appeared for the first time in late March; (3) Greenflight

12   *counterclaimed* for infringement and did not challenge jurisdiction or move to transfer or dismiss

13   this case; (4) Whitepages moved for judgment on the pleadings; and (5) the court *granted*

14   Greenflight's motion for leave to move for reconsideration, and then *ordered* Whitepages to respond

15   to Greenflight's motion.  Meanwhile, Whitepages spun-out its business unit that had developed and

16   marketed the accused technology into a new company, Hiya, but then refused to amend its

17   declaratory judgment action to include Hiya as a co-plaintiff.  Whitepages then filed a motion for

18   entry of judgment to which Greenflight would not consent because Whitepages refused to include

19   the standard language, consistent with the parties' Settlement Agreement, that each party would bear

20   its own fees and costs in this dispute.  This is hardly a history of vexatious conduct by Greenflight.

21       **E.    Whitepages Fees Are Unsubstantiated And Therefore Unreasonable**

22       For the reasons set forth above, no fees should be awarded against Greenflight or its counsel

23   and, in fact, any fee award should go the other way.  In any event, Whitepages' fee submission is

24   internally contradictory and unsubstantiated.

25       Whitepages' proposed order awards fees as follows:  "$199,043.50 jointly and severally from

26   Greenflight Venture Corporation, Jeffrey Isaacs, and their counsel, Winston & Strawn; [and] an

27   additional $20,268.00 (for a total of $219,311.50) jointly and severally from Greenflight Venture

28   Corporation and Jeffrey Isaacs."  Doc. 64-49.  The declaration of counsel, however, states that fees

24

1    incurred *after* the partial settlement of March 4, 2016 amounted to much less:  it was either $147,387

2    (Kohm Decl., ¶ 57), or $178,778.50 (Kohm Decl., ¶ 60).  That declaration further implies a

3    contingency fee associated with the pursuit of this fee shifting motion (either "$50,000 or $75,000,

4    depending on the circumstances").  *Id.*, ¶ 61.

5         The inconsistency of the fee amounts recited by counsel underscores the unsubstantiated

6    nature of Whitepages' fee request.[17]  Whitepages presents no evidence that the amounts recited,

7    however inconsistent, *only* include fees that were *unrelated* to the Florida action, and *only* include

8    fees that were *actually invoiced* to Whitepages.  More fundamentally, Whitepages' lack of

9    consideration and care in calculating the most severe type of penalty—an exceptional request for

10   sanctions from a party and its law firm—reflects its lack of consideration in bringing this motion at

11   all.  The motion is baseless, and the request for fees is *de facto* unreasonable.

12   **IV.    CONCLUSION**

13        Whitepages' motion for fees should be denied.  Not a single case Whitepages relies upon to

14   support its request for fees under 35 U.S.C. § 285 presents facts even remotely similar to this case.

15   Nothing in Whitepages motion justifies an award of fees to Whitepages under the court's inherent

16   powers either.  Mr. Isaacs did not even hire litigation counsel until *after* he was sued by Whitepages,

17   despite having spent months attempting to resolve this dispute via Apple's IP Dispute Resolution

18   Procedure.  This is hardly the behavior or strategy of a vexatious litigant looking to drive up an

19   opponents' litigation costs.  This motion is not only meritless—it is also frivolous.  As such,

20   Greenflight respectfully requests an award of its fees and costs, under the Court's inherent powers,

21   in defending itself against it.

22   Dated:  October 5, 2016              WINSTON & STRAWN LLP

23                                        By:   */s/ Aldo A. Badini*
24                                              Aldo A. Badini
                                                Constance F. Ramos
25                                              James C. Lin
                                                Attorneys for Defendants
26                                              GREENFLIGHT VENTURE CORPORATION
                                                AND JEFFREY ISAACS

27

28   ----------------------------------------
     [17] *Compare, e.g.*, Kohm Decl., ¶57 (fees requested adding up to $187,920) with *id.*, ¶¶ 58-60 (the
     breakdown of fees in ¶57 adding up to a total of $219,311.50).