1  Aldo A. Badini (SBN: 257086)
   abadini@winston.com
2  Constance Ramos (SBN: 203637)
   cframos@winston.com
3  James C. Lin (SBN: 271673)
   jalin@winston.com
4  WINSTON & STRAWN LLP
   275 Middlefield Road, Suite 205
5  Menlo Park, California 94025-4004
   Telephone:    (650) 858-6500
6  Facsimile:    (650) 858-6550

7  Attorneys for Defendants
   GREENFLIGHT VENTURE
8  CORPORATION AND JEFFREY ISAACS

9

10                  **UNITED STATES DISTRICT COURT**

11                 **NORTHERN DISTRICT OF CALIFORNIA**

12                    **SAN FRANCISCO DIVISION**

13  WHITEPAGES, INC., a Delaware corporation,  )   **Case No. 3:16-cv-00175-RS**
                                               )
14                Plaintiff,                   )
                                               )
15        v.                                   )   **DECLARATION OF JEFFREY D. ISAACS**
                                               )   **IN SUPPORT OF GREENFLIGHT**
16  GREENFLIGHT VENTURE CORPORATION,)          )   **VENTURE CORPORATION'S AND**
    a Florida company, JEFFREY ISAACS, an      )   **JEFFREY ISAACS' OPPOSITION TO**
17  individual,                                )   **WHITEPAGES, INC.'S MOTION FOR**
                                               )   **ATTORNEYS' FEES AND COSTS**
18                Defendants.                  )
                                               )
19  _____)
    GREENFLIGHT VENTURE CORPORATION,)          )   Date: November 3, 2016
20  a Florida company, JEFFREY ISAACS, an      )   Time: 1:30 PM
    individual,                                )   Dept: Courtroom 3, 17th Floor
21                                             )   Judge: Honorable Richard Seeborg
                                               )
22                Counterclaim-Plaintiffs,     )
                                               )
        v.                                     )
23                                             )
    WHITEPAGES, INC., a Delaware corporation,  )
24                                             )
                                               )
25                Counterclaim-Defendant.      )

26

27

28

ISAACS DECLARATION IN SUPPORT OF OPPOSITION TO WHITEPAGES, INC.'S MOTION FOR ATTORNEYS' FEES --
CASE NO. 3:16-CV-00175-RS

1    I, Jeffrey D. Isaacs, hereby declare as follows:

2    1.    My name is Jeffrey David Isaacs, and I am the founder and current CEO of

3 Greenflight Venture Corporation ("Greenflight").  Greenflight and I are Defendants-

4 Counterclaimants in the above-captioned matter.  I have personal knowledge of the facts I state

5 below, and if I were to be called as a witness, I could competently testify about what I have written

6 in this declaration.

7    2.    With respect to my education and training relevant to the claimed invention, I

8 received an A.B. with Honors in computer science from Dartmouth College in 1999.  Each summer

9 during college, I worked as a database and software development intern for GlaxoSmithKline and

10 worked as well on projects related to a large federal research grant associated with the Human

11 Genome Project.  In 1999, I also worked as a venture capital analyst in France; one of the first

12 projects that I worked on there was for an emerging 3G mobile technology platform.

13    3.    Greenflight is a Florida C Corporation with its headquarters located at 10312 Orchid

14 Reserve Drive, West Palm Beach, Florida 33412.  Greenflight's principal place of business is also in

15 Florida.

16    4.    I was not a resident of California at the time when the patent dispute with Whitepages

17 arose in the Fall of 2015, nor at any time during the pre-litigation period leading up to Whitepages

18 filing of the present lawsuit in California.

19    5.    I am married to Ianina Petrea.  Ms. Petrea is the current President of Greenflight.  Ms.

20 Petrea also was not a resident of California at any time during the pre-litigation period leading up to

21 Whitepages filing of the present lawsuit in California (August 2015-January 11, 2016).

22    6.    I am the named inventor on the patent at issue in this case, United States Patent No.

23 8,861,698 (the "'698 patent), which was granted by the United States Patent and Trademark Office

24 ("USPTO") on October 14, 2014.

25    7.    I founded Greenflight based on the technology I invented, and for which I received

26 the '698 patent from the USPTO.  My invention allows a mobile phone or web user to identify caller

27 name information for a specified phone number, independent of the carrier or device of the user.

