BRYAN A. KOHM (CSB No. 233276)
bkohm@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

ELIZABETH HAGAN (WSBA No. 46933)
Admitted *Pro Hac Vice*
ehagan@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:     206.389.4510
Facsimile:     206.389.4511

Attorneys for Plaintiff-Counterdefendant
WHITEPAGES, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WHITEPAGES, INC., a Delaware corporation,<br><br>             Plaintiff-Counterdefendant,<br><br>    v.<br><br>GREENFLIGHT VENTURE CORPORATION, a Florida company, and JEFFREY ISAACS, an individual,<br><br>             Defendants-Counterclaimants. | Case No.: 3:16-cv-00175-RS<br><br>**REPLY IN SUPPORT OF WHITEPAGES, INC.'S MOTION FOR ATTORNEYS' FEES**<br><br>Date:     November 3, 2016<br>Time:    1:30 PM<br>Dept:    Courtroom 3, 17th Floor<br>Judge:   Honorable Richard Seeborg |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 3

    A. Greenflight Relies On The Wrong Standard ............................................................. 3

    B. Greenflight's Misconduct Meets Even The Incorrect Standard Requiring Its Claims To Be Objectively Baseless And Made In Bad Faith, And Thus Far Surpassing The Correct Exceptional Case Standard ............................................................................................................ 5

    C. Mr. Isaacs' Statements Should Be Considered As Part Of The Exceptional Case Analysis ............................................................................. 8

        1. The Litigation Privilege Does Not Apply To Shield Pre-Litigation Statements From Consideration In Federal Causes Of Action And Attorneys' Fee Motions Under 35 U.S.C. § 285 ...................... 8

        2. Counsel Did Not Communicate With Mr. Isaacs Concerning A Case In Which He Was A Represented Party ........................................... 10

        3. The Statements By Mr. Isaacs—Greenflight's CEO And The Prosecutor Of The Asserted Patent—Can And Should Be Considered In Evaluating The Exceptionality Of This Case. .................... 11

    D. The Parties' Agreement To Dismiss A Separate Litigation Does Not Preclude An Exceptional Case Finding Or An Award Of Attorney's Fees Here, Particularly Because Greenflight Breached the Agreement ............... 12

    E. Greenflight's Suggestion That An Award Of Fees Is Precluded Because Whitepages Initiated Suit Lacks Support ................................................................ 14

    F. Whitepages' Requested Fees Are Reasonable ....................................................... 15

III. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Action Apartment Ass'n, Inc. v. City of Santa Monica*,
   163 P.3d 89 (Cal. 2007) ........................................................................................................9

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
   846 F.2d 731 (Fed. Cir. 1988) ..............................................................................................14

*Crawford v. City & Cnty. of San Francisco*,
   No. C 16-1301 CW, 2016 WL 3418540 (N.D. Cal. June 22, 2016) ......................................9

*Dealertrack, Inc. v. Huber*,
   460 F. Supp. 2d 1177 (C.D. Cal. 2006) .................................................................................9

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
   524 F.3d 1254 (Fed. Cir. 2008) ......................................................................................2, 3, 4

*Eisenberg v. Alameda Newspapers, Inc.*,
   74 Cal. App. 4th 1359 (1999) ................................................................................................9

*Elecs. for Imaging, Inc. v. Coyle*,
   394 F.3d 1341 (Fed. Cir. 2005) ............................................................................................14

*Falcon v. Long Beach Genetics, Inc.*,
   224 Cal. App. 4th 1263 (2014) ..............................................................................................9

*GPNE Corp. v. Fleetmatics USA, LLC*,
   No. 13-2049-SLR-SRF, 2015 WL 730043 (D. Del. Feb. 20, 2015) ......................................4

*Home Gambling Network Inc. v. Piche*,
   No. 2:05-cv-610, 2014 WL 2170600 (D. Nev. May 22, 2014) .............................................5

*Isaacs v. Ariz. Bd. of Regents*,
   608 Fed. Appx. 70 (3rd Cir. 2015) ........................................................................................1

*Isaacs v. Dartmouth-Hitchcock Med. Ctr.*,
   No. 12-CV-040-LM, 2014 WL 1572559 (D.N.H. Apr. 18, 2014) ....................................1, 2

*Jorgensen v. Taco Bell Corp.*,
   50 Cal. App. 4th 1398 (1996) ..............................................................................................10

*Lerette v. Dean Witter Org., Inc.*,
   60 Cal. App. 3d 573 (1976) ...................................................................................................9

*Monolithic Power Sys., Inc. v. Asustek Computer, Inc.*,
   726 F.3d 1359 (Fed. Cir. 2013) ..............................................................................................6

# TABLE OF AUTHORITIES
(Continued)

Page(s)

*Newman v. Checkrite cal., Inc.*,
   912 F. Supp. 1354 (E.D. Cal. 1995) ............................................................................................9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) .............................................................................................1, 3, 4, 12

