UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEPAGES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY ISAACS, et al., <br><br> Defendants. | Case No. 16-cv-00175-RS <br><br> **ORDER DENYING MOTION FOR ATTORNEY FEES** |

## I. INTRODUCTION

In January 2016, Plaintiff Whitepages, Inc. ("Whitepages") filed a complaint against Defendant Greenflight Venture Corporation ("Greenflight") and its CEO, Jeffrey Isaacs, for a declaratory judgment of non-infringement of Patent No. 8,861,698 ("the '698 patent"). In May 2016, Whitepages moved for judgment on the pleadings that the '698 patent discloses only "abstract ideas" outside the permissible scope of patent protection, and therefore is invalid under 35 U.S.C. § 101. That motion was granted. Whitepages now moves for attorney fees and costs pursuant to the Patent Act fee-shifting provision, 35 U.S.C. § 285, characterizing this as an "exceptional" case based on both the merits of Greenflight's validity position and the manner in which it litigated the case. This case, however, is not "exceptional," even under the more inclusive standard recently articulated by the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014). Whitepage's motion is denied.[1]

## II. BACKGROUND

The relevant factual and procedural background is described in the July 25, 2016 order

---

[1] Pursuant to Civil Local Rule 7-1(b), this matter is suitable for disposition without oral argument.

granting Whitepages' motion for judgment on the pleadings ("Order"). To summarize, the '698 patent describes a method by which a user can input a telephone number into a website or mobile phone interface and return the name information associated with the queried phone number. While telephone operating companies have long maintained Caller Name ID ("CNAM") databases for landline customers, and that information is accessible online through reverse telephone number searches, those databases only include landline numbers contained in public telephone books and not mobile phone numbers. CNAM databases for mobile phone subscribers reside with the carriers and are accessed through the industry standard SS7 protocol. The patent-in-suit bridges the gap between CNAM and internet reverse search.

The prosecution history for the '698 patent shows that the claims were initially rejected as drawn to unpatentable subject matter under 35 U.S.C. § 101. Isaacs overcame that rejection and the claims were subsequently amended with the assistance of the patent examiner, after the Supreme Court's *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014) decision, leading to issuance of the patent in October 2014.

Isaacs founded Greenflight to exploit the '698 patent. Greenflight offers a mobile phone application, through the Apple App Store, which allows mobile phone users to identify the name associated with a phone number. This dispute arose in August 2015 when Isaacs discovered that Whitepages was offering, also through the Apple App Store, a mobile application that allows users to identify incoming telephone calls. Believing Whitepages was infringing the '698 patent, Greenflight initiated Apple's dispute resolution process. In response, Whitepages filed this action for declaratory judgment of non-infringement on January 11, 2016. Three days later, Greenflight sued Whitepages in Florida, where Greenflight is based, for patent infringement. On March 4, 2016, the parties reached an agreement that Greenflight would dismiss the Florida action and assert its infringement counterclaims here and, in exchange, Whitepages would dismiss the state tort claims it had filed in this case. Whitepages then moved for judgment on the pleadings. That motion was granted on the basis that the '698 patent is invalid because the abstract idea of looking up a name associated with a phone number is patent-ineligible.

### III. LEGAL STANDARD

Section 285 invests the district court with discretion to award reasonable attorney fees in patent infringement actions to the prevailing party in "exceptional cases." The statutory language is clear. It imposes one and only one constraint on a district court's discretion to award attorney fees in patent litigation: "The power is reserved for 'exceptional' cases." *Octane*, 134 S.Ct. at 1755–56. Before the decision in *Octane*, the Federal Circuit had limited fee shifting to patent cases in which the prevailing party demonstrated, by clear and convincing evidence, either (1) litigation misconduct; or (2) that the litigation was both objectively baseless and brought in subjective bad faith. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.* ("*Brooks Furniture*"), 393 F.3d 1378, 1381–82 (Fed. Cir. 2005). In the first scenario, a court could award fees only "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P. 11, or like infractions." *Brooks Furniture*, 393 F.3d at 1381. "Absent misconduct in conduct of the litigation or in securing the patent, [fees] may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* In the alternative, a court could award fees where it found that the patentee's position is "so unreasonable that no reasonable litigant could believe it would succeed" and that the patentee "actually know[s]" that to be true. *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377–78 (Fed. Cir. 2011); *see Octane*, 134 S.Ct. at 1754.