28    8.    In 2013, I developed a commercial embodiment of my invention, which became

1

1  Greenflight's Caller-ID application on the Apple iTunes App Store.  Exploitation of the '698 patent

2  is Greenflight's sole source of annual revenue.

3      9.      I am not an attorney, and I have no formal education in patent law.  I filed and

4  prosecuted my patent application *pro se*.  I filed my application for a United States patent on my

5  invention on February 6, 2014.  Attached as **Exhibit A** is a true and correct copy of my patent

6  application.

7      10.     During the prosecution of my patent application, I received a non-final Office Action

8  Summary on April 16, 2014 from Examiner, Quoc Duc Tran, rejecting all seven of the application's

9  claims.  Attached as **Exhibit B** is a true and correct copy of the April 16, 2014 Office Action

10 Summary.  The Examiner notified me that claims 4-7 were rejected under 35 U.S.C. § 101 as not

11 falling within one of the four statutory categories of invention.  Claims 1-7 were also rejected under

12 35 U.S.C. § 103.

13     11.     I filed a Reply to the April 16, 2014 Office Action Summary addressing the

14 Examiner's rejections on April 30, 2014.  In my reply, I withdrew claims 4-7 and added new claims

15 8-10 to recite claims asserting a specific functionality of my invention, in order to address the

16 Examiner's rejection under 35 U.S.C. § 101.  Attached as **Exhibit C** is a true and correct copy of my

17 April 30, 2014 Reply to the April 16, 2014 Office Action Summary.

18     12.     I received a Notice of Non-Compliant Amendment on May 2, 2014 indicating that the

19 listing of claims did not include the text of all pending claims (including withdrawn claims).

20 Subsequently, I filed another Reply to the April 16, 2014 Office Action Summary addressing the

21 Examiner's rejections on May 5, 2014.  In my reply, I indicated that claims 4, 5, and 7 were

22 withdrawn, claim 6 was amended, and I added new claims 8-10 to recite claims asserting a specific

23 functionality of my invention, in order to address the Examiner's rejection under 35 U.S.C. § 101.

24 Attached as **Exhibits D** and **E** are true and correct copies of the Notice of Non-Compliant

25 Amendment on May 2, 2014 and the May 5, 2014 Reply to the April 16, 2014 Office Action

26 Summary, respectively.

27     13.     In response to my May 5, 2014 reply, I received a second non-final Office Action

28 Summary on July 21, 2014 from the Examiner rejecting all the claims in my application under 35

2

1    U.S.C. § 103.  Attached as **Exhibit F** is a true and correct copy of the July 21, 2014 Office Action

2    Summary.  Shortly thereafter, I telephoned the USPTO to explore the possibility of having an

3    interview with the Patent Examiner, Mr. Tran.

4           14.     Before scheduling an interview with Mr. Tran, I spoke with his supervisor, Curtis

5    Kuntz.  I briefly told him that I was concerned that the application had been rejected twice on very

6    different grounds.  Mr. Kuntz was kind enough to take some time to read through the prosecution

7    history of my application and advise me that he believed that an interview with Mr. Tran was

8    something I should pursue.  I remember Mr. Kuntz specifically told me that Mr. Tran "is our expert

9    on Caller ID" and that he trusted Mr. Tran's "vast knowledge of this sector."  In short, Mr. Kuntz

10   recommended that I take up the opportunity permitted by the USPTO rules to interview with "one of

11   the best" examiners at the USPTO.

12          15.     Shortly thereafter, I had an interview with Examiner Tran to discuss the rejections to

13   my patent application.  Having never applied for a patent before (or after) this instance, I began the

14   discussion with Mr. Tran by stating my concern that my claims may have possibly been

15   misconstrued; I viewed the diverse prior art cited by Mr. Tran in conjunction with the two office

16   actions as perhaps an indication of some sort of misunderstanding.

17          16.     Mr. Tran immediately put my concern to rest.  He stated that he grasped precisely

18   what I had invented.  He informed me that he typically works with patent prosecution counsel from

19   telecom companies, but in this case with a *pro se* applicant, he had to be especially diligent that all

20   the patent eligibility requirements were met.

21          17.     Mr. Tran asked if I knew what a patent preamble was, to which I replied that I did

22   not.  He then proceeded to explain that, as I had originally written the claims, he was worried that

23   they could overlap or preempt the existing "old fashioned" carrier caller ID.  He stated that adding a

24   preamble emphasizing the carrier and device independence of my invention should satisfy his

25   concerns about my claim specificity.