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*,
   42 Cal. 3d 1157 (1986) ..............................................................................................................9

*Pardi v. Kaiser Found. Hosps.*,
   389 F.3d 840 (9th Cir. 2004) .....................................................................................................8

*Recouvreur v. Carreon*,
   940 F. Supp. 2d 1063 (N.D. Cal. 2013) ...........................................................................6, 8, 9

*Rugroden v. State Bank of Park Rapids*,
   No. C 08-1964 JF (RS), 2008 WL 4542971 (N.D. Cal. Oct. 1, 2008) ....................................12

*Skyline Steel, LLC v. PilePro, LLC*,
   101 F. Supp. 3d 394 (S.D.N.Y. 2015) .......................................................................................4

*Visto Corp. v. Sproqit Techs., Inc.*,
   360 F. Supp. 2d 1064 (N.D. Cal. 2005) ....................................................................................9

**STATUTES**

35 U.S.C. § 101 .................................................................................................................1, 6, 7

35 U.S.C. § 315(a)(1) .................................................................................................................6

Cal. Civ. Code § 47 .................................................................................................................8, 9

**OTHER AUTHORITIES**

Cal. Rule of Prof. Conduct 2-100(A) ..................................................................................10, 11

Model Rules of Prof'l Conduct R. 4.2 (2014 ed.) ....................................................................10

## I. INTRODUCTION

Greenflight Venture Corporation and Jeffrey Isaacs' (collectively, "Greenflight") Opposition is more fiction than fact. It tells a tale of an innocent small business owner dragged into court against his will by a large company and its intimidating outside counsel. But those are not the facts here. Greenflight initiated this dispute when it unilaterally contacted Apple and attempted to derail Whitepages' business and strong-arm Whitepages into a business transaction. It was a predatory act aimed to obtain negotiating power to compensate for the absence of meritorious claims; it was not a good faith assertion of patent rights. Greenflight's reliance on non-existent "privacy control" intellectual property rights—a fact that it neither explains nor disputes—by itself rules out any possibility that Greenflight was acting in good faith.

Although based on an actual patent, Greenflight's patent infringement claims solidify the exceptional nature of this case. No plausible path to success ever existed. In an attempt to ensnare Whitepages' product, Greenflight asserted that a critical claim limitation—the SS7 interfacing node—was not, in fact, required. But it also contended that the inventive concept allegedly saving the '698 from invalidity under Section 101 was the same SS7 interfacing node limitation. Greenflight, therefore, never possessed a plausible theory on which it could prevail both on infringement and validity. Lack of a plausible theory capable of surviving both infringement and validity makes this case "one that stands out from others," particularly in light of "the unreasonable manner in which the case was litigated." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

Mr. Isaacs is no stranger to making baseless claims. Aside from this matter, he has brought at least three meritless suits. *See Isaacs v. Ariz. Bd. of Regents*, 608 Fed. Appx. 70, 72–73 & n.1 (3rd Cir. 2015) (describing three suits Mr. Isaacs filed in federal district court in Pennsylvania, New Hampshire, and California).[1]

---

[1] In *Isaacs v. Dartmouth-Hitchcock Medical Center*, the court noted the fundamentally flawed nature of Mr. Isaacs' claim:

> The court begins by acknowledging one rather unusual aspect of the "statements" alleged in paragraph 174 as underlying Dr. Isaacs' fraud claim. Rather than being statements about something over which the speaker had superior knowledge, those statements, as vaguely as they are alleged, were statements made to Dr. Isaacs about his own performance. One would think that nobody would know

WHITEPAGES' REPLY ISO MOTION FOR
ATTORNEYS' FEES                                        1                                        Case No.: 3:16-cv-00175-RS

1    Greenflight also wrongly urges that Whitepages must show Greenflight acted in bad faith in order to show this is an exceptional case. But its position wrongly relies on *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254 (Fed. Cir. 2008), which has nothing to do with attorneys' fees under Section 285 and is inconsistent with more recent Supreme Court law. But even assuming *arguendo* that *Dominant Semiconductors*' requirement applied, this case stands as the poster child for bad faith.

Greenflight's contention that the litigation privilege precludes the Court from considering litigation-related conduct defies common sense. Section 285 specifically addresses litigation-related conduct. As such, not surprisingly, the authorities on which Greenflight relies simply do not apply to the present circumstances, but instead relate to whether separate tort claims may be brought based on litigation-related conduct.

Likewise, Greenflight's assertion that Whitepages waived its rights to fees in *this* case due to a stipulation it agreed to regarding fees incurred in *another* case is a red herring. Even if that stipulation in another case prevented Whitepages from recovering its fees in this case (and Greenflight cites no authority that it does), Whitepages was no longer bound by that agreement the minute Greenflight breached the agreement by, yet again, contacting Apple regarding its infringement allegations against Whitepages.