*Octane* rejected this "rigid and mechanical formulation." *Octane*, 134 S.Ct. at 1754. With regard to litigation misconduct, the Court diverged from the Federal Circuit's focus on sanctionable conduct, holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane*, 134 S.Ct. at 1757. Nor must the district court find that the litigation was both objectively baseless and brought in subjective bad faith to award fees. "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.*

Construing the term "exceptional" in accordance with its ordinary meaning of "uncommon," "rare," or "not ordinary," the Court in *Octane* held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1756.  District courts are instructed to exercise their discretion on a case-by-case basis, considering the totality of the circumstances and applying a preponderance of the evidence standard. *Id*. at 1756, 1758.  Rejecting the Federal Circuit's then-existing framework, the Court suggested district courts look to "nonexclusive" factors it previously set forth concerning a similar provision of the Copyright Act, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*, 134 S.Ct. at 1756, n.6 (quoting *Forgerty v. Fantasy*, 510 U.S. 517, 534, n.19 (1994)).

## IV. DISCUSSION

Whitepages contends that fee-shifting is appropriate because: (1) Greenflight's validity position was objectively baseless and (2) Greenflight's litigation conduct was unreasonable and abusive.  Neither argument is persuasive.

**A.  Greenflight's Validity Position**

Though Whitepages' motion for judgment on the pleadings was ultimately granted, the '698 patent's invalidity was not a conclusion sufficiently obvious to warrant fee-shifting.  To start, the patent statute affords a patentee a statutory presumption of validity. *See* 35 U.S.C. § 282 ("A patent shall be presumed valid.")  Moreover, the prosecution history shows that the original claims of the '698 patent were initially rejected as unpatentable subject matter and that rejection was then overcome by amendment.  The patent was issued after the Supreme Court's *Alice* decision and the examiner provided various reasons for allowance.  That the patent was ultimately deemed invalid does not render Greenflight's validity position objectively baseless.  Indeed, Whitepages did not assert an invalidity claim in its original complaint or the amended complaint.  It only challenged

the validity of Greenflight's patent later in the proceedings.

Whitepages relies heavily on *eDekka LLC v. 3balls.com, Inc.*, Nos.15-541, 15-858, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015). There, the plaintiff was a non-practicing entity that had sued a large number of defendants alleging infringement. The court was concerned that eDekka was filing baseless suits simply to obtain nuisance value settlements from entities seeking to avoid the cost of litigation. The patent-in-suit was issued years before the *Alice* decision and the court found eDekka "repeatedly offered insupportable arguments" in support of its validity position. *Id*. at *4. For example, eDekka argued that the patent "serves as a teaching tool for computer users" and that the patent claims "require[d] a special purpose computer" when the patent "plainly d[id] not require a computer." *Id*. at *3. Whitepages attempts to analogize to *eDekka* by arguing that Greenflight characterized the "inventive concept" of the '698 patent as a "'software bridge' nowhere disclosed in the specification." Mot. at 16. Isaac's patent application, however, refers to the invention as "a post-page caller name identification system that *bridges* SS7 retrievable caller data with a user-accessible IP interface." Ramos Decl., Ex. 1 at 7 (emphasis added). Moreover, Greenflight's characterization of the inventive concept as a "bridge" does not misrepresent the fundamental nature of the invention. Thus, unlike eDekka, Greenflight did not advance a validity position that had "absolutely no basis in the claim language." *eDekka*, at *3. The merits of this case ultimately favored Whitepages, but that alone cannot justify shifting fees onto Greenflight.

**B. Greenflight's Litigation Conduct**

"The purpose of section 285, unlike that of Rule 11, is not to control the local bar's litigation practices–which the district court is better positioned to observe–but is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of litigation or Patent Office misconduct, to require it to bear its own costs." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc*., 687 F.3d 1300, 1310, n.1 (Fed.Cir.2012), *vacated and remanded*, 134 S.Ct. 1744 (2014); *see Octane*, 134 S.Ct. at 1757 ("sanctionable conduct is not the appropriate benchmark").

Although *Octane* ostensibly liberalized the standard for fee shifting, and clearly reduced the prevailing party's burden from clear and convincing to a preponderance of the evidence, post-*Octane* decisions awarding fees have generally relied upon egregious behavior. *See, e.g., Intellect Wireless, Inc. v. Sharp Corp.*, No. 10–6763, 2014 WL 2443871 (N.D. Ill. May 30, 2014) (awarding fees based on false declarations before the PTO, without which, the court concluded, the plaintiff would not have obtained the patents at issue). In one pre-*Octane* decision, another court in this district denied sanctions but held in abeyance a likely award of damages based on findings of litigation misconduct, including findings that plaintiffs knew before filing suit they may not even own the patent, manufactured venue in Texas via a sham corporate façade, asserted an unreasonable number of patent claims, sandbagged defendant with newly-produced documents and infringement contentions, and "played fast and loose with the rules for being admitted to practice pro hac vice in this district." *Network Prot. Sciences, LLC v. Fortinet, Inc.,* No. 12–01106, 2013 WL 4479336 (N.D. Cal. Aug. 20, 2013).