26          18.     I believe the interview lasted the entire scheduled forty five minutes.  The

27   aforementioned concern with carrier and device independence were the primary issues he raised in

28   the interview.  He also made clear that he understood my invention with respect to all the prior art.

ISAACS DECLARATION IN SUPPORT OF OPPOSITION TO WHITEPAGES, INC.'S MOTION FOR ATTORNEYS' FEES --
CASE NO. 3:16-cv-00175-RS

1   We walked through all my claims verbatim during the interview, and he reminded me that I should

2   add the preamble language that he suggested to both the method and system claims.  Towards the

3   end of the interview, Mr. Tran volunteered on his own accord that he appreciated that I had

4   developed something that saves the consumer money, which he viewed as always an important and

5   worthwhile goal.  He indicated to me that hopefully when he reviews the modified claims, they will

6   be ready for allowance.

7          19.     After my interview with Examiner Tran to discuss the prior art and to revise the

8   language of the claims in the application, on August 17, 2014, I filed a Reply to the July 21, 2014

9   Office Action Summary.  Following the suggestions I received during my interview with Examiner

10  Tran, I cancelled claims 1-10 and replaced them with new claims 11-16.  In particular, I heeded

11  Examiner Tran's suggestion to carefully draft the new independent claims 11 and 15, which later

12  issued as claims 1 and 5 of the '698 patent, to include additional language in the preambles of the

13  claims.  Attached to my declaration as **Exhibit G** is a true and correct copy of the August 17, 2014

14  Reply to the July 21, 2014 Office Action Summary.

15         20.     In response to my August 17, 2014 Reply, I received a Notice of Allowance on

16  September 5, 2014, which allowed claims 11-16.  Attached to my declaration as **Exhibit H** is a true

17  and correct copy of the September 5, 2014 Notice of Allowance.

18         21.     On October 14, 2014, the USPTO issued the '698 patent, entitled "Post-Page Caller

19  Name Identification System," to me as the inventor.  Attached to my declaration as **Exhibit I** is a

20  true and correct copy of the '698 patent.  I assigned ownership rights in the '698 patent to

21  Greenflight on January 14, 2016.  Prior to that assignment, Greenflight was the exclusive licensee of

22  the '698 patent.

23         22.     I am informed and understand that an issued U.S. patent is afforded a statutory

24  presumption of validity.  As a *pro se* applicant, after the USPTO issued the '698 patent to me, I

25  sincerely believed that the '698 patent was valid and granted me the exclusive right to exclude

26  anyone else from practicing my invention until its expiration date, as long as I continued to pay

27  maintenance fees to the USPTO.

28         23.     Prior to this litigation, I never had any reason to believe that the '698 patent could be

ISAACS DECLARATION IN SUPPORT OF OPPOSITION TO WHITEPAGES, INC.'S MOTION FOR ATTORNEYS' FEES --
CASE NO. 3:16-cv-00175-RS

1   invalid.  I understood and believed that the USPTO had properly and thoroughly examined my

2   claims and issued the '698 patent for at least all of the reasons set forth in the "Notice of

3   Allowability" that became a part of its prosecution history.

4         24.     Greenflight released its Caller-ID application onto the Apple iTunes App Store in the

5   summer of 2014.  It was made available to consumers for free.  The Caller-ID application was

6   marked with a "patent pending" notice on the Apple iTunes App Store.  That notice has since been

7   updated to include notice of the '698 patent.

8         25.     In August 2015, I became aware of Whitepages' "ID by Whitepages" application

9   available for download on the Apple iTunes App Store.  After running numerous tests of that

10  Whitepages application, I genuinely and sincerely believed that Whitepages was practicing my

11  patented invention.

12        26.     In accordance with my understanding of Apple's iOS Developer Program License

13  Agreement, and because Greenflight's entire business model at the time relied upon its exclusive use

14  of the invention claimed in the '698 patent, I, as CEO of Greenflight, decided to commence Apple's

15  dispute resolution procedure for intellectual property disputes.  My experience has been that Apple

16  has spent decades cultivating a developer community that is simply unparalleled.  Therefore, very

17  shortly after I became aware of the "ID by Whitepages" app offered on the Apple iTunes App Store,

18  I engaged in Apple's dispute resolution procedure.  I had full faith that this forum would help resolve

19  my dispute with Whitepages.  At the very least, it would yield useful information that could reduce

20  or eliminate the need for litigation.