Finally, in an attempt to prevent the Court from considering certain personal attacks made by its CEO, Greenflight makes reckless allegations against Whitepages' counsel, accusing him of violating ethical rules. But Greenflight does not dispute that Mr. Isaacs was not represented in the California action, the subject of the communications at issue. Rather, although Mr. Isaacs and Fox Rothschild consistently asserted and represented to Whitepages' counsel, at all times until this motion was filed, that the California action and Florida action were separate, and that Fox Rothschild was retained only for the Florida case, Greenflight now asserts that both cases are an inseparable single case. They were not, and the communications at issue related to the tort claims only at issue in the California case, where no dispute exists that he was unrepresented.

---

more about Dr. Isaacs' performance than Dr. Isaacs himself.
No. 12-CV-040-LM, 2014 WL 1572559, at *23 (D.N.H. Apr. 18, 2014).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Greenflight's claims against Whitepages have been frivolous from the start, and its behavior both before and during the litigation have been unreasonable and vexatious. This case is exceptional, and Whitepages respectfully requests an award of its reasonable attorneys' fees.

## II.  ARGUMENT

### A.  Greenflight Relies On The Wrong Standard

Greenflight represents to the Court that the Federal Circuit's opinion in *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254 (Fed. Cir. 2008) sets out the correct standard for requests for attorneys' fees based on pre-litigation allegations of infringement. But that case has nothing to do with exceptionality under Section 285. Greenflight's argument that it does cannot be reconciled with the Supreme Court's opinion—issued six years later—in *Octane Fitness*.

In Dominant *Semiconductors*, the Federal Circuit held that an accused infringer asserting tort claims for unfair competition based on pre-litigation infringement allegations must show that the patentee acted in bad faith—by establishing that the allegations were both objectively and subjectively baseless—whether or not bad faith is an element of the underlying tort claim. 524 F.3d at 1260. The Federal Circuit affirmed a district court's grant of summary judgment in favor of a patentee on the accused infringer's claims of unfair competition under the Lanham Act and for unfair competition, trade libel, and interference with contractual relations and prospective economic advantage under California statutory and common law. *Id.* at 1258-59. The case did *not* address the showing required to establish an exceptional case under Section 285.

To the extent *Dominant Semiconductors* ever set out the standard applicable to determining entitlement to attorneys' fees under Section 285, it was overruled by the Supreme Court's opinion in *Octane Fitness*. In that case, the Supreme Court specifically addressed the appropriate standard for determining an exceptional case for purposes of Section 285. 134 S. Ct. at 1754-57. Under the Federal Circuit's earlier interpretation of Section 285, to establish an "exceptional case" an accused infringer had to establish that the litigation "was both 'brought in subjective bad faith' and 'objectively baseless.'" *Id.* at 1756 (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). In other words, the Federal Circuit

standard *used* to be the one that Greenflight advocates here. In *Octane Fitness*, the Supreme Court rejected the Federal Circuit's formulation as "unduly rigid" and "impermissibly encumber[ing] the statutory grant of discretion to district courts." *Id.* at 1755. The Supreme Court criticized the Federal Circuit's previous standard because it effectively limited an award of attorneys' fees to independently sanctionable conduct—precluding fees for a party's unreasonable conduct that may not be sanctionable but may nonetheless render the litigation exceptional—and because it was "so demanding that it would appear to render § 285 largely superfluous." *Id.* at 1757-58. Under the new standard articulated by the Supreme Court, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756.

Greenflight, undeterred by the Supreme Court's clear rejection of the standard it proposes, nevertheless contends that "*Dominant* is, in fact, consistent with *Octane Fitness*." Defendants' Opposition to Plaintiff's Motion for Attorneys Fees, Dkt. No. 65 ("Opp."), at 15. It erroneously relies on *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 403 n. 4 (S.D.N.Y. 2015) for this proposition. But that case, like *Dominant Semiconductors* and unlike *Octane Fitness*, deals with the standard for establishing bad faith for purposes of asserting unfair competition claims under state law and the Lanham Act. *Id.* at 403.[2] While applying the test of *Dominant Semiconductors*, the *Skyline Steel* court actually remarked in a footnote that *Octane Fitness* "casts some doubt on the continuing validity of the [*Dominant Semiconductors*] test . . . ." *Id.* at 403 n. 4. The court did not suggest that the Federal Circuit's opinion in *Dominant Semiconductors* sets out the proper standard for requests for attorneys' fees under Section 285.[3]

---

[2] Nor does the other case Greenflight cites, *GPNE Corp. v. Fleetmatics USA, LLC*, concern attorneys' fees under Section 285. No. 13-2049-SLR-SRF, 2015 WL 730043, at *3 (D. Del. Feb. 20, 2015).