At no point did Greenflight's conduct rise to such a level. Whitepages relies heavily on its pre-litigation communications with Isaac and his wife, arguing that they misrepresented the scope of the '698 patent and articulated an infringement theory inconsistent with their ultimate validity position.[2] From the start, however, Isaac informed counsel for Whitepages that his pre-litigation communications about the scope of the patent were "a courtesy to facilitate dialogue and not a binding narrowing (or expansion) of claims." Kohm Decl., Ex. 12. He noted that "it could be easy to misconstrue or confuse process/system components" and that "the language of the patent takes precedent over [his] own annotations." *Id.* Whitepages relies on *Kilopass Technology Inc. v. Sidense Corporation*, 2014 WL 395670 (N.D. Cal. Aug. 12, 2014), where the court found that a

---

[2] The parties dispute whether Whitepages violated California's "no contact" rule by communicating with Isaac directly and whether those communications were protected by the litigation privilege. Because the communications do not support a finding of exceptional misconduct, neither inquiry is dispositive. In any event, it appears counsel for Whitepages was under the reasonable impression that Fox Rothschild represented Greenflight only with respect to the Florida action. *See* Kohm Decl., Ex. 19.

plaintiff's "attempt to argue one thing to th[e] court, then argue a different thing to the [Board of Patent Appeals and Interferences ("BPAI")], and then attempt to change its position before the BPAI only after it resulted in an unfavorable ruling from th[e] Court amounts to 'gamesmanship.'" *Id.* at *10.  Greenflight's conduct does not compare.

      Whitepages also accuses Greenflight of refusing to cooperate on basic procedural matters. It argues that Greenflight filed an "unnecessary" patent infringement action in Florida, "reneged" on an agreement to extend time for Whitepages to respond to that complaint, "initially refused" to stipulate to the consolidation of the two cases in California, and filed a "completely meritless" motion for reconsideration.  Mot. at 21.  Failure to extend common courtesies, however, does not compel a fee award.  Greenflight filed suit in Florida because it is incorporated and has its principal place of business there.  The parties reached an agreement regarding the appropriate forum for the litigation within a reasonably short period of time.  As part of that agreement, Greenflight agreed to dismiss the Florida action and not challenge personal jurisdiction or venue in California.[3]  While Greenflight's motion for reconsideration was ultimately denied, the motion was not "completely meritless."  Indeed, Greenflight's motion for leave to file the motion for reconsideration was granted.

      Finally, Whitepages accuses Greenflight of engaging in unreasonable and abusive conduct. It argues that Greenflight "repeatedly harassed" Apple to remove Whitepages' application from the App Store, "personally attacked Whitepages' counsel," and threatened to "hit [Whitepages] hard" if it proceeded with this motion.  Mot. 20-22.  Yet, neither party is without fault for the level of hostility in this case.  Both engaged in aggressive litigation tactics.[4]  Greenflight argues that

---

[3] Greenflight argues that agreement precludes Whitepages from seeking fees.  In fact, it only limited the parties' right to seek fees associated with the dismissal of the Florida action.  *See* Kohm Decl., Ex. 39 at ¶ 1 ("The Parties will enter a stipulation of dismissal in the Florida Action . . . and such stipulation shall be filed no later than March 4, 2016, with each party to bear its own costs and fees[.]").

[4] For this reason, Greenflight's informal request for an award of its fees and costs in defending against this motion is denied.

Whitepages rebuffed Isaacs' attempts to resolve this matter informally and threatened to sue Isaacs and his wife in their personal capacities as a ruse to secure a favorable forum. On balance, Greenflight's behavior may reasonably be interpreted as part of its good-faith effort to advance its position in the face of Whitepage's equally aggressive approach. Within this context, Greenflight's manner of litigation was not sufficiently egregious to justify fee-shifting.

## V. CONCLUSION

Whitepages' motion for attorney fees is denied.

**IT IS SO ORDERED**.

Dated: October 26, 2016

RICHARD SEEBORG
United States District Judge