21        27.     Apple has publicly posted its iOS Developer Program License Agreement for

22  developers who wish to post things in Apple's iTunes App Store.  Attached as **Exhibit J** is a true

23  and correct copy of sections from Apple's iOS Developer Program License Agreement that discuss

24  resolving intellectual property disputes.  I was well aware of Apple's agreement for application

25  developers, and it was my understanding that everyone who provided an application to the Apple

26  iTunes App Store agreed to abide by the agreement.  As part of the agreement, a developer that has a

27  dispute over intellectual property "agree[s] to follow Apple's app dispute process."  *See* Exhibit J at

28  46.  Developers also agree that Apple may share contact information with third parties for purposes

1  related to, e.g., intellectual property questions.  *See id*. at 9.

2      28.  I recently went to Apple's website to see if there have been any changes to Apple's

3  iTunes App Store policies for developers.  Apple now has publicly posted an iTunes App Store

4  Review Guidelines for developers who wish to post things in Apple's iTunes App Store.  Attached

5  as **Exhibit K** is a true and correct copy of Apple's iTunes App Store Review Guidelines (last access

6  October 4, 2016).  Section 5.2 of the Guidelines provides that if a developer "believe[s] your

7  intellectual property has been infringed by another developer on the App Store, submit a claim via

8  our web form."  Exhibit K at 29.  As was my understanding, Apple attempts to help its developers

9  resolve intellectual property disputes.

10      29.  Hoping to avoid any type of litigation, on August 22, 2016, Greenflight filed a claim

11  with Apple under its dispute resolution procedure, stating its sincere belief that Whitepages'

12  "Whitepages ID" app infringed the '698 patent.  The claim was assigned Apple reference number

13  APP50291.  I had a genuine belief that Whitepages was likely infringing the '698 patent and wanted

14  to negotiate a license with Whitepages if Apple's App Store Content Dispute process concluded that

15  Whitepages was infringing the '698 patent.  As a fledgling startup company, Greenflight had no

16  desire to start formal litigation proceedings because it had no legal team and no financial means to

17  engage in a long, drawn out litigation in the federal courts.

18      30.  I believed that the Apple Dispute Resolution process would be far less costly, and

19  preferable to all parties, when compared to the alternative: lengthy federal court litigation.  After

20  Greenflight's Apple's reference number APP50291 was opened, I actively attempted to engage with

21  Whitepages to amicably resolve the issues between the parties without having to resort to a lawsuit.

22      31.  Greenflight received a letter from Fenwick & West LLP ("Fenwick") on September

23  11, 2015 alerting it that Fenwick was representing Whitepages regarding the claim submitted by

24  Greenflight to Apple.  Attached to my declaration as **Exhibit L** is a true and correct copy of certain

25  exhibits ("Fenwick Ex. __") to Kohm Declaration (Doc. 64-1).  *See* Exhibit L, Fenwick Ex. 3.  The

26  letter was sent by Bryan Kohm, Whitepages' attorney.  In Mr. Kohm's letter, he requested a more

27  detailed basis for Greenflight's allegations that Whitepages infringes the '698 patent.

28      32.  I responded, on behalf of Greenflight, to Mr. Kohm by email on September 27, 2016

1 reiterating Greenflight's concerns that the Whitepages ID app infringes the '698 patent.  I proposed

2 to schedule a meeting to discuss the matter, and that if agreeable, I would notify Apple that both

3 parties are discussing the issues and hope to reach a mutually acceptable outcome.  Exhibit L,

4 Fenwick Ex. 4.

5       33.    Mr. Kohm responded to my email on September 29, 2015 to provide me with

6 Whitepages' understanding of the allegations of infringement against it.  Specifically, Mr. Kohm

7 asked me to confirm whether the patent infringement allegation is based on Whitepages allegedly

8 practicing claim 1(c) of the '698 patent.  Exhibit L, Fenwick Ex. 5.  Mr. Kohm also indicated that he

9 did not oppose me advising Apple that the parties are conducting discussions regarding Greenflight's

10 claims.  *Id.*

11       34.    Greenflight made numerous attempts to avoid having to seek redress from the federal

12 judicial system by instead seeking to resolve this patent infringement dispute through Apple's

13 dispute resolution procedure.