[3] Greenflight's bad faith infringement allegations stand in stark contrast to those made by the patentee in *Dominant Semiconductors*. There, the patentee OSRAM acted in good faith because it had an opinion of counsel regarding alleged infringement by Dominant Semiconductors (which it shared with both Dominant Semiconductors and its customers) and actually *prevailed* on its infringement allegations before both the International Trade Commission and, later, the Federal Circuit. *See Dominant Semiconductors*, 524 F.3d at 1258-59. Here, in contrast, Greenflight asserted a facially invalid patent that the Court invalidated on the pleadings alone.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

By asking the Court to apply a standard categorically rejected by the Supreme Court—and in doing so relying on a Federal Circuit case that has *nothing* to do with attorneys' fees under Section 285—Greenflight invites the Court to commit legal error. The Court should reject this invitation.

### B. Greenflight's Misconduct Meets Even The Incorrect Standard Requiring Its Claims To Be Objectively Baseless And Made In Bad Faith, And Thus Far Surpassing The Correct Exceptional Case Standard

Greenflight contends that, in attempting to interfere with Whitepages' business through its harassment of Whitepages' business partner Apple, it acted in "good faith." *See* Opp. at 10, 11, 13. But it does not (and cannot) dispute that Greenflight falsely represented to Apple that Whitepages infringed its non-existent "privacy control" intellectual property rights. Declaration of Bryan A. Kohm in Support of Whitepages' Motion for Attorneys' Fees, Dkt. No. 64-1 ("Kohm Decl."), Ex. 2 at 2 (August 28, 2015 email from Ms. Petrea to Apple). It is undisputed that Greenflight made the same allegation in correspondence to Apple four months later. *Id.* Ex. 23 (January 20, 2016 letter from Ms. Petrea and Mr. Isaacs to Apple, stating "[w]e stand by our August letter which states that the presence of Whitepages' app harms the customer privacy opt-out ability"). And it is undisputed that Mr. Isaacs admitted *in writing* that Greenflight possessed no such intellectual property rights related to privacy protections. Kohm Decl. Ex. 6 (October 9, 2015 email from Mr. Isaacs to Mr. Kohm, stating that Greenflight's "concerns regarding opt-out IP did not relate directly to any other patent, or specifically to '698 Claim #4, but rather, the public interest concerns"); *id.* Ex. 13 (reflecting Mr. Isaacs' October 23, 2015 verbal confirmation that Greenflight has no patents or other intellectual property rights related to "privacy control").

These undisputed facts, without more, demonstrate that Greenflight acted in bad faith (even though, as discussed above, such a finding is not *necessary* for a finding of an exceptional case). *See, e.g., Home Gambling Network Inc. v. Piche*, No. 2:05-cv-610, 2014 WL 2170600, at *9 (D. Nev. May 22, 2014) (awarding attorneys' fees, finding that the "totality of the circumstances warrants a finding of 'exceptionality' in this case because . . . Plaintiffs attempted to sue for infringement of a patent that they did not own").

But Greenflight's misconduct did not stop there. Greenflight also asserted a facially

invalid patent. The Court decided that the '698 patent was invalid *on its face* by granting Whitepages' motion for judgment on the pleadings based on the patent *alone*, without any need for claim construction or expert testimony. Dkt. No. 48 (granting Whitepages' motion for judgment on the pleadings that the '698 patent is invalid under 35 U.S.C. § 101); Dkt. No. 54 (denying Greenflight's motion for reconsideration). Indeed, Greenflight recognizes this. Opp. at 15 (noting the Court's finding that the patent "employs industry-standard technology," "perform[s] a longstanding business practice," has "no asserted improvement other than to use generic internet applications," and has claims "directed to the patent-ineligible abstract idea of looking up a name associated with a phone number" (quoting Dkt. No. 48 at 7)). And the fact that Whitepages chose not to assert invalidity until its affirmative defenses—and thus not prematurely close off a possible route of challenging the patent's validity through *inter partes* review—is immaterial to the fact of the patent's facial deficiencies. *See* Dkt. No. 26 at 5–7 (second affirmative defense); 35 U.S.C. § 315(a)(1).[4] Greenflight's attempts to enforce a facially invalid patent are objectively baseless.

Greenflight's assertion of a facially invalid patent is compounded by its infringement position. After being informed that Whitepages does not employ SS7 protocols, Greenflight asserted an infringement position that effectively read out the "SS7 interfacing node" limitation. *See* Kohm Decl. Ex. 11 (explaining that "infringement would still occur without technically ever utilizing SS7); Dkt. No. 54 at 2 n.1 (noting that Greenflight's counterclaims suggest that the SS7 "limitation is met so long as the queried database contains CNAM data"). Aside from the lack of basis to even assert such a position, the position was simply irreconcilable with its validity position—that is, the SS7 interfacing node was the key aspect of the invention, purportedly turning the invention into patentable subject matter. Greenflight never disputes that these two

---

[4] Nor does the fact that Whitepages affirmatively sought declaratory judgment preclude a finding that this case is exceptional or an award of attorneys' fees. *See Monolithic Power Sys., Inc. v. Asustek Computer, Inc.*, 726 F.3d 1359, 1362, 1369–70 (Fed. Cir. 2013) (affirming an exceptional case finding and award of attorneys' fees under 35 U.S.C. § 285 to a declaratory judgment plaintiff); *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1065, 1069 (N.D. Cal. 2013) (awarding attorneys' fees to a declaratory judgment plaintiff under the Lanham Act's exceptional case provision); *see also infra* Section II.E.

positions were irreconcilable. Yet reconciling them is a necessary precursor to having a good faith basis to allege *infringement* of a *valid* patent.