14       35.    For example, in early October 2015, I called Mr. Kohm to discuss his late September

15 2015 communication to Greenflight.  Unable to reach Mr. Kohm, I sent him a follow up email on

16 October 9, 2015 regarding how I understood Whitepages to be infringing the '698 patent.  Exhibit L,

17 Fenwick Ex. 6.

18       36.    While I do not have any legal training as an attorney, as a startup company,

19 Greenflight cannot not afford to have a legal department.  But in hopes of facilitating a mutual

20 resolution between the parties, and in response to Mr. Kohm's inquiry regarding whether

21 Greenflight's patent infringement allegation was based on Whitepages allegedly practicing claim

22 1(c) of the '698 patent, I informed Mr. Kohm in my October 9, 2015 email that, as Greenflight stated

23 in its letter to Apple's iTunes legal department, Greenflight believes that the accused Whitepages

24 app practices claim 1(c) of the '698 patent.  Exhibit L, Fenwick Ex. 6.  I also informed Mr. Kohm

25 that it was implicit that the remaining elements of claim 1 were practiced by the accused product as

26 well.  *Id.*  I had not highlighted the other claim elements in our correspondences because I did not

27 believe there was a dispute regarding whether those elements were practiced, not because the

28 elements are not essential to the invention.

7

37.     I received a communication from Mr. Kohm on October 19, 2015 in response to my October 9, 2015 email.  Mr. Kohm requested to have a teleconference to further discuss Greenflight's allegations.  Exhibit L, Fenwick Ex. 7.  We agreed to have a teleconference on Friday, October 23, 2015.  Exhibit L, Fenwick Ex. 8.

38.     On October 23, 2015, I had a teleconference with Mr. Kohm.  I believe the call lasted approximately 30 minutes in which I spoke for almost the entire time.  I stated to Mr. Kohm that I was amenable to meeting with Whitepages and that I really wanted to resolve the dispute between the parties.  Mr. Kohm appeared to only be interested in whether the '698 patent currently had any continuation applications or was going through a reissue, to which I told him no for both, and how I interpreted the '698 patent.  He did not otherwise engage in any substantive conversations with me regarding resolving the dispute.

39.     I forwarded a follow up email from Apple's iTunes legal department in December 2015 to Mr. Kohm, Exhibit L, Fenwick Ex. 9, indicating that Apple reference number APP50291 still had not been resolved.  In response, I received an email from Mr. Kohm on December 16, 2015, once again asking me to confirm Greenflight's infringement position.  Exhibit L, Fenwick Ex. 10.

40.     I sent Mr. Kohm an email response on December 17, 2015.  Even though I am not an attorney, I made my best effort to try to address Mr. Kohm's inquiries in hopes of moving the discussions along.  I specifically informed Mr. Kohm that it is obvious that the language of the patent takes precedent over any of my own explanations during the course of our correspondences.  Exhibit L, Fenwick Ex. 11.  I informed Mr. Kohm that my explanations should not be and are not meant to be misconstrued as narrowing or expanding the claims of the '698 patent.  *Id*.  I then explained to Mr. Kohm Greenflight's position regarding how I understand CNAM data can be accessed.  In closing, I invited Mr. Kohm to discuss with me by phone if he required additional clarification.

41.     I received a response from Mr. Kohm to my December 17, 2015 email in the form of a letter dated January 11, 2016.  Mr. Kohm wrote in the letter that he believed that Greenflight lacked any basis whatsoever to allege that Whitepages infringes the '698 patent.  Exhibit L, Fenwick Ex. 13.  He also asserted (incorrectly) that Greenflight failed to conduct a reasonable investigation

8

ISAACS DECLARATION IN SUPPORT OF OPPOSITION TO WHITEPAGES, INC.'S MOTION FOR ATTORNEYS' FEES --
CASE NO. 3:16-cv-00175-RS

1    into the operation of Whitepages' app.  *Id*.  Moreover, Mr. Kohm also accused Greenflight to have

2    made false and misleading statements to Apple regarding the Whitepages ID app and Greenflight's

3    intellectual property rights, falsely accusing that it was "for the purpose of interfering with

4    Whitepages' business and relationship with Apple, all in an effort to solicit either an unwarranted

5    license or business relationship with Whitepages."  *Id*.  Those statements were false and

6    intimidating.