Greenflight instead argues that *because* the '698 patent is directed to ineligible subject matter under 35 U.S.C. § 101, its infringement allegations could not have been objectively baseless. Greenflight's Opposition, Dkt. No. 65 ("Opp.") at 15 ("If the patent was as broad as [Whitepages] asserts, then certainly allegations of infringement are not objectively baseless."). This argument misses the point, but it nevertheless is a twist on Greenflight's earlier argument, when it contended that Whitepages could not simultaneously argue that it does not infringe the '698 patents and that the patent is unduly preemptive. *See* Dkt. No. 50 at 7 (contending that the Court's Order reflected a "cursory preemption analysis [because] it fails to even mention or consider Whitepages' [purported] admissions that it does not infringe because it does not have or use the recited 'SS7 interfacing node.'"). The Court properly rejected this argument, as it relies on a fundamental misunderstanding of the preemption inquiry under Section 101. *See* Dkt. No. 54 at 2 (explicitly rejecting Greenflight's argument, citing Federal Circuit authority that preemption is not the test for patent-eligibility). Greenflight again appears to conflate breadth of its claims with patent eligibility; the Court should again reject this argument as inconsistent with Federal Circuit law.

Greenflight attempts to distinguish the plethora of cases cited by Whitepages by pointing to narrow distinctions that ultimately have no legal significance. Opp. at 23 n. 15. Indeed, it is not surprising that these cases involve facts slightly different from those here. It is rare for a patentee to fabricate intellectual property rights, as Greenflight did here. It is also rare that litigants harass a competitor's business partners and customers to extort an unreasonable settlement fee for a facially invalid patent, as Greenflight did here. It is, then, not surprising that there are few cases involving such unreasonable and bad-faith litigation tactics. If anything, the lack of a case with squarely the same facts only confirms that this is an exceptional case for which attorneys' fees should be awarded to Whitepages.

### C. Mr. Isaacs' Statements Should Be Considered As Part Of The Exceptional Case Analysis

Greenflight argues that the Court should disregard all statements made by Mr. Isaacs because: (1) his statements were subject to the litigation privilege, (2) Whitepages' counsel purportedly violated state ethics rules in communicating directly with Mr. Isaacs (despite the undisputed fact that Greenflight had no counsel in the California action); and (3) that as a mere inventor, anything he said about the scope of the patent should be ignored. But, as explained in turn below, the litigation privilege does not apply to an exceptional case analysis under the federal patent laws, the allegations regarding ethics rules violations are baseless (not to mention reckless), and infringement allegations made by Mr. Isaacs as a litigant and party representative are entitled to consideration under Section 285.

#### 1. The Litigation Privilege Does Not Apply To Shield Pre-Litigation Statements From Consideration In Federal Causes Of Action And Attorneys' Fee Motions Under 35 U.S.C. § 285

Greenflight relies on California Civil Code Section 47 to argue that its pre-litigation correspondence cannot be used as evidence in a federal claim. Greenflight is wrong. Greenflight does not cite a single case holding that California's litigation privilege prevents a party's communications from being considered as evidence of an exceptional case under 35 U.S.C. § 285. None exists. Indeed, under Ninth Circuit law the litigation privilege cannot be invoked to defeat a claim arising under federal law. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 851 (9th Cir. 2004) (quoting *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998)) ("A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action."). This Court rejected a nearly identical argument made by a declaratory judgment defendant in a trademark case on similar facts. *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063 (N.D. Cal. 2013). There, the plaintiff, a publisher of a satirical website, sought its reasonable attorneys' fees as a prevailing party on claims brought under the Lanham Act. *Id.* at 1065. Like Section 285 in patent cases, the Lanham Act provides that courts may award attorney fees to a prevailing party "in exceptional cases." *Id.* at 1067 (quoting 15 U.S.C. § 1117(a)(3)). The plaintiff asserted that the case was exceptional because, among other things, the defendant evaded

service and made numerous threats of suit for trademark infringement and cybersquatting. *Id.* The defendant, like Greenflight here, contended that its threats to sue could not give rise to liability for attorney fees because of the state law litigation privilege. *Id.* at 1068. This Court rejected this argument, holding that "the California litigation privilege cannot protect defendant from attorney fee liability" in an otherwise exceptional case. *Id.* This case is no different. The state law litigation privilege simply does not apply, and the Court can and should consider the pre-litigation statements of Greenflight in determining exceptionality under Section 285.[5]

Moreover, even if California Civil Code Section 47 were to apply, it does not function as an evidentiary bar precluding all use of Greenflight's statements, as Greenflight appears to argue. Rather, it serves only to bar certain tort causes of action. *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1168 (1986). Statements made by a party, even during litigation, "may be used as evidence to support underlying claims." *Recouvreur*, 940 F. Supp. 2d at 1068 (citing *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW, 2012 WL 3283420 (N.D. Cal. Aug. 10, 2012)).