7           42.      Furthermore, in the same letter, Mr. Kohm contended that Greenflight's conduct

8    constituted at least trade libel, libel, and unfair competition.  *Id*.  Mr. Kohm asserted that if Apple

9    were to remove the Whitepages ID app from the App Store, Greenflight's "conduct" would also

10   support claims of intentional interference with contractual relations and intentional interference with

11   prospective economic advantage, and that both me and my wife's personal involvement with

12   Greenflight's use of the Apple dispute resolution procedure in connection with my sincere belief that

13   the Whitepages app was an infringing product would render the both of us personally liable for the

14   alleged tortious acts.  *Id*.  The letter also stated that Whitepages demanded that I provide notice to

15   Apple by no later than 5 p.m. Pacific Time on January 14, 2016 that Greenflight has withdrawn its

16   claim against Whitepages.  *Id*.

17          43.      However, on that same day, January 11, 2016, Whitepages filed a complaint for

18   declaratory judgment of non-infringement, trade libel, libel, and unfair competition against

19   Greenflight, me, and my wife, Ianina Petrea ("California Action").  The complaint came as a

20   complete surprise, short-circuiting the process of trying to reach a resolution through Apple's dispute

21   resolution procedure.  Attached as **Exhibit M** is a true and correct copy of Whitepages' January 11,

22   2016 Complaint.

23          44.      Whitepages' complaint did not include a declaratory judgment of invalidity.  At no

24   point during Apple's dispute resolution process or my communications with Mr. Kohm and

25   Whitepages did Mr. Kohm or anyone from Whitepages (or Apple) ever question the validity of my

26   patent or suggest that it was directed to unpatentable subject matter.

27          45.      I was truly shocked to learn that Whitepages had cut short the Apple dispute

28   resolution process before it came to a conclusion, and instead filed suit in California against

9

ISAACS DECLARATION IN SUPPORT OF OPPOSITION TO WHITEPAGES, INC.'S MOTION FOR ATTORNEYS' FEES --
CASE NO. 3:16-cv-00175-RS

1  Greenflight, my wife, and me alleging various torts, including trade libel, for simply invoking that

2  process.  I sincerely believe that Whitepages' ID app practices the '698 patent; I had simply been

3  following Apple's dispute resolution process.  At no point during this process did Greenflight

4  advertise its infringement allegations to the world in any attempt to hurt or interfere with

5  Whitepages' business.

6       46.     I responded to Mr. Kohm's January 11, 2016 letter by email on January 12, 2016.  In

7  my response, I indicated to Mr. Kohm that he appeared to be obfuscating the issues regarding

8  Greenflight's allegations of patent infringement.  Exhibit L, Fenwick Ex. 14.  I had requested

9  Whitepages to provide evidence that Greenflight's allegations of patent infringement were

10  unsubstantiated for over four months since initiating Apple's dispute resolution procedure on August

11  22, 2015, but as of January 11, 2016, Whitepages had refused to provide any evidence that the '698

12  patent was not infringed by Whitepages' Caller ID app.  *Id*.  In my email, I also requested a 14-day

13  extension for me to look into Whitepages' tortious claims.  *Id*.

14       47.     I received an email response from Mr. Kohm on January 13, 2016.  Mr. Kohm agreed

15  to provide me a 14-day extension to respond to Whitepages' tortious allegations, provided that I

16  refrain from further pursuing my claims with the Apple dispute resolution procedure.  Exhibit L,

17  Fenwick Ex. 16.  In this letter, Mr. Kohm indicated to me that the law did not require Whitepages to

18  provide evidence of non-infringement.  *Id*.  Rather, I was obligated to first provide a reasonable and

19  good faith basis that Whitepages practices each and every limitation of any asserted claim.  *Id*.  Mr.

20  Kohm also stated in his letter that Whitepages had already explained why it does not infringe the

21  '698 patent.  *Id*.

22       48.     I had already provided Greenflight's bases for alleging that Whitepages was

23  infringing the '698 patent when I submitted my claim to the Apple dispute resolution procedure.  I

24  also specifically explained to Mr. Kohm in my October 9, 2015 email, as well as in the letter to

25  Apple iTunes legal department, that Greenflight believes that the accused Whitepages app practiced

26  claim 1 of the '698 patent.  My belief was based upon numerous tests of Whitepages' app.

27       49.     I believe the Apple dispute resolution process encourages parties to attempt to resolve

28  their intellectual property issues.  As part of this process, it also encourages an accused party to

10

ISAACS DECLARATION IN SUPPORT OF OPPOSITION TO WHITEPAGES, INC.'S MOTION FOR ATTORNEYS' FEES --
CASE NO. 3:16-cv-00175-RS

1   produce evidence of non-infringement to help facilitate the resolution of the dispute.  However,

2   Whitepages never responded to me with this information, despite numerous requests.  It is my belief

3   that Apple was also never provided with any evidence of non-infringement.