---

[5] All of the cases cited by Greenflight for the notion that litigation privilege prevents a party's threats of litigation from being used to establish liability involved claims under *state law*—none involves Section 285 of the federal patent statute. *See Crawford v. City & Cnty. of San Francisco*, No. C 16-1301 CW, 2016 WL 3418540, at *3, *6 (N.D. Cal. June 22, 2016) (noting applicability of litigation privilege in deciding defendant's anti-SLAPP motion to strike plaintiff's state law claims of intentional infliction of emotional distress, wrongful termination, and claims under the California Fair Employment Housing Act); *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1180–82 (C.D. Cal. 2006) (granting anti-SLAPP motion to strike defendant's counterclaim for libel based on statement made in plaintiff's complaint); *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1068–70 (N.D. Cal. 2005) (discussing application of the California litigation privilege to pre-litigation statements as the basis for claims of tortious interference with prospective economic advantage and defamation); *Newman v. Checkrite cal., Inc.*, 912 F. Supp. 1354, 1374–75 (E.D. Cal. 1995) (denying summary judgment as to state law claims on basis of litigation privilege); *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 163 P.3d 89, 95–96 (Cal. 2007) (discussing whether the state litigation privilege preempts a local ordinance); *Falcon v. Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1271–73 (2014) (finding litigation privilege barred state law negligence claim); *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1376–81 (1999) (discussing application of litigation privilege in context of summary judgment on defamation and false light claims); *Lerette v. Dean Witter Org., Inc.*, 60 Cal. App. 3d 573, 577, 577–79 (1976) (discussing application of litigation privilege to a suit for defamation and intentional infliction of emotional distress).

2. **Counsel Did Not Communicate With Mr. Isaacs Concerning A Case In Which He Was A Represented Party**

Greenflight alleges that Mr. Isaacs' communications with Whitepages' counsel, Mr. Kohm, cannot be considered because Mr. Isaacs was represented by counsel at the time. But it is undisputed that Mr. Isaacs was *not* represented by counsel in the present action at the time of his communications. He affirmatively stated in his declaration filed in support of Greenflight's opposition to this motion that he retained Fox Rothschild only for the Florida Action. Dkt. No. 66 ¶ 50 ("I retained Fox Rothschild LLP as counsel <u>for the Florida Action</u>, the first litigation counsel that I retained in connection with any of these infringement issues.") (emphasis added). Once Mr. Kohm learned of Greenflight's representation in the Florida Action, he immediately inquired of Fox Rothschild whether that representation extended to the California action. Kohm Decl. Exs. 18, 19. Mr. Isaacs told Mr. Kohm that the representation *did not* extend the California action, and Fox Rothschild subsequently affirmed this assertion. *Id.* Ex. 19; Declaration of Bryan A. Kohm in Support of Whitepages, Inc.'s Reply re Motion for Attorneys' Fees ("Kohm Reply Decl."), ¶¶ 2, 4. Moreover, Mr. Kohm was told that Fox Rothschild did not represent either Mr. Isaacs or Ms. Petrea individually. Kohm Reply Decl. ¶ 2. Greenflight instructed Mr. Kohm that the Florida action and the California action were different matters, and Mr. Kohm proceeded accordingly.

Representation in one matter does not prohibit communications regarding a separate matter. Cal. Rule of Prof. Conduct 2-100(A) ("While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer ***in the matter***, unless the member has the consent of the other lawyer.") (emphasis added); *see also* Model Rules of Prof'l Conduct R. 4.2 cmt. [4] (2014 ed.) ("[T]he existence of a controversy . . . between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter."); *Jorgensen v. Taco Bell Corp.*, 50 Cal. App. 4th 1398, 1401 (1996) (declining to stretch Rule 2-100 to cover situations "where the lawyer 'should have known' that the other person *would* be represented," but was not yet represented "in the matter"; explaining

that "Rule 2–100 should be given a reasonable, common sense interpretation, and should not be given a 'broad or liberal interpretation' which would stretch the rule" (citation omitted)). Greenflight was not represented in the California action until it hired Winston & Strawn on or around February 4, 2016, and until Whitepages filed the present motion, Defendants and their counsel insisted that the Florida and California cases were separate actions. Kohm Reply Decl. ¶¶ 2, 5.