4        50.    Having already filed Whitepages' complaint in the Northern District of California, a

5   district in which I had no ties to and is across the country from me, I had no realistic choice but to

6   file a complaint for patent infringement in the Southern District of Florida ("Florida Action"), where

7   my company is headquartered.  I filed the complaint for patent infringement on January 14, 2016.  I

8   retained Fox Rothschild LLP as counsel for the Florida Action, the first litigation counsel that I

9   retained in connection with any of these infringement issues.

10       51.    Maintaining two lawsuits in two district courts across the country was not sustainable

11  for Greenflight and me.  In hopes of consolidating the dispute between Greenflight and Whitepages,

12  a partial settlement agreement between the parties was reached on March 4, 2016 ("Settlement

13  Agreement").  I understood that the Settlement Agreement effectively ended any and all disputes

14  between the parties prior to March 4, 2016, with the exception of the patent infringement issue, with

15  each party to bear its own costs and fees, and that parties would continue to litigate the patent

16  infringement dispute in the Northern District of California.

17       52.    I became aware around May 2016 that Whitepages spun off its caller ID business,

18  including Whitepages' apps that are accused of infringement, to a company called Hiya Inc.

19  ("Hiya").  Hiya released an app called "HIYA Caller ID and Block" on the Apple iTunes App Store,

20  and I downloaded the app to evaluate its features.  I concluded from my tests of the app that it was

21  likely the same as (or substantially similar to) Whitepages' accused app.  Thus, I suspected that

22  "HIYA Caller ID and Block" infringes the '698 patent as well.

23       53.    I notified Apple by email on May 10, 2016 that Hiya had apparently spun-off of

24  Whitepages and that Hiya's new app on the Apple iTunes App Store infringes the '698 patent.  I

25  contacted Apple in good faith, as part of Apple's request to keep it apprised of the evolution of my

26  dispute with Whitepages.

27       54.    Greenflight is a small startup company with minimal financial resources.  It has only

28  two employees, myself and my wife, Ianina Petrea.  The only product Greenflight provides is its

11

ISAACS DECLARATION IN SUPPORT OF OPPOSITION TO WHITEPAGES, INC.'S MOTION FOR ATTORNEYS' FEES --
CASE NO. 3:16-cv-00175-RS

1    Caller-ID app.  Last year, Greenflight served 100 million customers with its free Caller-ID app, and

2    my personal income from Greenflight amounted to approximately $450,000.  Greenflight was the

3    first to bring free, advertising sponsored CNAM to the masses.

4         55.    Today, my wife and I still have hundreds of thousands of dollars in outstanding

5    Federal student loans.  Greenflight is currently my sole source of income.  Despite Greenflight's

6    success, Greenflight's profits from last year have almost completely been wiped away by its

7    litigation costs, and the money I have set aside this year to pay towards student loan debt is now at

8    risk.

9         56.    By contrast, Whitepages has been the industry-leader in reverse phone lookups for

10   almost twenty years.  Among the many apps and services Whitepages offers, Whitepages (now

11   Hiya) offers a competing app formerly called "ID By Whitepages," which I believe is now called

12   "HIYA Caller ID and Block."  Attached to my declaration as **Exhibit N** is a true and correct copy of

13   a Forbes article reporting that Whitepages' 2015 revenues were $70,000,000 (last accessed October

14   4, 2016).

15        57.    Greenflight and Whitepages (along with Hiya) are direct competitors.  The size

16   difference between the two companies is clear from the huge discrepancy in the revenue information

17   of both companies.  As a smaller enterprise, Greenflight's only means to compete with Whitepages

18   is by offering a superior product and by protecting that product by enforcing its intellectual property

19   rights, namely, the '698 patent.

20        I declare under penalty of perjury under the laws of the United States of America that the

21   foregoing is true and correct.

22

23        Executed at ___Philadelphia, Pennsylvania___ on ___October 5th 2016___.

24

25        By:___Jeffrey D. Isaacs___
                       Jeffrey D. Isaacs

26

27

28

ISAACS DECLARATION IN SUPPORT OF OPPOSITION TO WHITEPAGES, INC.'S MOTION FOR ATTORNEYS' FEES --
CASE NO. 3:16-cv-00175-RS