Greenflight's position also disregards the fact that the challenged communications are directed to resolution of the tort claims not at issue in the Florida case. *Id.* ¶ 3. Indeed, the email exchange at issue was initiated by Mr. Isaacs on January 21, 2016, with a subject of "Withdrawal of CAND claim." Kohm Decl. Ex. 25. In that email, Mr. Isaacs asserts that he had "complied with the spirit of your January 11th ***offer to dismiss the CAND libel / trade libel claims*** in exchange for retraction of our demand to pull the app."). *Id*. (emphasis added). Mr. Kohm responded that Greenflight had not met the conditions of the offer to dismiss the California tort claims, to which Mr. Isaacs responded with the statements at issue. Kohm Decl. Exs. 26–28.

Moreover, even if Greenflight's attempt to rewrite history were adopted, the argument applies only to the communications dated after January 14, 2016. The remainder of the communications at issue took place before Greenflight retained Fox Rothschild for the Florida case.

As it is undisputed that Mr. Isaacs was not represented in the California action the time of the relevant correspondence between Whitepages' counsel and Mr. Isaacs—correspondence that related to the California action and not the Florida action—Greenflight's allegations regarding purported ethical violations lack merit.

    **3.**    **The Statements By Mr. Isaacs—Greenflight's CEO And The Prosecutor Of The Asserted Patent—Can And Should Be Considered In Evaluating The Exceptionality Of This Case.**

Greenflight wrongly contends that Mr. Isaacs' statements regarding Greenflight's infringement theory and the '698 patent should be given little or no weight because they were made by a patent inventor. But the authorities on which Greenflight relies all concern the weight an inventor's testimony is given during claim construction. Opp. at 12–13. These cases are

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

irrelevant, as Whitepages does not rely on Mr. Isaacs' statements to support a particular claim construction; rather, the statements show the unreasonableness and substantive weakness of Greenflight's legal claims.

Mr. Isaacs' statements regarding the scope of the '698 patent were made as a patent claimant—an individual who prosecuted the patent and an experienced and serial litigator. Mr. Isaacs alleged in submissions to Apple, to Whitepages, and to this Court, that Whitepages infringed Greenflight's patent. Contrary to Greenflight's assertion, it is irrelevant that he was *also* the patent inventor: a party in a litigation is required under both Rule 11 and 35 U.S.C § 285 to have a reasonable basis for the claims he asserts. *Rugroden v. State Bank of Park Rapids*, No. C 08-1964 JF (RS), 2008 WL 4542971, at *3 (N.D. Cal. Oct. 1, 2008) ("Rule 11(b) requires that a party, including one without representation, certify . . . [that] the claims are supported by nonfrivolous argument, [and] factual contents have evidentiary support."); *Octane Fitness*, 134 S. Ct. at 1751. Mr. Isaacs' purported explanation of Greenflight's basis for asserting infringement by Whitepages are not just speculation by an uninterested third party lacking relevant knowledge. They are statements by a party to a litigation intimately familiar both with the technology allegedly disclosed in the patent and the rules of patent prosecution. These statements are relevant and show that this is an exceptional case.

### D. The Parties' Agreement To Dismiss A Separate Litigation Does Not Preclude An Exceptional Case Finding Or An Award Of Attorney's Fees Here, Particularly Because Greenflight Breached the Agreement

Whitepages entered into a stipulation with Greenflight, Mr. Isaacs, and Ms. Petrea, pursuant to which Greenflight agreed to dismiss Whitepages and Mr. Algard from the Florida action and Whitepages would drop its state law tort claims against Greenflight, Mr. Isaacs, and Ms. Petrea. Kohm Decl. Ex. 39. As recited in the stipulation, the parties agreed to the stipulation "[b]ecause [they] wish[ed] to streamline the litigation to more efficiently address the issues between them." *Id.* at 1. A material term of this agreement—and the only reason Whitepages agreed to forego its viable state law tort claims—was Greenflight, Ms. Petrea's, and Mr. Isaacs' commitment that "[d]uring the pendency of the California Action, the Parties will not pursue their dispute with any App Store provider, including Apple, Google, or Microsoft . . . ." *Id.* ¶ 4.

Greenflight now argues that this stipulation somehow prevents a finding that the case is exceptional. But Greenflight cannot now claim the benefit of this agreement because Greenflight breached the agreement when it initiated further communications with Apple regarding infringement allegations against Whitepages. Kohm Decl. Ex. 40. Greenflight contends that this correspondence was not a breach of the stipulation because, according to it, the communication was "regarding Hiya." Opp. at 10. But the communication *explicitly* refers to purported infringement by the Whitepages app: "*Whitepages*, and Hiya, together operate five(5) phone lookup apps on the App Store, and *Whitepages* is listed as a top gross revenue product for Apple." Kohm Decl. Ex. 40 (emphasis added). And the same communication explicitly references the prior complaint Greenflight lodged with Apple concerning Whitepages and states that it awaits Apple's decision, making clear that the correspondence was Greenflight's continued pursuit of the parties' dispute in violation of the stipulation: "We await response from Apple as to what their final determination/action will be regarding our complaint." *Id.* Because Greenflight breached the stipulation, Whitepages had no obligation to honor that stipulation months later.[6]

In any event, the stipulation—even if in force—does *not* preclude Whitepages from seeking its reasonable attorneys' fees here for two reasons. First, contrary to what Greenflight suggests, the stipulation is silent regarding fees related to Whitepages' patent claims. The parties agreed to each "bear its own costs and fees" in the Florida action, but Whitepages never filed an answer or asserted any claims in the Florida action. Whitepages agreed to dismiss its *tort* claims in the California action—which Whitepages accordingly dropped. *See* Dkt. No. 17. But the stipulation *expressly* stated that the patent claims would remain in the California action. Kohm Decl. Ex. 39 (specifying "for the sake of clarity" that the patent claims "are not tort claims prohibited by this provision" and contemplating that "Greenflight may file counterclaims for patent infringement"). Thus, Whitepages did not waive its right to fees as a prevailing party on its patent claims.

---

[6] Moreover, the stipulation expressly provided that Whitepages could reassert the dropped tort claims if Greenflight breached the agreement. Kohm Decl. Ex. 39 ¶ 2 ("Whitepages . . . will not reassert those claims, or additional tort claims based on the same nucleus of facts . . . *provided that the Greenflight Defendants have not breached this Stipulation . . . .*") (emphasis added).

Second, Whitepages agreed that each party would bear its own costs and fees *for the Florida action*. Whitepages is not requesting its costs related to the Florida action. *See* Kohm Decl. ¶¶ 57–60, 62. The Court should reject Greenflight's argument that the stipulation's provision regarding costs and fees in the Florida action "inherently included" costs and fees stemming from "pre-litigation activities" relevant to the California action. Opp. at 10. Greenflight cites no authority—legal or otherwise—for this proposition, because none exists.

### E. Greenflight's Suggestion That An Award Of Fees Is Precluded Because Whitepages Initiated Suit Lacks Support

Greenflight incorrectly asserts that Whitepages' motion should be denied because it filed suit against Greenflight. Aside from the fact that Section 285 authorizes fees to be awarded to a prevailing party, irrespective of whether that party is a plaintiff or defendant, Greenflight's argument highlights its wrongful scheme. Greenflight sought to disrupt Whitepages' business and taint its reputation through harassment of its partners. Declaratory judgment actions exist precisely to stop this form of misconduct. Before the Declaratory Judgment Act was enacted, competitors possessed no recourse when they were victimized by patent owners' attempts at extra-judicial patent enforcement "that infect the competitive environment of the business community with uncertainty and insecurity," rendering them "helpless and immobile so long as the patent owner refused to grasp the nettle and sue." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988). The Declaratory Judgment Act was created to provide a remedy for those accused competitors, allowing them to "clear the air by suing for a judgment that would settle the conflict of interests." *Id.*; *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (accused infringer entitled to seek resolution through declaratory judgment action where patentee's infringement allegations "created a cloud over [accused infringer's] business, shareholders, and customers, and [accused infringer's] potential liability increased as it continued to sell the allegedly infringing products."). And when the circumstances prompting a declaratory judgment plaintiff to file suit are as egregious as they are here, an exceptional case finding is warranted.

### F. Whitepages' Requested Fees Are Reasonable

The fees Whitepages requests are reasonable: $219,311.50 in attorneys' fees[7] from Greenflight Venture Corporation and Jeffrey Isaacs, and a request that Winston & Strawn be jointly and severally responsible for $199,043.50 of this. The requested fees are paltry in comparison to the value Greenflight places on this suit, as it sought $15 million from Whitepages. Kohm Decl. Ex. 15. Whitepages does not seek any fees related to the Florida action, and has not included any time spent or fees accrued in relation to that case. *Id.* ¶¶ 57–60, 62. However, it does appropriately seek its reasonable fees for time spent prior to March 5, 2016 to the extent that time does not reflect activity related to the Florida action—for example, time spent dealing with Greenflight's attempts to evade service of process. *Id.*; Mot. at 11. Whitepages will be happy to submit additional evidentiary support for the reasonableness of the amount and fees claimed if the Court desires, once liability for the same has been determined.

### III. CONCLUSION

For the foregoing reasons, and for the reasons described in Whitepages' motion (Dkt. No. 64), Whitepages respectfully requests that the Court grant its motion finding this case exceptional and awarding attorneys' fees under 35 U.S.C. § 285 and the inherent power of this Court.

Dated:   October 12, 2016              FENWICK & WEST LLP

                                       By: */s/ Bryan A. Kohm*
                                           Bryan A. Kohm

                                       Attorneys for Plaintiff-Counterdefendant
                                       Whitepages, Inc.

---

[7] Paragraph 57.c. of Mr. Kohm's September 21, 2016 declaration contained an error. The fees incurred by Whitepages between March 5, 2016 and September 16, 2016 totaled $178,778.50. *See* Kohm Reply Decl. ¶ 6. Should the Court grant Whitepages' motion, Whitepages will submit an updated accounting of all its fees that will include this correction.